DAVID H. KRAMER, State Bar No. 168452
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
Email: dkramer@wsgr.com

Attorneys for Defendant
PINTEREST, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

HAROLD DAVIS,

Plaintiff,

v.

PINTEREST, INC.,

Defendant.

CASE NO.: 4:19-cv-07650-HSG

**DEFENDANT PINTEREST, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS COUNT II OF PLAINTIFF'S AMENDED COMPLAINT**

**DATE:** **May 21, 2020**
**TIME:** **2:00 p.m.**
**DEPT:** **Courtroom 2, 4th Floor**
**JUDGE:** **Honorable Haywood S. Gilliam, Jr.**

Complaint Filed: November 20, 2019

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ..... 1

STATEMENT OF REQUESTED RELIEF ..... 1

STATEMENT OF ISSUE TO BE DECIDED ..... 1

MEMORANDUM OF POINTS AND AUTHORITIES ..... 1

I. INTRODUCTION ..... 1

II. BACKGROUND ..... 3

III. ARGUMENT ..... 6

A. Count II Should Be Dismissed Because Plaintiff Does Not Allege a Plausible Claim of Contributory Infringement ..... 7

1. Plaintiff Fails to Plead Direct Infringement by Any Third Party ..... 7

2. Plaintiff Fails to Plead that Pinterest Had Actual Knowledge of Specific Instances of Alleged Infringement of His Photographs ..... 9

3. Plaintiff Fails to Plead that Pinterest Failed to Avail Itself of "Simple Measures" for Finding and Removing Plaintiff's Photographs ..... 10

4. Plaintiff Fails to Plead an Inducement Claim Under *Grokster* ..... 11

CONCLUSION ..... 15

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001) .......... 7, 9

*ALS Scan v. Cloudflare, Inc.*, No. CV 16-5051-GW (AFMx), 2017 WL 1520444 (C.D. Cal. Feb. 16, 2017) .......... 14

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 6, 7

*Backus v. Biscomerica Corp.*, 378 F. Supp. 3d 849 (N.D. Cal. 2019) .......... 6

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......... 6, 7

*Cobbler Nev., LLC v. Gonzales*, 901 F.3d 1142 (9th Cir. 2018) .......... 12, 14

*Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020 (9th Cir. 2013) .......... 11, 12, 13

*eAdGear, Inc. v. Liu*, No. CV-11-05398-JCS, 2012 WL 2367805 (N.D. Cal. June 21, 2012) .......... 6

*Epikhin v. Game Insight N. Am.*, No. 14-CV-04383-LHK, 2015 WL 2412357 (N.D. Cal. May 20, 2015) .......... 8, 10

*Fox Broad. Co. v. Dish Network LLC*, 747 F.3d 1060 (9th Cir. 2014) .......... 7, 8

*Free Speech Sys., LLC v. Menzel*, 390 F. Supp. 3d 1162 (N.D. Cal. 2019) .......... 7, 8

*Hayes v. Keys*, No. CV 14-6246-PA (JEMx), 2015 U.S. Dist. LEXIS 2860 (C.D. Cal. Jan. 7, 2015) .......... 8

*In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049 (9th Cir. 2008) .......... 6

*Klauber Bros., Inc. v. H & M Hennes & Mauritz LP*, No. CV 18-03507-MWF, 2018 U.S. Dist. LEXIS 223308 (C.D. Cal. Dec. 11, 2018) .......... 8

*Knievel v. ESPN*, 393 F.3d 1068 (9th Cir. 2005) .......... 4, 14

*Ledesma v. Corral*, No. 2:15-cv-04266-ODW-GJS, 2016 WL 827743 (C.D. Cal. Mar. 2, 2016) .......... 15

*Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068 (9th Cir. 2013) .......... 9, 10

*MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005) .......... *passim*

*Muench Photography, Inc. v. Pearson Educ., Inc.*, No. 13-cv-03937-WHO, 2013 WL 6172953 (N.D. Cal. Nov. 25, 2013) .......... 10

*Nat'l Photo Grp., LLC v. Allvoices, Inc.*, No. C-13-03627 JSC, 2014 WL 280391 (N.D. Cal. Jan. 24, 2014) .......... 10, 11, 12, 14

*Opperman v. Path, Inc.*, 205 F. Supp. 3d 1064 (N.D. Cal. 2016) .......... 3

*Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007) .......... 7, 8, 9, 10

*Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657 (9th Cir. 2017) .......... *passim*

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788 (9th Cir. 2007) .......... 7, 12, 14

