**REESE LLP**
Sue J. Nam (Cal. State Bar No. 206729)
Michael R. Reese (Cal. State Bar No. 206773)
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone:  (212) 643-0500
Email:  *snam@reesellp.com*
          *mreese@reesellp.com*

**REESE LLP**
George V. Granade (Cal. State Bar No. 316050)
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone:  (310) 393-0070
Email:  *ggranade@reesellp.com*

**THE LAW OFFICE OF DAVID C. DEAL, P.L.C.**
David C. Deal (to be admitted *pro hac vice*)
P.O. Box 1042
Crozet, Virginia 22932
Telephone: (434) 233-2727
Counsel for Plaintiff
Email: *david@daviddeal.com*

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAROLD DAVIS,<br><br>                        Plaintiff,<br><br>        vs.<br><br>PINTEREST, INC.<br><br>                        Defendant. | Civil Case No.: 19-cv-7650<br><br>**SECOND AMENDED COMPLAINT**<br><br>(1) Copyright Infringement, 17 U.S.C. § 101 *et seq.*;<br>(2) Contributory Copyright Infringement, 17 U.S.C. § 101 *et seq.*<br><br><u>**Demand for Jury Trial**</u> |

Plaintiff Harold Davis ("Plaintiff") brings this Second Amended Complaint against Pinterest, Inc. ("Pinterest" or "Defendant") and respectfully alleges as follows. Plaintiff bases the allegations herein on personal knowledge as to matters related to, and known to, him. As to all other matters, he bases his allegations on information and belief, through investigation of his counsel. Plaintiff believes substantial evidentiary support exists for his allegations, and he seeks a reasonable opportunity for discovery.

## INTRODUCTION

1.    Pinterest was founded in 2008 and has quickly grown to be one of the largest social media platforms in the world with 442 million monthly active users worldwide. *See* Pinterest Form 10 Q for the quarterly period ending September 30, 2020, available at https://d18rn0p25nwr6d.cloudfront.net/CIK-0001506293/d8e67182-d81a-46ba-8309-9d7ddc06a1d6.pdf, at 22. Pinterest bills itself a "visual discovery engine that people around the globe use to find the inspiration to create a life they love." *Id.*, at 12.

2.    Like many successful social media companies, Pinterest is both Dr. Jekyll and Mr. Hyde. On the one hand, Pinterest has become a wildly popular social media site and mobile application by allowing its users or "Pinners" to freely create and share virtual image boards. On the other hand, Pinterest monetizes the images "pinned" by its users to the detriment of federally registered image owners like Plaintiff.

3.    Although "Pinners" and advertisers may love Pinterest, it is the bane of copyright owners whose federally registered images are misused by and through Pinterest.

4.    By providing a mechanism for people to easily "pin" images from the internet, including Plaintiff's federally copyrighted works, Pinterest collects, stores, sorts, manipulates, distributes, and displays the billions of images that its users "pin."

5.    Pinterest depends on the constant "pinning" of images by users, with little regard for the source or the rights of the owners of those images, because the foundation of Pinterest's business is the hundreds of billions of images uploaded by users, not one of them paid for by Pinterest.

6.      Pinterest monetizes those images – often without the identifying source of those images and certainly without authorization or compensation to the copyright holders of those images – by displaying and distributing those images to its users, which are incorporated with targeted advertisement. Moreover, the enormous number of images that are "pinned" by users is the data that feeds Pinterest's artificial intelligence used to generate advertisement revenues for Pinterest. The more images that are "pinned," the more Pinterest can use those images to make its websites and app more personalized and "sticky" to users, thereby making its paid advertisement more effective and more valuable.

7.      The result is the grotesque misuse of Plaintiff's artistic works to peddle products in a manner to which he, as the copyright owner, has never and would never consent. For example, Plaintiff's acclaimed photographs of flowers are used by Pinterest to advertise everything from candles to lip gloss to insecticide. And this is just the tip of the iceberg, as a review of Pinterest's websites reveals thousands upon thousands of instances where Plaintiff's federally copyrighted images are used by Pinterest to hawk goods and services.