*Pinterest Inc. v. Pintrips Inc.*, 15 F. Supp. 3d 992 (N.D. Cal. 2014) .......... 2, 3

*Pinterest, Inc. v. Jin*, No. C 12-04586 RS, 2013 WL 5460821 (N.D. Cal. Sept. 30, 2013) .......... 2

*Tarantino v. Gawker Media, LLC*, No. 14-CV-603-JFW, 2014 U.S. Dist. LEXIS 77726 (C.D. Cal. Apr. 22, 2014) .......... 8

*UAB "Planner5D" v. Facebook, Inc.*, No. 10-cv-03132-WHO, 2019 U.S. Dist. LEXIS 203618 (N.D. Cal. Nov. 21, 2019) .......... 4

*Zagorsky-Beaudoin v. Rhino Entm't Co.*, No. CV-18-03031-PHX-JAT, 2019 WL 4259788 (D. Ariz. Sept. 9, 2019) .......... 10

**STATUTES**

Civil L.R. 7-3(b) .......... 5

**RULES**

Fed. R. Civ. P. 12(b)(6) ........................................................................................................ 1

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on May 21, 2020, at 2:00 p.m. in Courtroom 2, 4th Floor, United States District Courthouse, 1301 Clay Street, Oakland, California, before the Honorable Haywood S. Gilliam, Jr., Defendant Pinterest, Inc. ("Pinterest") will and hereby does move to dismiss the cause of action for contributory copyright infringement (Count II) in Plaintiff Harold Davis's Amended Complaint.

## STATEMENT OF REQUESTED RELIEF

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Pinterest requests that the Court dismiss Count II of the Amended Complaint with prejudice.

## STATEMENT OF ISSUE TO BE DECIDED

Whether Count II of the Amended Complaint should be dismissed for failure to state a claim for contributory copyright infringement in light of Plaintiff's failure to: (1) specify any third-party direct infringement for which Pinterest may be held contributorily liable; (2) plead facts demonstrating that Pinterest had actual knowledge of any such specific direct infringement; and (3) plead facts demonstrating that Pinterest either (a) materially contributed to the alleged infringement by failing to take simple measures for removing infringing content, or (b) induced users to use its service for the express purpose of promoting copyright infringement.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Pinterest is an online service that allows users to create their own online boards. When users hover their cursors over images on Pinterest, they will see the URL of the websites from which the images originate. And if a user clicks on an image on Pinterest, the user will be redirected to that website. In this way, Pinterest provides attribution to the websites from which content is sourced; it also drives traffic back to those websites. By enabling users to post, share, and browse content, Pinterest provides a way for people to express themselves,

discover new things, and engage with the people who create them.[1] Pinterest's users include countless photographers and other visual artists for whom the platform offers a space on which to search and find content for inspiration, as well as to promote and market their work. Many artists enjoy—and benefit from—the wider audience that their work gains through its availability on Pinterest.

But for anyone whose work appears on Pinterest against both their wishes and the company's policy prohibiting copyright infringement, Pinterest offers fast relief. From its inception in 2010 to present, Pinterest has maintained robust, clearly defined processes in accordance with the Digital Millennium Copyright Act (DMCA) for requesting that any such materials be taken down. Pinterest's DMCA process is incorporated into its Terms of Service and expresses the company's core commitment to respecting copyrights. In no small part because of its vigilance regarding copyrights, Pinterest has developed into a publicly traded company whose platform contains billions of pieces of content posted by hundreds of millions of users.

Plaintiff Harold Davis, a photographer, opted to sue Pinterest rather than avail himself of the DMCA process's ready-made solution. In his initial Complaint, he alleged that some of his photographs appear on Pinterest's service and that Pinterest "copied, posted, and distributed" ten of his photographs into email alerts sent to unspecified users. (Those users, it turned out, were Plaintiff and his wife.) In response, Pinterest moved to dismiss his claim for contributory copyright infringement. The motion cited two fatal pleading failures: first, Plaintiff's failure to identify third-party acts of direct infringement for which Pinterest could be held contributorily liable; second, Plaintiff's failure to plead facts establishing Pinterest's actual knowledge of specific acts of direct infringement by a third party.

Plaintiff filed an Amended Complaint and Jury Demand ("Amended Complaint") that piles on more photographs and emails, but does nothing to correct these basic pleading failures.

---

[1] This Court has explained the basic operation of the Pinterest service in two cases. *See Pinterest, Inc. v. Jin*, No. C 12-04586 RS, 2013 WL 5460821, at *1 (N.D. Cal. Sept. 30, 2013); *Pinterest Inc. v. Pintrips Inc.*, 15 F. Supp. 3d 992, 994-95 (N.D. Cal. 2014).