8.      Pinterest directly and contributorily infringed, and continues to infringe, Plaintiff's federally registered copyrights.

9.      Plaintiff is damaged by having his images commercialized without consent by and through Pinterest. The unauthorized use by and through Pinterest negatively impacts the value of Plaintiff's federally registered images, which Plaintiff registered because he expressly wished to protect his images to the fullest extent of the law.

10.     This action seeks to remedy the harm that Pinterest has caused to Plaintiff by its unlawful acts. This action seeks actual or statutory damages and injunctive relief for direct and contributory infringement under the Copyright Act of the United States, 17 U.S.C. § 101 et seq. (the "Copyright Act").

SECOND AMENDED COMPLAINT

**PARTIES**

A.    **Plaintiff Harold Davis**

11.    Plaintiff Harold Davis is a resident of Berkley, California.

12.    Mr. Davis is a renowned digital artist and award-winning professional photographer. *Popular Photo Magazine* described his work as follows: "Harold Davis's ethereal floral arrangements have a purity and translucence that borders on spiritual." *Rangefinder Magazine* lauded: "Harold Davis is a force of nature—a man of astonishing eclectic skills and accomplishments."

13.    Mr. Davis is the author of many bestselling photography books including: *The Way of the Digital Photographer* (Peachpit Press, awarded as a Best Photography Book of the Year by Photo.net); *Achieving Your Potential As a Photographer: A Photographer's Creative Companion and Workbook* (Focal Press); *Photographing Flowers* (Focal Press, rated the Best Guide to Flower Photography by Digital Photographer Magazine); *Creative Black & White*, *2nd Edition: Digital Photography Tips and Techniques* (Rocky Nook); *Creative Garden Photography: Making Great Photos of Flowers, Gardens, Landscapes, and the Beautiful World Around Us* (Rocky Nook); *The Photographer's Black & White Handbook* (Monacelli Press).

14.    Mr. Davis is a Moab Master printmaker and a Zeiss Lens Ambassador. Mr. Davis' photographs have been licensed by art publishers, corporations, and online and print publications throughout the world.

15.    Mr. Davis' work has been exhibited in venues worldwide including but not limited to: Photokina (Cologne, Germany); MacWorld (San Francisco, California); PhotoPlus Expo (New York, New York); Weston Gallery (Carmel, California); the Gallery Photo (Oakland, California); the Arts & Friends Gallery (Heidelberg, Germany); and the Awagami Gallery (Tokushima, Japan).

16.    Mr. Davis is, and at all relevant times has been, the sole copyright owner of his photographic works (his "Works"), including but not limited to those listed in Exhibit A. Plaintiff's Works are the subject of valid and complete Certificates of Copyright Registration issued by the United States Copyright Office.

17.     Mr. Davis' Works are highly desired by collectors and licensees but also are the target of near-constant unauthorized copying. Because of the frequent theft of his Works, especially on the internet, Mr. Davis has devoted significant time and resources in monitoring the improper use of his Works. Mr. Davis uses Pixsy (www.pixsy.com), an online platform for image owners to discover where and how their images are being used online. Mr. Davis also hires attorneys to send cease-and-desist letters and initiate actions against copyright infringers.

**B.     Defendant Pinterest**

18.     Pinterest is a for-profit Delaware corporation with headquarters in San Francisco, California.

19.     Pinterest owns, operates, and is solely responsible for the content of its websites worldwide, including but not limited to www.pinterest.com, www.pinterest.ca, www.pinterest.mx, www.pinterest.uk, www.pinterest.com.au, www.pinterest.de, www.pinterest.jp, www.pinterest.fr, www.pinterest.it, www.pinterest.es, and the Pinterest mobile application ("app").

## JURISDICTION AND VENUE

20.     The Court has original subject matter jurisdiction over copyright claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a).

21.     This Court has personal jurisdiction over Defendant because the events giving rise to the claims occurred in this District, Defendant engaged in infringement in this District, Defendant resides in this District, and Defendant is subject to personal jurisdiction in this District.