Plaintiff seeks to allege contributory infringement through theories of material contribution and inducement. Those theories fail both for the reasons explained in Pinterest's original motion to dismiss and for additional ones. Plaintiff still fails to identify specific acts of direct infringement by third parties or plead facts showing Pinterest knew about any such direct infringements. Beyond that, on the material contribution theory, Plaintiff fails to identify any "simple measures" that Pinterest failed to use to remove Plaintiff's photographs from its platform without being notified of the alleged infringements by Plaintiff. *Perfect 10, Inc. v. Giganews, Inc*., 847 F.3d 657, 671 (9th Cir. 2017). As to inducement, Plaintiff fails to allege that Pinterest engaged in any "clear expression or other affirmative steps taken to foster infringement" as required by the Supreme Court's decision in *MGM Studios Inc. v. Grokster, Ltd*., 545 U.S. 913, 919 (2005). For all of these reasons, Plaintiff's contributory-infringement claim should be dismissed without further leave to amend.

## II. BACKGROUND

Pinterest allows its users to upload digital images (called "pins") to virtual bulletin boards and share those pins with others around the world for inspiration, for comment, for self-expression, or for marketing purposes. Am. Compl. ¶ 14; *see also Pintrips*, 15 F. Supp. 3d at 994-95. Pinterest routinely receives acclaim from photographers for the powerful promotional outlet it provides for their work. *See, e.g.*, Kramer Decl. Ex. 1 ("If you are a photographer who is ignoring Pinterest, then you are missing out on what may be the best marketing opportunity on the internet for you."); Kramer Decl. Ex. 2 ("Pinterest has the potential to be an excellent resource for creative business owners who are looking to drive awareness, traffic, and sales or bookings on their websites.").[2]

[2] These articles are referenced only as background, and not as evidence, given the sparse allegations in the Amended Complaint regarding Pinterest's service. The Court may judicially notice the existence of the articles. *See Opperman v. Path, Inc.*, 205 F. Supp. 3d 1064, 1070 n.5 (N.D. Cal. 2016) ("The Court 'may take judicial notice of publications introduced to indicate what was in the public realm at the time, not whether the contents of those articles were in fact true.'" (citation omitted)).

Pinterest recognizes that users may sometimes share images through the service contrary to the wishes of copyright holders. It offers copyright holders various ways to address that situation. In accordance with the DMCA, Pinterest's Terms of Service incorporates a Copyright Policy that explains how a copyright holder may secure the removal of unauthorized images from the service.[3] Pinterest provides step-by-step instructions for submitting a notice of alleged copyright infringement to Pinterest's designated DMCA agent and offers an online form to facilitate the process. *See* Kramer Decl. Ex. 4. Thus, any copyright owner whose content is uploaded to Pinterest against his or her wishes has an easy remedy.

Plaintiff did not avail himself of that remedy. Instead, on November 20, 2019, he brought this action for direct and contributory copyright infringement of certain of his photographs that allegedly appeared on Pinterest's service. Dkt. No. 1. Plaintiff did not claim to have requested (through DMCA notices or otherwise) that his photographs be removed from Pinterest's service. Nor did he even complain about them being there. Instead, he alleged that Pinterest, in the ordinary operation of its service, "copied, posted, and distributed" ten of his photographs in algorithmically generated email alerts to unspecified users. *See, e.g.*, *id.* ¶ 44.

On February 19, 2020, Pinterest moved to dismiss Plaintiff's contributory-infringement claim in the initial complaint for failure to: (1) identify any third-party direct infringement for which Pinterest could be contributorily liable; and (2) plead facts demonstrating that Pinterest had actual knowledge of any such specific acts of direct infringement. Dkt. No. 17. Plaintiff filed neither an opposition to the motion nor the required Statement of Nonopposition when its

[3] Plaintiff references Pinterest's website and specifically Pinterest's Terms and Conditions of Service in the Amended Complaint. *See* Am. Compl. ¶¶ 16-17. The Terms and Conditions of Service includes Pinterest's Copyright Policy, and the contents of both webpages are readily verifiable and not subject to dispute. Accordingly, it is proper for the Court to consider those materials under the incorporation-by-reference doctrine. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (admitting contents of website on motion to dismiss under incorporation-by-reference doctrine where plaintiffs did not dispute the authenticity of incorporated material); *UAB "Planner5D" v. Facebook, Inc.*, No. 10-cv-03132-WHO, 2019 U.S. Dist. LEXIS 203618, at *5 n.1 (N.D. Cal. Nov. 21, 2019) (considering contents of website under incorporation-by-reference doctrine where plaintiff "repeatedly refer[red] to . . . website and include[d] . . . web address in the Complaint").

response came due on March 4, 2020. *See* Civil L.R. 7-3(b). On March 11, 2020, Plaintiff filed an Amended Complaint and Jury Demand ("Amended Complaint"). Dkt. No. 23.