22.     Venue in this District is proper under 28 U.S.C. § 1391(b) in that a substantial part of the events giving rise to Plaintiff's claims occurred in this judicial district, and under 28 U.S.C. § 1400(b) in that it is a judicial district where Defendant has committed acts of copyright infringement and had a regular and established place of business.

## ALLEGATIONS COMMON TO ALL CLAIMS

23.    Pinterest, through its websites and app, allows its users to create and share virtual bulletin boards, or "boards," to which they have posted, or "pinned," items that have been uploaded. Users can have multiple boards for various topics or themes. Users can browse, like, and comment on each other's Boards and Pins, and "re-pin" each other's content. *See* https://help.pinterest.com/en/guide/all-about-pinterest. Although Pinterest characterizes "pins" as "bookmarks that people use to save ideas they love on Pinterest," *id.*, Pinterest is primarily an image-based platform. Thus, the vast majority of "pinned" items are images, whether still or moving, uploaded from the internet.

24.    A user's main Pinterest page is a "home feed." The Pins in a user's home feed are not simply those that the user has selected. Instead, Pinterest displays other Pins from a library of images "pinned" by users, which Pinterest collects, stores and maintains. Pinterest's library of images is estimated to be in the hundreds of billions. The images that Pinterest displays to the user are personalized based on the specific user's boards, recent activity on Pinterest, and favorite topics. Importantly, the images that users see on their home feed are integrated with advertisements designed to appear similar or along the same theme to the users' Pins.

25.    Pinterest generates its revenue with these advertisements. *See* Pinterest Form 10 Q for the quarterly period ending September 30, 2020, available at https://d18rn0p25nwr6d.cloudfront.net/CIK-0001506293/d8e67182-d81a-46ba-8309-9d7ddc06a1d6.pdf, at 12 ("We generate revenue by delivering ads on our website and mobile application."). In just the third quarter of 2020, Pinterest generated approximately $442 million in ad revenue. *Id.* at 7.

26.    Pinterest uses its library of images to entice users to interact with its websites and app, including by distributing the images directly to the user by email and/or through the Pinterest app. Pinterest seamlessly integrates advertisement into the various "pinned" images it displays, so the images are part of the targeted advertisement campaign.



**Image 1** (Pinterest user's screen shot with advertisements circled).

### A.   Pinterest's Improper Use of Registered Copyrighted Images to Generate Advertisement Revenue

27.   Although Pinterest employs a highly sophisticated system for identifying and cataloguing "pinned" images, Pinterest does not have in place a system of screening the Pins for copyright notices or other indicia of copyright ownership associated with the "pinned" images. Indeed, Pinterest deliberately removes indicia of copyright ownership to render its paid advertisement more effective and to actively thwart the efforts of copyright owners, like Plaintiff, to police the misuse of their works on and through Pinterest's website and app.

28.   The result is the blatant misuse by Pinterest of federally registered images to provide targeted advertisement.

29.   Plaintiff's Works have been displayed without his consent by Pinterest to advertise a wide range of goods such as air fresheners and insecticide.

**Image 2.**

30.     As seen in the above Pinterest user's screen shot (Image 2), Plaintiff's "Tulips 5 Squared," listed as Copyrighted Work No. 1 on Exhibit A, (indicated by "A" arrow), was originally "pinned" by "Florida Keys Photography" and saved to the "Photography Tutorials" board (circled). Pinterest then copied and distributed Plaintiff's copyrighted image to other Pinterest users to advertise Glade air fresher (circled in lower left-hand corner).

31.     Pinterest also displayed Plaintiff's other Works without attribution or indication that they are copyright protected. In the above screen shot (Image 2), the following Works are displayed:

- "Tulips 2," listed as Copyrighted Work No. 2 on Exhibit A (indicated by "B" arrow)
- "Clematis on Black," listed as Copyrighted Work No. 3 on Exhibit A (indicated by "C" arrow)
- "Poppies," listed as Copyrighted Work No. 4 on Exhibit A (indicated by "D" arrow)
- "Tulip Pano," listed as Copyrighted Work No. 5 on Exhibit A (indicated by "E" arrow)
- "Tulips 5 Squared," Copyrighted Work No. 1 on Exhibit A (indicated by "F" arrow)

32.     Pinterest displayed Plaintiff's Works in connection with advertisement for a variety of other products such as snacks, furniture, and women's garments.