Plaintiff's amendments are high on volume and low on substance. The Amended Complaint adds 31 new photographs that—like the ten original photographs—were allegedly included in algorithmically-generated emails that Pinterest sent to users. *See, e.g.*, Am. Compl. ¶ 183. Notably, virtually all of these emails went to Plaintiff's or his wife's email accounts as a consequence of their use of the platform. *See, e.g.*, Am. Compl. Exs. 91, 141, 148. Although Plaintiff has added 213 paragraphs of new allegations, almost all consist of rote allegations following the initial complaint's pattern: allegations regarding when Plaintiff took the photographs, posted them to Flickr, and registered them with the U.S. Copyright Office, followed by formulaic assertions that Pinterest "copy, posted, and distributed" the photographs via email. *Compare id.* ¶¶ 27-56, 153-182 (allegations regarding original ten photographs and corresponding emails), *with id.* ¶¶ 42-152, 183-306 (similar allegations for additional 31 photographs and emails). In short, Plaintiff's substantive allegations remain essentially unchanged in his First Amended Complaint.

Indeed, despite Pinterest having specifically highlighted the omission in its prior motion to dismiss, Plaintiff again fails to allege that he has requested—or even wants—removal of his photographs from Pinterest's service. *See* Pinterest's Mot. to Dismiss Count II of Compl., Dkt. No. 17, at 2:2-3, 4:2-4. He certainly does not allege that he has ever sent Pinterest a takedown notice requesting the removal of those photographs. That Plaintiff is seemingly uninterested in having these images removed from the service is perhaps not surprising, as several of the pins link to websites offering Plaintiff's photographs for sale. *See, e.g.*, Am. Compl. Ex. 125 (pin listing photograph's price and linking to a website offering photograph for sale); *id.* Ex. 162 (pin linking to a website offering photograph for sale).

Rather than request removal of his photographs, or even accept one of Pinterest's many offers to assist in their removal, Plaintiff reasserts two counts of copyright infringement against Pinterest. Count I appears as it did in Plaintiff's initial complaint; it rests on the claim that Pinterest sent algorithmically-generated emails to its users in which it "copied, posted, and

distributed" his photographs without his consent or permission. Am. Compl. ¶ 326. That, according to Plaintiff, constitutes direct infringement of his copyrights.[4] Count II, for contributory infringement, alleges in conclusory fashion that Pinterest "directly induced and materially contributed" to the infringement of unnamed, unspecified users by "provid[ing] mechanisms" that enable them to infringe Plaintiff's photographs. Am. Compl. ¶¶ 329-31. Plaintiff does not incorporate the Amended Complaint's other allegations into its contributory-infringement count, but elsewhere, the Amended Complaint includes new allegations that generally describe the operation of Pinterest's service and the features available to its users. *See id.* ¶¶ 18-26, 309-15. Because these allegations do nothing to correct the flaws that remain in the contributory-infringement claim, Pinterest now renews its motion to dismiss that claim.

## III. ARGUMENT

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Moreover, "[c]ourts do not 'accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'" *Backus v. Biscomerica Corp.*, 378 F. Supp. 3d 849, 853 (N.D. Cal. 2019) (quoting *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)); *Iqbal*, 556 U.S. at 678 ("Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" (alteration in original) (quoting *Twombly*, 550 U.S. at 557)). Courts are not "bound to accept as true a legal conclusion

[4] While outside the pleadings, and thus beyond the scope of this motion, Plaintiff's claim of direct infringement relies on a mistaken premise: that Plaintiff's photographs are actually copied or distributed via the emails. In fact, however, the emails simply contain framed hyperlinks to the images as they exist on the Internet. Distribution of mere links in this fashion is not actionable as copyright infringement. *See eAdGear, Inc. v. Liu*, No. CV-11-05398-JCS, 2012 WL 2367805, at *12 (N.D. Cal. June 21, 2012) ("[H]yperlinking alone does not constitute copyright infringement, since it does not involve any actual copying.") (collecting cases), *report and recommendation adopted by* No. C-11-05398-RMW (JCS), 2012 WL 4005454 (N.D. Cal. Sept. 11, 2012). In addition, both the DMCA and the fair-use doctrine apply to Plaintiff's direct infringement claims and protect Pinterest from liability.