"Tulips 4 Squared," listed
as Copyrighted Work No. 6 on Exhibit A

**Image 3** (advertisements by Room&Board (a furniture retailer) and Chex (a breakfast cereal company) circled).



"Poppy Delight," listed as Copyrighted Work No. 7 on Exhibit A

"Poppies," listed as Copyrighted Work No. 4 on Exhibit A

"Flowers of Spring Desire," listed as Copyrighted Work No. 8 on Exhibit A

"Orchid," listed as Copyrighted Work No. 9 on Exhibit A

**Image 4** (advertisements by Minted (a stationary and paper goods retailer), Shapermint (a women's undergarment retailer), Shein (a clothing retailer) and Lulu & Georgia (a furniture retailer) circled).



| | |
|---|---|
| "Tulips 5 Squared," listed as Copyrighted Work No. 1 on Exhibit A. | "Clematis on Black," listed as Copyrighted Work No. 3 on Exhibit A. |

**Image 5** (advertisement by Glossier (a cosmetics company) circled).

33.     Plaintiff did not and would not authorize his Works to be used to advertise any of these products.

34.     Such unauthorized, commercial use of federally registered images debases the value and integrity of Plaintiff's Works.

35.     Regardless of whether the initial "pinning" of Plaintiff's Work by a user was fair use, Pinterest's use of that same image for advertisement campaigns is not. Moreover, there is nothing passive about how Pinterest stores, manipulates, manages, and uses Plaintiff's protected images.

36.     Pinterest itself copies, stores, distributes, and displays the protected images to generate ad revenue, not simply upon instigation by its users.

37.     Pinterest actively sends federally registered images via email or through its app to entice users to interact with its websites and view its paid advertisements, and it displays protected images on users' feeds along with paid advertisement.

38.     The following is an example of an email that Pinterest sent on June 5, 2020, displaying Plaintiff's federally registered work, "Flowers of Spring Desire," listed as Copyrighted Work No. 8 on Exhibit A.



**Image 6** (Plaintiff's work circled).

39.     As a result, Pinterest does not qualify for protection from copyright infringement because Pinterest initiates the copying and distribution of federally registered images.

**B.      Pinterest's Removal of Copyright Management Information and Other Identifying Information**

40.     Although Pinterest may claim that it merely hyperlinks images or frames hyperlinked imaged, as they exist on the internet, this simply is not true.

41.     Pinterest often displays images with no information regarding who originally "pinned" it or from what website. And Pinterest often displays Plaintiff's Works that do not link back to any live website, let alone Plaintiff's website.

**Image 7**.

42.    As seen in the above Pinterest user's screen shot (Image 7), Pinterest uses Plaintiff's "Into the Vortex of the Universe" listed as Copyrighted Work No. 10 on Exhibit A, (circled), to promote the wares of PetSmart, Minted and Wayfair (circled). The use of Plaintiff's federally registered image to sell cheaper knockoffs of his work on Minted (a stationery and paper goods retailer) and Wayfair (a furniture and home decoration retailer) causes direct economic damage to Plaintiff.

43.    Pinterest's display of Plaintiff's federally registered image in Image 7 is just one example of countless instances where Pinterest provides no information regarding who originally "pinned" Plaintiff's Works or from what website the Works are "pinned." Pinterest provides no identifying information and no attribution. In many instances, such as in the example of the screen shot in Image 7, Pinterest's display of Plaintiff's Works is static and does **not** link back to any live page or website.

44.    In using pinned images for advertisement, Pinterest also deliberately strips the images of their identifying source and/or copyright management information ("CMI"), including metadata.

45.    Plaintiff ensures that all authorized displays of Plaintiff's Works on the internet display his CMI, including the name of the work, the copyright symbol, and Plaintiff's name.