couched as a factual allegation." *Twombly*, 550 U.S. at 555 (citation omitted). Rather than a "formulaic recitation" of the elements of a claim, a plaintiff must assert "well-pleaded factual allegations" that "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 678-79. "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555. Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

### A. Count II Should Be Dismissed Because Plaintiff Does Not Allege a Plausible Claim of Contributory Infringement

A plaintiff asserting a claim for contributory copyright infringement must allege: (1) direct infringement by a third party; (2) the defendant's knowledge of that third party's direct infringement; and (3) that the defendant "either (a) materially contribute[d] to or (b) induce[d] that infringement." *Giganews*, 847 F.3d at 670 (quoting *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 794-95 (9th Cir. 2007)). Plaintiff's Amended Complaint does not satisfy any of these elements.

#### 1. Plaintiff Fails to Plead Direct Infringement by Any Third Party

"Secondary liability for copyright infringement does not exist in the absence of direct infringement by a third party." *Fox Broad. Co. v. Dish Network LLC*, 747 F.3d 1060, 1068 (9th Cir. 2014) (quoting *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 n.2 (9th Cir. 2001)). Before a court can even consider whether a defendant is contributorily liable for another's infringement, a plaintiff must first establish that there has been direct infringement by third parties. *See Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1169 (9th Cir. 2007); *see also Free Speech Sys., LLC v. Menzel*, 390 F. Supp. 3d 1162, 1173 (N.D. Cal. 2019) ("[T]o state a claim of contributory infringement, a copyright holder must first allege direct infringement by a third party." (citing *Perfect 10*, 508 F.3d at 1169)). The Ninth Circuit has made clear that this is a "threshold requirement." *Perfect 10*, 508 F.3d at 1169.

Despite amending the complaint to add many paragraphs of new allegations and new works-in-suit, Plaintiff nowhere alleges facts sufficient to show any actual act of direct infringement by a third party. Instead, the Amended Complaint offers a single conclusory sentence alleging that Pinterest, "without the permission or consent of Plaintiff, provided mechanisms to Pinterest users to copy, post, download, crop, alter, and share [his photographs]." Am. Compl. ¶ 329. But Pinterest's provision of "mechanisms" to its users without Plaintiff's consent is not a claim of direct infringement by any given third party. What matters is whether the activities of Pinterest's *users* were undertaken without Plaintiff's permission or consent and amounted to instances of direct infringement. *Free Speech Sys.*, 390 F. Supp. at 1173 (dismissing contributory-infringement claim for failure to allege direct, third-party infringement where party "only alleged that [adversary] provided the means to accomplish an infringing activity"); *cf. Fox*, 747 F.3d at 1070 (finding no contributory infringement against service provider whose users were likely engaged in fair use). That is wholly missing here. Plaintiff makes no attempt to allege who those unnamed "Pinterest users" are and what their specific acts of direct infringement may have been. Plaintiff's failure to offer any such allegations, even after being put on notice of this deficiency by Pinterest's original motion to dismiss, requires dismissal of its contributory infringement claim. *See, e.g.*, *Epikhin v. Game Insight N. Am.*, No. 14-CV-04383-LHK, 2015 WL 2412357, at *4 (N.D. Cal. May 20, 2015) (dismissing contributory-infringement claim because "Plaintiffs d[id] not even identify the alleged third party infringers"); *see also Klauber Bros., Inc. v. H & M Hennes & Mauritz LP*, No. CV 18-03507-MWF (SSx), 2018 U.S. Dist. LEXIS 223308, at *18 (C.D. Cal. Dec. 11, 2018) (dismissing contributory-infringement claim for failure to allege direct third-party infringement); *Hayes v. Keys*, No. CV 14-6246-PA (JEMx), 2015 U.S. Dist. LEXIS 2860, at *9 (C.D. Cal. Jan. 7, 2015) (same); *Tarantino v. Gawker Media, LLC*, No. 14-CV-603-JFW (FFMx), 2014 U.S. Dist. LEXIS 77726, at *10-11 (C.D. Cal. Apr. 22, 2014) (same where plaintiff "merely speculate[d] that some direct infringement must have taken place" but failed to allege "the identity of a single third-party infringer, the date, the time, or the details of a single instance of third-party infringement") (collecting cases).