-12-
SECOND AMENDED COMPLAINT

46.    Specifically with respect to metadata, Plaintiff adds to his images XML fields, a type of mini database appended to the image file, known as EXIF and/or IPTC. The EXIF/IPTC is wrapped up and encoded into the image file, using an encoding format known as Adobe XMP.

47.    Plaintiff inputs the following information into the XML fields of virtually all his digital images:

| | |
|---|---|
| Document Title: | [name of the image] |
| Author: | [Harold Davis] |
| Description: | [© Harold Davis] |
| Keywords: | [a comma delimited list, which will show up as "tags" on some social media] |
| Copyright Status: | [Copyrighted] |
| Copyright notice: | [© Harold Davis] |
| Copyright info URL: | [http://www.digitalfieldguide.com] |

48.    Many, if not most, professional photographers insert, at a minimum, key CMI metadata, commonly known as the 4C's (Caption/description, Creator, Copyright Notice, Credit Line), onto their images in order to facilitate identifying, tracking and protecting their images. Indeed, adding identifying EXIF/IPTC to photographs is a part of the regular workflow of most professional photographers. Many professional cameras can be set to automatically add 4C data. In addition, industry standard applications such as Adobe Lightroom and Adobe Photoshop can add or edit additional information.

49.    As seen below, in this particular instance, the original "pinned" image links back to Plaintiff's website and contains some, but not all, of Plaintiff's CMI. *See* Image 8, displaying "Tulips 5 Squared © Harold Davis" (circled).

**Image 8** (Plaintiff's CMI circled).

50. To be clear, Pinterest displays countless images of Plaintiff's Works that are not "pinned" back to Plaintiff's website. In Image 8, Pinterest displayed among paid advertisements other images of Plaintiff's Works with no visible CMI and no link back to Plaintiff's website.

51. In fact, **in all** instances that Pinterest displayed Plaintiff's Works in the context of advertisement, Pinterest deliberately removed any visible CMI. *See* Image 9 below (Plaintiff's Work circled, indicated by "A" arrow).



**Image 9**.

52.     This screen shot (Image 9) shows that Pinterest displayed other works of Plaintiff, again with no attribution and with its visible CMI removed:

- "Dahlia," listed as Copyrighted Work No. 11 on Exhibit A (indicated by "B" arrow)
- "Two Icelandic Poppies," listed as Copyrighted Work No. 12 on Exhibit A (indicated by "C" arrow)
- "Tulips 4 Squared," listed as Copyrighted Work No. 6 on Exhibit A (indicated by "D") arrow

*See also* Images 2, 4-8, 10 herein, displaying Plaintiff's Works without their CMI.

53.     By removing any visible CMI and identifiable sources from the "pinned" images, Pinterest ensures that users will focus more on the paid advertisement. The paid advertisement contains identifying tags and live links, which makes the paid advertisement stand out among Pinterest's use of stripped, often static "pinned" images

54.     Pinterest also deliberately removes any metadata that copyright owners, like Plaintiff, have embedded onto their digital images to identify and protect their works. When a user "pins" or uploads an image, Pinterest renames the image with a new JPEG name and strips the EXIF/IPTC from the image before storing and displaying that image.

55.     In other words, Pinterest takes affirmative actions to remove copyright owner's CMI, including the EXIF/IPTC metadata, which copyright owners embed into the image file specifically to identify, track, and protect their images.

56.     Removing the CMI and the identifying source of images is Pinterest's modus operandi. Pinterest knowingly removes the CMI, not only to make its paid advertisement stand out among "pinned" images that otherwise would provide attribution and attention to the owners of the images, but also to induce, enable, facilitate, and conceal its own direct and/or contributory infringement of copyright images.

57.     By removing the CMI, Pinterest ensures that copyright owners cannot easily identify their works on Pinterest's website and app, thereby preventing them from submitting to Pinterest comprehensive take down notices.