### 2. Plaintiff Fails to Plead that Pinterest Had Actual Knowledge of Specific Instances of Alleged Infringement of His Photographs

To state a claim for contributory infringement, a plaintiff must also allege that the defendant had "*actual* knowledge that *specific* infringing material is available using its system". *Giganews*, 847 F.3d at 671 (quoting *Amazon.com*, 508 F.3d at 1172). Actual knowledge requires more than "generalized knowledge . . . of the possibility of infringement." *Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1072 (9th Cir. 2013). Instead, as the Ninth Circuit has repeatedly held, contributory infringement requires a plaintiff to plead and prove that the defendant had "*actual* knowledge of *specific* acts of infringement." *Id.* (emphasis added) (citation omitted); *see also Napster*, 239 F.3d at 1021 ("[A]bsent any specific information which identifies infringing activity, a computer system operator cannot be liable for contributory infringement merely because the structure of the system allows for the exchange of copyrighted material.").

Here, too, the Amended Complaint is entirely deficient. Plaintiff does not offer any factual allegations to suggest that Pinterest had actual knowledge of any specific instance in which Plaintiff's images had been posted on its service without permission. Indeed, the Amended Complaint does not even try to claim that Pinterest had such knowledge. Instead, Plaintiff again points toward Pinterest's knowledge of its own "mechanisms." Am. Compl. ¶ 330 ("[Pinterest] designed, implemented, monitored, updated, and *therefore had direct knowledge of the mechanisms* provided to Pinterest users copy, post, download, crop, alter, and share Copyrighted Photographs." (emphasis added)).

This hand-waving allegation is plainly insufficient under controlling precedent. In *Luvdarts*, the Ninth Circuit reaffirmed that contributory liability does "not automatically follow where the 'system allows for the exchange of copyrighted material'" and emphasized that—in such situations—"'actual knowledge of specific acts of infringement' is required for contributory infringement liability." 710 F.3d at 1072 (quoting *Napster*, 239 F.3d at 1021). The Court affirmed dismissal of that claim because the plaintiff offered only "conclusory allegations" regarding the defendant's knowledge. *Id.* Courts within this Circuit likewise

regularly dismiss contributory-infringement claims when confronted with similarly deficient allegations of knowledge. In *National Photo Group, LLC v. Allvoices, Inc.*, No. C-13-03627 JSC, 2014 WL 280391 (N.D. Cal. Jan. 24, 2014), for example, the court found that the plaintiff failed to allege "facts plausibly suggesting that Defendant was on any notice, constructive or otherwise, of the infringing photographs on its website. That Defendant operates a website where infringing content may be posted is not, by itself, enough to state a claim for contributory infringement." *Id.* at *6; *see also, e.g.*, *Epikhin*, 2015 WL 2412357, at *4 (dismissing claim where plaintiff failed to plead "any facts in support of the threadbare assertion that [defendant] 'had knowledge of the infringing acts relating to Plaintiffs' copyrighted works'" (citation omitted)); *Muench Photography, Inc. v. Pearson Educ., Inc.*, No. 13-cv-03937-WHO, 2013 WL 6172953, at *6 (N.D. Cal. Nov. 25, 2013) (same); *see also Zagorsky-Beaudoin v. Rhino Entm't Co.*, No. CV-18-03031-PHX-JAT, 2019 WL 4259788, at *9 (D. Ariz. Sept. 9, 2019) (same). This case fits the same pattern. Despite being aware of this problem and amending his complaint, Plaintiff still has not come close to alleging the actual knowledge of specific third-party infringement that the law requires. For this reason too, the contributory-infringement claim fails as a matter of law.

**3. Plaintiff Fails to Plead that Pinterest Failed to Avail Itself of "Simple Measures" for Finding and Removing Plaintiff's Photographs**

While the Court need go no further to dismiss Plaintiff's contributory-infringement claim, it fails for the additional reason that Plaintiff fails to allege Pinterest's "material contribution" to some specific, underlying direct infringement. To establish material contribution in "the online context," a plaintiff must allege facts sufficient to show that the defendant can take "simple measures" to prevent known instances of infringement, yet "continues to provide access" to the infringed works. *Giganews*, 847 F.3d at 671 (quoting *Perfect 10*, 508 F.3d at 1172 ("[A] computer system operator can be held contributorily liable if it 'has *actual* knowledge that *specific* infringing material is available using its system,' and can 'take simple measures to prevent further damage' to copyrighted works, yet continues to provide access to infringing works." (citations omitted))).