58.     By removing what would otherwise be easily searchable CMI, Pinterest can claim ignorance that copyrighted images are being infringed by Pinterest itself and by third parties. Pinterest actively thwarts the efforts of copyright owners, like Plaintiff, to police the misuse of

-15-

their works on Pinterest, then puts the onus on copyright holders to identify and object to each instance of specific infringement. Pinterest ensures that copyright owners face insurmountable time and effort to take down the hundreds of thousands, if not millions, of instances of improper use of their copyrighted works on Pinterest's website and app by Pinterest and third parties, which exponentially multiply by the hour.

**C.    Pinterest Materially Contributes to the Copyright Infringement by Third Parties**

59.    Pinterest has developed highly sophisticated methods to identify and catalogue the vast trove of "pinned" images that it stores and manages. *See*, *e.g.*, https://medium.com/pinterest-engineering.

60.    Pinterest allows its users to search its library of images then to download the images with a click of a button.



**Image 10**.

61.    The screenshot above (Image 10) shows the search result for the term "Papaver and Campanula," which displays Plaintiff's Work, "Papaver and Campanula," listed as Copyrighted Work No. 13 on Exhibit A (circled). As discussed above, Pinterest deliberately strips Plaintiff's Work of its CMI, including its EXIF/ IPTC data, and gives the image a new JPEG name.

62.    Thus, when the user hovers on the image, the user is given the easy option of downloading that image by clicking on the "…" symbol, which pulls up the option to download the photo as a JPEG with no identifiers at all.



**Image 11** (downloading option circled).



**Image 12** (downloaded image as JPEG file with no identifiers).

63.    Pinterest's app similarly makes downloading an image exceedingly easy. As seen below (Image 13), simply clicking on an image brings up a toolbar with the option to download the image onto one's smartphone.

-17-



**Image 13** (screen shots from Pinterest app).

64.     With respect to many images, Pinterest also provides, again with a click of a button, the ability to "Get Pin embed code." A user can then copy and paste this embed code into his or her own webpage and display that same image on the user's web page. Pinterest's embed code uses the nomenclature "assets.pinterest.com."



**Image 14** ("Get Pin embed code" option circled).

**Image 15**.

65.    As a result of the copying tools Pinterest provides, Pinterest is the source of rampant infringement by third parties of Plaintiff's Works. By displaying images without CMI, which would otherwise notify users that the image is copyrighted and the identity of the owner, Pinterest deliberately obscures the fact many of the images on Pinterest's websites and app are proprietary and protected.

66.     Pinterest is aware its websites and app are used by third parties to infringe registered copyrights. Specifically, Pinterest was made aware that Plaintiff's Works are being copied improperly on and through Pinterest.

67.     In April 2019, Plaintiff contacted Pinterest's Chief Executive Officer ("CEO") Ben Silberman via email stating, in part:

> I am writing you as the CEO of Pinterest. As a practicing artist and photographer trying to support my family as best I can, for quite a long while I have been distressed about the use of my images on Pinterest, which literally is in the thousands of images and tens of thousands (or hundreds of thousands) of usages. Many, or most, of these usages are without attribution or link-backs.

68.     Plaintiff also had communications with Ally Boutelle, Intellectual Property Operations Manager at Pinterest, regarding the misuse of his Works on Pinterest in April, May and June 2019.

69.     Despite these communications with Pinterest's senior management, Pinterest continues to both directly and contributorily infringe Plaintiff's protected Works.

70.     Although Pinterest could implement reasonable and feasible means to remove federally registered materials from its library of images, it does not.

71.     Pinterest has built its business on its ability to organize and categorize images. It has developed robust technology to make its library of "pinned" images searchable both by words and images. Pinterest explains.

> **Search**
> You can search for Pins, boards, people or hashtags in the search bar. We'll also show you ideas for you and trending ideas to spark some inspiration. If you're not quite sure what you're looking for, try typing in something general ("dinner ideas"), then use Pinterest's built-in search guides (like "healthy" or "for kids") to narrow down your results. If you're on your phone, try tapping the camera icon next to the search bar to do a visual search for related ideas.

https://help.pinterest.com/en/article/discover-ideas-on-pinterest

72.     At a minimum, Pinterest could stop stripping "pinned" images of embedded EXIF/ IPTC data and instead preserve the CMI metadata when it uploads the images.