Apart from the threadbare assertion that Pinterest has "materially contributed" to the infringement of his photographs, Plaintiff has made no attempt to identify what "simple measures" Pinterest might have undertaken to remove his photographs from its service in the absence of being put on notice of specific instances of infringement by Plaintiff. Nor could he: Plaintiff still does not even allege that he availed himself of Pinterest's robust notice-and-takedown procedures, which give copyright holders an effective and efficient means for alerting Pinterest to the unauthorized presence of their work on Pinterest and securing its prompt removal. *See* Kramer Decl. Exs. 3-4. Plaintiff's unwillingness to use those measures underscores that his material-contribution theory fails. *See Giganews*, 847 F.3d at 671 (even where plaintiff submitted generalized takedown demands for its photographs, defendant lacked "simple measures" for removing the images and thus was not liable for contributory infringement because plaintiff's notices did not include machine-readable information for the photographs); *Allvoices*, 2014 WL 280391, at *7 (granting motion to dismiss contributory-infringement claim where "Plaintiff fail[ed] to allege what 'simple measures' Defendant failed to take to prevent further damage to the copyrighted photographs").

**4. Plaintiff Fails to Plead an Inducement Claim Under *Grokster***

Under the inducement theory of secondary liability recognized by the Supreme Court, "one who distributes a device *with the object of promoting its use to infringe copyright*, as shown by *clear expression or other affirmative steps taken to foster infringement*, is liable for the resulting acts of infringement by third parties." *Grokster*, 545 U.S. at 919 (emphasis added). To allege an inducement claim, a plaintiff must establish four elements: "(1) the distribution of a device or product, (2) acts of infringement, (3) an object of promoting its use to infringe copyright, and (4) causation." *Giganews*, 847 F.3d at 672 (quoting *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1034 (9th Cir. 2013)). The third prong, intent, is "usually dispositive," *Fung*, 710 F.3d at 1034, as the inducement rule "premises liability on purposeful, culpable expression and conduct," that is, "*statements or actions directed to promoting infringement*." *Grokster*, 545 U.S. at 935, 937 (emphasis added). Under this strict standard, "mere knowledge of infringing potential or of actual infringing uses" of a product or a

service is not enough. *Id.* at 937; *see also Cobbler Nev., LLC v. Gonzales*, 901 F.3d 1142, 1148 (9th Cir. 2018) ("failure to take affirmative steps to prevent infringement" is insufficient (citing *Grokster*, 545 U.S. at 939 n.12)); *Nat'l Photo Grp.*, 2014 WL 280391, at *7 ("[T]he improper object must be plain and must be affirmatively communicated through words or actions." (quoting *Fung*, 710 F.3d at 1034)).

In the absence of such clear indications of an intent to foster infringement, the Ninth Circuit has consistently rejected inducement claims. In *Giganews*, for example, the plaintiff contended, inter alia, that the defendant offered "25,000 terabytes of copyrighted materials," continued "to commercially exploit the content of known repeat infringers," and advertised its failure to "keep track of subscriber downloads, effectively encouraging infringement." 847 F.3d at 672. This did not come close to the required intent: "[N]one of this conduct suggests that Giganews clearly expressed an intent to promote infringement or took 'affirmative steps . . . to foster infringement.'" *Id.* (quoting *Grokster*, 545 U.S. at 936-37); *see also id.* (finding the evidence of intent "entirely inconclusive"). And in *Visa*, the Ninth Circuit affirmed dismissal of an inducement claim where the plaintiff sued credit-card companies on the theory that "because Defendants induce customers to use their cards to purchase goods and services," they were "therefore guilty of specifically inducing infringement if the cards are used to purchase images from sites that have stolen content." 494 F.3d at 800. The Ninth Circuit flatly rejected this theory, holding that its acceptance "would render the concept of 'inducement' virtually meaningless." *Id.* at 801. The court underscored that for liability to exist, it is "crucial" for the defendant to have actually "communicated an inducing message to their . . . users." *Id.* (citation omitted); *see also id.* at 802 (rejecting the argument that defendants, by knowingly processing purchases of infringement materials and by lending "their names and logos to the offending websites," had thereby clearly expressed "a specific intent to foster infringement").