73.    Pinterest also could ensure that its users are not permitted to download or embed those images that contain indicia of copyright without clicking a notice or otherwise acknowledging that the image may only be copied, downloaded, or embedded for the user's personal, non-commercial, or educational purposes.

74.    Instead, Pinterest provides what amounts to a library of laundered images, stripped of their identifying source and CMI, including metadata, for Pinterest users to copy, download and/or embed for commercial use.

75.    The following is Plaintiff's "Wheel Barrow Tipping," listed as Copyrighted Work No. 14 on Exhibit A.



76.    This Work was "pinned" and used without permission by a Pinterest user, First E Source, to sell industrial supplies on Pinterest. *See* Image 16 below.

1

2

3

4

5

6

7

8

9

10



**Image 16**.

11

12

77.    Another Work that has been used frequently without permission is the following "Kiss for a Rose," listed as Copyrighted Work No. 15 on Exhibit A.

13

14

15

16

17

18

19

20



21

22

23

24

25

26

27

28

78.    On August 15, 2017, Pixsy, on behalf of Plaintiff, sent a cease and desist letter regarding the unauthorized use of this image by Whispers In Water Ltd. The cease and desist letter is attached hereto as Exhibit B.

79.    In response, the principal of Whispers In Water Ltd. explained that she found the image on Pinterest and therefore thought she could use it freely.

80.    There are thousands, if not tens of thousands, of Plaintiff's Works displayed on Pinterest's website and app by third parties without authorization and for improper purposes. Pinterest's website and app also is the source where third parties obtain images of Plaintiff's Works for unauthorized use elsewhere.

81.    Because Pinterest deliberately strips images of their identifying source and/or CMI, including EXIF/IPTC metadata, then allows users to easily download those laundered images from Pinterest's website and app, Pinterest knowingly hinders the efforts of copyright owners, like Plaintiff, to enforce their copyrights on Pinterest's website and app and elsewhere on the internet. By removing identifying data from copyrighted images when users "pin" the images on its website and app, Pinterest also conceals that it is the source of those images when they are, in turn, downloaded and misused by third parties. Plaintiff cannot, for example, use simple keyword searches. Rather he must hire services like Pixsy to conduct reverse engine searches, then conduct expensive and/or time-consuming research to track down the infringers.

82.    For copyright holders, Pinterest is not a harmless social media platform for users "to find the inspiration to create a life they love." Rather, for professional artists like Plaintiff, Pinterest makes it exponentially more difficult to maintain the livelihood they love. Pinterest devalues copyrighted works and deprives copyright holders of the protections afforded to them by federal law, all to increase Pinterest's advertisement revenue.

SECOND AMENDED COMPLAINT

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Direct Infringement of Plaintiff's Copyrights

83.     Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

84.     Plaintiff is, and at all relevant times has been, the sole copyright owner of his federally registered works.

85.     Defendant, without the permission or consent of Plaintiff, copied, distributed, and publicly displayed his federally registered, copyright protected works. Defendant's acts violated Plaintiff's exclusive rights under the Copyright Act.

86.     Defendant's actions constitute infringement of Plaintiff's copyrights under the Copyright Act.

87.     Plaintiff is informed and believes that the foregoing act of infringement was willful and intentional in disregard of and with indifference to Plaintiff's rights.

88.     Each dissemination of a copyrighted work on and through Defendant's websites and app constitutes a separate and distinct act of infringement under the Copyright Act.

89.     Pursuant to 17 U.S.C. § 504(c)(1), Plaintiff is entitled to the minimum statutory damages of $750 per work infringed by Defendant. Plaintiff also seeks up to $30,000 per work infringed by Defendant as allowed under 17 U.S.C. § 504(c)(1), or such other amounts as may be deemed proper by the Court under 17 U.S.C. § 504(c)(1).

90.     Based upon Defendant's willful violation of the Copyright Act, Plaintiff also seeks statutory damages – concurrent with damages awarded pursuant to 17 U.S.C. § 504(c)(1) – of $150,000 per work infringed by Defendant, or such other amounts as may be deemed proper by the Court under 17 U.S.C. § 504(c)(2).