That is consistent with the Supreme Court's recognition that the culpable intent required for inducement must be "unmistakable." *Grokster*, 545 U.S. at 940; *see also Fung*, 710 F.3d at 1037. There, the Supreme Court noted that the defendants advertised their peer-to-peer software as an alternative to Napster—a "notorious file-sharing service" that was "under attack

in the courts for facilitating massive infringement." *Grokster*, 545 U.S. at 924, 937. Among other acts, the defendants gave "clear expression" of their intent to facilitate infringement by distributing newsletters "promoting its software's ability to access popular copyrighted music" and by "responding affirmatively to requests for help in locating and playing copyrighted materials." *Id.* at 937, 938. Similarly, in *Fung*, the Ninth Circuit catalogued the many indicia of intent: the defendant requested that users upload specific copyrighted films, posted links to copyrighted films, and sent messages urging users to download various copyrighted films. 710 F.3d at 1036. The defendant went so far as to personally assist users in "uploading torrent files corresponding to obviously copyrighted material, finding particular copyrighted movies and television shows, getting pirated material to play properly, and burning the infringing content onto DVDs for playback on televisions." *Id.*

Plaintiff's limited allegations here offer nothing like those in *Grokster*, *Fung*, or even *Giganews*. Plaintiff alleges only that Pinterest induced "the widespread infringement by Pinterest users that resulted from the mechanisms provided to Pinterest users to copy, post, download, crop, alter, and share" his photographs. Am. Compl. ¶ 331. But it is settled law that simply providing tools capable of use for infringing purposes is not enough. *See Grokster*, 545 U.S. at 934 (culpable intent may not be imputed solely "from the characteristics or uses of a distributed product"); *id.* at 937 ("mere knowledge of infringing potential or of actual infringing uses" is insufficient to give rise to liability).

Instead, "the improper object must be plain and must be affirmatively communicated." *Fung*, 710 F.3d at 1034. The only thing the Amended Complaint offers that even gestures in that direction is an anodyne statement allegedly contained on Pinterest's website:

> Pinterest is a virtual pinboard. Pinterest allows you to organize and share all the beautiful things you find on the web. You can browse pinboards created by other people to discover new things and get inspiration from people who share your interests.

Am. Compl. ¶ 17. This statement cannot possibly be construed as an expression of intent that Pinterest's platform be used for copyright infringement, let alone a clear, unmistakable expression of such intent. *See Giganews*, 847 F.3d at 672 (defendant's advertisements

regarding its service's ability to search for, and download, content did not "indicate[] that [defendant] itself promoted its product 'with the object' of infringing copyright"). This case is similar to *National Photo Group*, which rejected an inducement claim and explained that the operation of "a website where infringing content may be posted is not, by itself, enough to state a claim for contributory infringement." 2014 WL 280391, at *6; *id.* at *7 ("Plaintiff fails to explain why the ability to use social media to share news stories featuring the allegedly infringing photographs—in other words, 'ordinary acts incident to' Defendant's operation of its website—constitutes an improper object" (quoting *Grokster*, 545 U.S. at 937)).

Finally, any contention that Pinterest induces copyright infringement by sending emails that direct users back to the service is meritless. Routine acts of user engagement cannot give rise to inducement liability absent allegations that Pinterest intended its service be used for copyright infringement and clearly, unmistakably expressed that intent. *See Grokster*, 545 U.S. 937 ("ordinary acts incident to product distribution" alone are insufficient to give rise to liability). Nothing like that exists here. Indeed, Pinterest's indisputable policy is to *discourage* copyright infringement. In its Terms of Service Agreement, which Plaintiff quotes in his Amended Complaint (and thus is incorporated by reference, *see Knievel*, 393 F.3d at 1076), Pinterest plainly states its commitment to respecting copyrights and prominently displays its robust, easy-to-follow notice-and-takedown procedures. *See* Kramer Decl. Exs. 3-4.

In short, because Plaintiff does not (and cannot) point to any "'clear expression' or 'affirmative acts' with any specific intent to foster infringement," its inducement claim fails. *Visa*, 494 F.3d at 801; *see also, e.g.*, *Cobbler*, 901 F.3d at 1148 (holding that "a failure to take affirmative steps to prevent infringement" was insufficient to create inducement); *ALS Scan v. Cloudflare, Inc.*, No. CV 16-5051-GW (AFMx), 2017 WL 1520444, at *6 (C.D. Cal. Feb. 16, 2017) (holding that plaintiff failed to allege "that [defendant] provides its services for the purpose of promoting copyright infringement, or that it has directly encouraged [third-party website] to display infringing content on its website"); *Ledesma v. Corral*, No. 2:15-cv-04266-ODW-GJS, 2016 WL 827743, at *9 (C.D. Cal. Mar. 2, 2016) (same where allegations did "not permit the Court to find anything other than a speculative right to relief").

## CONCLUSION

For these reasons, Pinterest respectfully requests that the Court dismiss Plaintiff's claim for contributory copyright infringement (Count II).

Respectfully submitted,

Dated: April 10, 2020

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: *__/s/ David H. Kramer__*
David H. Kramer
dkramer@wsgr.com

*Attorneys for Defendant*
PINTEREST, INC.