91.     Plaintiff is entitled to his actual damages, which include all of Defendant's profits derived from the infringement of Plaintiff's federally registered works in amounts to be proven at trial. In addition, Plaintiff is entitled to costs and reasonable attorneys' fees in prosecuting this action pursuant to 17 U.S.C. § 505.

1

2

3

## SECOND CAUSE OF ACTION
### Contributory Infringement of Plaintiff's Copyrights

4

5

     92.     Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

6

7

8

     93.     Third parties have used Pinterest websites and app to engage in copyright infringement of the Plaintiff's Works, including but not limited to "Wheel Barrow Tipping" and "Kiss for a Rose," in violation of the Copyright Act.

9

10

     94.     Defendant had knowledge of direct infringement by third parties of Plaintiff's Works on and through Pinterest's websites and app.

11

12

     95.     Defendant directly induced and materially contributed to the infringement by third parties of Plaintiff's Works.

13

14

15

     96.     Each dissemination of Plaintiff's copyrighted work by third parties on and through Defendant's websites and app constitutes a separate and distinct act of infringement under the Copyright Act.

16

17

18

19

     97.     Pursuant to 17 U.S.C. § 504(c)(1), Plaintiff is entitled to the minimum statutory damages of $750 per work infringed by Defendant.  Plaintiff also seeks up to $30,000 per work infringed by Defendant as allowed under 17 U.S.C. § 504(c)(1), or such other amounts as may be deemed proper by the Court under 17 U.S.C. § 504(c)(1).

20

21

22

23

     98.     Based upon Defendant's willful contributory violation of the Copyright Act, Plaintiff also seeks statutory damages – concurrent with damages awarded pursuant to 17 U.S.C. § 504(c)(1) – of $150,000 per work infringed by Defendant, or such other amounts as may be deemed proper by the Court under 17 U.S.C. § 504(c)(2).

24

25

26

     99.     Plaintiff is entitled to his actual damages in amounts to be proven at trial. In addition, Plaintiff is entitled to costs and reasonable attorneys' fees in prosecuting this action pursuant to 17 U.S.C. § 505.

27

28

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the Court to enter an Order:

A.      declaring that Defendant has committed the violations of the Copyright Act as alleged herein;

B.      providing for any and all injunctive relief the Court deems appropriate;

C.      awarding statutory damages as provided for in the Copyright Act;

D.      awarding monetary damages, including but not limited to any compensatory, incidental, or consequential damages in an amount that the Court or jury will determine, in accordance with applicable law;

E.      Awarding Plaintiff his costs and reasonable attorney's fees in this action, pursuant to the Copyright Act; and

F.      Awarding Plaintiff such other and further relief as is just and proper.

SECOND AMENDED COMPLAINT

1

## JURY DEMAND

2

     Plaintiff hereby demands a trial by jury on all claims for which there is a right to jury

3

trial.

4

5

Dated: November 11, 2020

**REESE LLP**

6

*/s/ Sue J. Nam*

Sue J. Nam (Cal. State Bar No. 206729)

7

Michael R. Reese (Cal. State Bar No. 206773)

100 West 93rd Street, 16th Floor

8

New York, New York 10025

Telephone: (212) 643-0500

9

Facsimile: (212) 253-4272

Email: *snam@reesellp.com*

10

       *mreese@reesellp.com*

11

**REESE LLP**

12

George V. Granade (Cal. State Bar No. 316050)

8484 Wilshire Boulevard, Suite 515

13

Los Angeles, California 90211

Telephone: (212) 643-0500

14

Facsimile: (212) 253-4272

Email: *ggranade@reesellp.com*

15

16

- and –

17

18

**THE LAW OFFICE OF DAVID C. DEAL, P.L.C.**

19

David C. Deal (VA Bar No.: 86005)

20

P.O. Box 1042

Crozet, Virginia 22932

21

Telephone: (434) 233-2727

Email: *david@daviddeal.com*

22

*Attorneys for Plaintiff*

23

24

25

26

27

28

SECOND AMENDED COMPLAINT