**REESE LLP**
Sue J. Nam (State Bar No. 206729)
*snam@reesellp.com*
Michael R. Reese (State Bar No. 206773)
*mreese@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile:  (212) 253-4272

**REESE LLP**
George V. Granade (State Bar No. 316050)
*ggranade@reesellp.com*
8484 Wilshire Boulevard, Suite 515
Los Angeles, California  90211
Telephone: (310) 393-0070
Facsimile:  (212) 253-4272

**THE LAW OFFICE OF DAVID C. DEAL, P.L.C.**
David C. Deal (admitted *pro hac vice*)
P.O. Box 1042
Crozet, Virginia 22932
Telephone: (434) 233-2727

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAROLD DAVIS, | Civil Case No.: 4:19-cv-07650-HSG |
| Plaintiff, | **PLAINTIFF'S OPPOSITION TO PINTEREST, INC.'S MOTION TO DISMISS COUNT II OF SECOND AMENDED COMPLAINT** |
| vs. | |
| PINTEREST, INC. | DATE:     March 4, 2021 |
| | TIME:     2:00 pm |
| | DEPT:     Courtroom 2, 4th Floor |
| Defendant. | JUDGE:  Hon. Haywood S. Gilliam, Jr. |
| | Complaint Filed: November 20, 2019 |

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................................... i

TABLE OF AUTHORITIES .............................................................................................. ii

STATEMENT OF ISSUES TO BE DECIDED ................................................................. 1

INTRODUCTION ................................................................................................................ 1

    I.      Allegations in Plaintiff's Second Amended Complaint ........................................... 3

          A.     Pinterest's Improper Use of Plaintiff's Registered Copyrighted Images to Generate Advertisement Revenue ........................................................... 5

          B.     Pinterest's Deliberate Removal of Copyright Management Information in Order to Obfuscate Infringement and Impede Enforcement .................. 8

          C.     Pinterest Materially Contributes to the Copyright Infringement by Third Parties ................................................................................................ 10

ARGUMENT ..................................................................................................................... 14

    I.      Plaintiff Alleges Viable Theories of Contributory Copyright Infringement ......... 15

          A.     Plaintiff Sufficiently Alleged "Material Contribution" to Third-Party Copyright Infringement ......................................................................... 15

               1.     Plaintiff Alleges Pinterest's Requisite Knowledge of Infringement by Third Parties ......................................................... 17

               2.     Plaintiff Sufficiently Alleged "Material Contribution" ................. 20

          B.     Plaintiff Sufficiently Alleged "Inducement" of Contributory Copyright Infringement .......................................................................................... 21

CONCLUSION ................................................................................................................... 25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*A & M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001)....................................17, 18

*Adobe Systems Inc. v. NA Tech Direct Inc.*, Case No. 17-cv-05226-YGR,
2019 WL5579472 (N.D. Cal. October 29, 2019) ....................................................................17

*Arista Records, LLC v. Doe 3*, 604 F.3d 110 (2d Cir. 2010) ........................................................18

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..................................................................................14, 15

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..................................................................14, 15

*Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020 (9th Cir. 2013) ................................23, 24

*Erickson Prods., Inc. v. Kast*, 921 F.3d 822 (9th Cir. 2019) ...............................................passim

*In re Napster, Inc. Copyright Litigation*, 377 F. Supp. 2d 796 (N.D. Cal. 2005)........................17

*Knievel v. ESPN*, 393 F.3d 1068 (9th Cir. 2005)........................................................... 3, 17, 24

*Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 658 F.3d 936 (9th Cir. 2011)...............17

*Luvdarts, LLC v. AT & T Mobility, LLC*, 710 F.3d 1068 (9th Cir. 2013)........................17, 18, 19

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005) .......................passim

*Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007) ..................................passim

*Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657 (9th Cir. 2017).....................................15, 20, 21

*Perfect 10, Inc. v. Visa Intern. Service Ass'n*, 494 F.3d 788 (9th Cir. 2007) ..............................25

*Stevens v. Corelogic, Inc.*, 899 F.3d 666 (9th Cir. 2018)........................................................24, 25

*VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723 (9th Cir. 2019) ......................................................20

**RULES**

Federal Rule of Civil Procedure 12(b)(6) ..............................................................................14, 15

1    Plaintiff Harold Davis, by and through his undersigned counsel of record, respectfully

2    submits this opposition to Defendant Pinterest, Inc.'s Motion to Dismiss Count II of Plaintiff's

3    Second Amended Complaint ("MTD"), ECF No. 62.

4    <u>**STATEMENT OF ISSUES TO BE DECIDED**</u>

5    Whether Defendant's limited motion to dismiss Count II must be denied because Defendant

6    misstates the applicable standard and Plaintiff's allegations sufficiently meet the correct standard.

7    <u>**INTRODUCTION**</u>

8    In its efforts to defend against Plaintiff's valid copyright infringement claims, Pinterest has

9    mischaracterized its platform, mischaracterized Plaintiff's allegations, and mischaracterized

10   binding Supreme Court and Ninth Circuit law. Pinterest previously claimed that it "hyperlinks to

11   the images as they exist on the Internet" (ECF No. 27 at 6, n. 4); it merely provides fair use

12   "thumbnails" of images (ECF No. 53 at 8-10); and that it does not remove copyright management

13   information ("CMI") (*Id.*). Faced with detailed factual allegations refuting these assertions,

14   Pinterest no longer repeats them, but now implies that Plaintiff "wants [his] images to remain on

15   the service, whether to benefit from the free promotion or to manufacture a lawsuit." MTD at 2.

16   This is yet another assertion that is directly contradicted by the allegations in the Second Amended

17   Complaint ("SAC"), ECF No. 56.

18   Plaintiff is a renowned digital artist and award-winning professional photographer, who

19   has exhibited in prestigious venues worldwide and published numerous bestselling books on

20   photography. SAC at ¶¶ 12-15. Because Plaintiff's photographic works (the "Works") are highly

21   desired by collectors and licensees, they are the target of near-constant unauthorized copying.

22   Plaintiff does not "manufacture litigation." He sues infringers to protect his valuable Works, which

23   he federally registers to ensure the fullest protection under the law. *Id.* at ¶¶ 16-17. Moreover,

24   Pinterest does not provide "free promotion," given that Pinterest regularly displays Plaintiff's

25   Works on its website and app with no attribution and no renumeration so that Pinterest's clients,

26   who pay to advertise on Pinterest's platform, can sell cheaper knockoffs. *Id.* at ¶¶ 28-53.

27

28

1    The reality is that Pinterest engages in blatant theft of Plaintiff's Works to generate
2    advertisement revenue for itself. Pinterest relies upon the eye-catching, aesthetically pleasing
3    images of artists like Plaintiff to generate those revenues, which amounted to $442 million in just
4    the third quarter of 2020. *Id.* at ¶¶ 25-26. Then, Pinterest actively thwarts the efforts of copyright
5    owners, like Plaintiff, to police the misuse of their works on Pinterest. Pinterest puts the onus on
6    copyright holders to identify and object to each instance of specific infringement, but deliberately
7    makes that task more difficult and burdensome by renaming the files of the copyrighted image and
8    removing CMI. Pinterest thereby ensures that Plaintiff faces insurmountable time and effort to take
9    down the thousands of instances of improper use by Pinterest and third parties of his copyrighted
10   Works on Pinterest's platform, which exponentially multiply by the hour. *Id.* at ¶¶ 54-58.

11   Plaintiff's pre-suit communications with Pinterest put it on notice of what is alleged in his
12   SAC – that Pinterest hides behind a disingenuous take-down procedure when it erects barriers
13   against copyright holders effectively availing themselves of that procedure. *See* Declaration of
14   Henry Lien ("Lien Decl."), Exhibit 1 (ECF. No. 62-3) at 2 ("Surely you must know that Pinterest's
15   reliance on the DMCA is disingenuous (it is simply not practical for me to spend my time sending
16   take-downs to all the individual users via your process")); Exhibit 2 (ECF. No. 62-4) at 4 ("You
17   are hiding your theft of my IP (my images) behind nominal warnings about copyright to your user
18   base, and by compliance with the DMCA. In both cases, this is a wink-wink-nod-nod business
19   model, and I'm sure you know what is really going on."). Thus, Plaintiff alleged in his SAC that
20   Pinterest knowingly and deliberately removed identifying information from Plaintiff's Works,
21   including visible CMI and metadata containing CMI, for the very purpose of obfuscating its own
22   infringement as well as the infringement by third parties of his Works. SAC at ¶¶ 56-58. Indeed,
23   Ally Boutelle, Intellectual Property Operations Manager at Pinterest, ***admitted*** that, beyond its
24   take-down procedure, Pinterest has "internal tools to identify and remove any matching files, and
25   to prevent those files from being uploaded again in the future." *See* Lien Decl., Exhibit 2 at 4.

26   By removing what would otherwise be easily searchable file names and CMI and requiring
27   an onerous take-down procedure rather than using its own "internal tools," Pinterest tries to claim

28

1  ignorance that copyrighted images are being infringed by Pinterest itself and by third parties. SAC

2  at ¶ 58. Thus, Plaintiff alleged that Defendant took active steps to avoid acquiring knowledge,

3  thereby meeting the "willful blindness" standard for constructive knowledge, as well as the more

4  lenient "reason to know" standard, which the Ninth Circuit recently confirmed meets the

5  knowledge element of a contributory infringement claim. *See Erickson Prods., Inc. v. Kast*, 921

6  F.3d 822, 831 (9th Cir. 2019).

7  Binding Supreme Court and Ninth Circuit case law, when read in full rather than in

8  Defendant's self-serving snippets, makes clear that Plaintiff properly alleged Pinterest's

9  contributory infringement that is the subject of its limited motion to dismiss. Defendant even goes

10  as far as to suggest that this Court "not permit" Plaintiff's allegations that directly support his claim

11  of Pinterest's secondary liability "to be added now" because Plaintiff somehow engaged in

12  gamesmanship in this litigation in seeking leave to amend his complaint. MTD at 13. Of course,

13  Pinterest ___stipulated___ to much of this so-called gamesmanship, which both parties agreed would

14  streamline the litigations against Pinterest. *See* ECF No. 42. This is Plaintiff's first and only

15  substantive opposition to Defendant's motion to dismiss his contributory infringement claim, yet

16  Pinterest invites this Court to commit reversible error by urging the Court to disregard allegations

17  in the SAC when this Court "**must** accept **_all_** factual allegations in the complaint as true and

18  construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393

19  F.3d 1068, 1072 (9th Cir. 2005) (emphasis added; citation omitted). Plaintiff respectfully requests

20  that Pinterest's motion be denied.

21  **I.    Allegations in Plaintiff's Second Amended Complaint**

22  Pinterest was founded in 2008 and has quickly grown to be one of the largest social media

23  platforms in the world with 442 million monthly active users worldwide. Pinterest bills itself a

24  "visual discovery engine that people around the globe use to find the inspiration to create a life

25  they love." Like many successful social media companies, Pinterest is both Dr. Jekyll and Mr.

26  Hyde. On the one hand, Pinterest has become a wildly popular social media site and mobile

27  application by allowing its users or "Pinners" to freely create and share virtual image boards. On

28

1   the other hand, Pinterest monetizes the images "pinned" by its users to the detriment of federally

2   registered image owners like Plaintiff. SAC at ¶¶ 1-2.

3      Although "Pinners" and advertisers may love Pinterest, it is the bane of copyright owners

4   whose federally registered images are misused by and through Pinterest. By providing a

5   mechanism for people to easily "pin" images from the internet, including Plaintiff's federally

6   copyrighted works, Pinterest collects, stores, sorts, manipulates, distributes, and displays the

7   billions of images that its users "pin." *Id.* at ¶¶ 3-4.

8      Pinterest depends on the constant "pinning" of images by users, with little regard for the

9   source or the rights of the owners of those images, because the foundation of Pinterest's business

10  is the hundreds of billions of images uploaded by users, not one of them paid for by Pinterest.

11  Pinterest monetizes those images – often without the identifying source of those images and

12  certainly without authorization or compensation to the copyright holders of those images – by

13  displaying and distributing those images to its users, which are incorporated with targeted

14  advertisement. Moreover, the enormous number of images that are "pinned" by users is the data

15  that feeds Pinterest's artificial intelligence used to generate advertisement revenues for Pinterest.

16  The more images that are "pinned," the more Pinterest can use those images to make its websites

17  and app more personalized and "sticky" to users, thereby making its paid advertisement more

18  effective and more valuable. *Id.* at ¶¶ 5-6.

19     The result is the grotesque misuse of Plaintiff's artistic works to peddle products in a

20  manner to which he, as the copyright owner, has never and would never consent. For example,

21  Plaintiff's acclaimed photographs of flowers are used by Pinterest to advertise everything from

22  candles to lip gloss to insecticide. And this is just the tip of the iceberg, as a review of Pinterest's

23  websites reveals thousands upon thousands of instances where Plaintiff's federally copyrighted

24  images are used by Pinterest to hawk goods and services. *Id.* at ¶ 7.

25     Pinterest, through its websites and app, allows its users to create and share virtual bulletin

26  boards, or "boards," to which they have posted, or "pinned," items that have been uploaded. Users

27  can have multiple boards for various topics or themes. Users can browse, like, and comment on

28

each other's Boards and Pins, and "re-pin" each other's content. *See* https://help.pinterest.com/en/guide/all-about-pinterest. Although Pinterest characterizes "pins" as "bookmarks that people use to save ideas they love on Pinterest," *id.*, Pinterest is primarily an image-based platform. Thus, the vast majority of "pinned" items are images, whether still or moving, uploaded from the internet. *Id.* at ¶ 23. Every pinned image on the Pinterest platform is saved on Pinterest's servers using a unique JPEG file that is stripped of embedded CMI and renamed with a name generated by Pinterest that has no relationship to the original file name of the image. *Id.* at ¶ 54.

A user's main Pinterest page is a "home feed." The Pins in a user's home feed are not simply those that the user has selected. Instead, Pinterest displays other Pins from a library of images "pinned" by users, which Pinterest collects, stores and maintains. Pinterest's library of images is estimated to be in the hundreds of billions. The images that Pinterest displays to the user are personalized based on the specific user's boards, recent activity on Pinterest, and favorite topics. Importantly, the images that users see on their home feed are integrated with advertisements designed to appear similar or along the same theme to the users' Pins. *Id.* at ¶ 24.

Pinterest uses its library of images to entice users to interact with its websites and app, including by distributing the images directly to the user by email and/or through the Pinterest app. Pinterest seamlessly integrates advertisement into the various "pinned" images it displays, so the images are part of the targeted advertisement campaign. Pinterest generates over a billion dollars of annual revenue with these advertisements. *Id.* at ¶¶ 25-26.

### A. Pinterest's Improper Use of Plaintiff's Registered Copyrighted Images to Generate Advertisement Revenue

The following are just a few examples of the countless misuse of Plaintiff's Works by Pinterest to advertise a wide range of goods such as air fresheners, insecticide, snacks, furniture, women's garments, makeup, etc. SAC at ¶¶ 29-33.



"Poppy Delight," listed as Copyrighted Work No. 7 on Exhibit A

"Poppies," listed as Copyrighted Work No. 4 on Exhibit A

"Flowers of Spring Desire," listed as Copyrighted Work No. 8 on Exhibit A

"Orchid," listed as Copyrighted Work No. 9 on Exhibit A

**Image 4, SAC at 9** (advertisements by Minted (a stationary and paper goods retailer), Shapermint (a women's undergarment retailer), Shein (a clothing retailer) and Lulu & Georgia (a furniture retailer) circled).



"Tulips 5 Squared," listed as Copyrighted Work No. 1 on Exhibit A.

"Clematis on Black," listed as Copyrighted Work No. 3 on Exhibit A.

**Image 5, SAC at 10** (advertisement by Glossier (a cosmetics company) circled).

1    Plaintiff did not and would not authorize his Works to be used to advertise any of these

2    products. Such unauthorized, commercial use of federally registered images debases the value and

3    integrity of Plaintiff's Works. Regardless of whether the initial "pinning" of Plaintiff's Work by a

4    user was fair use, Pinterest's use of that same image for advertisement campaigns is not. Moreover,

5    there is nothing passive about how Pinterest stores, manipulates, manages, and uses Plaintiff's

6    protected images. Pinterest itself copies, stores, distributes, and displays the protected images to

7    generate ad revenue, not simply upon instigation by its users. Pinterest actively sends federally

8    registered images via email or through its app to entice users to interact with its websites and view

9    its paid advertisements, and it displays protected images on users' feeds along with paid

10   advertisement. As a result, Pinterest does not qualify for protection from copyright infringement

11   because Pinterest initiates the copying and distribution of federally registered images. SAC at ¶¶

12   33-39.

13   The following is an example of an email that Pinterest sent on June 5, 2020, displaying

14   Plaintiff's federally registered work, "Flowers of Spring Desire," listed as Copyrighted Work No.

15   8 on Exhibit A of SAC.



**Image 6, SAC at 11** (Plaintiff's work circled).

1    In light of these detailed allegations of infringement, Pinterest has not moved to dismiss

2    Plaintiff's claim of direct copyright infringement.

3    **B.    Pinterest's Deliberate Removal of Copyright Management Information in Order to Obfuscate Infringement and Impede Enforcement**

4    Pinterest has built its business on its ability to organize and categorize images. It has

5    developed robust technology to make its library of "pinned" images searchable both by words and

6    images. Pinterest explains.

7    **Search**

8
9    You can search for Pins, boards, people or hashtags in the search bar. We'll also
show you ideas for you and trending ideas to spark some inspiration. If you're not
10    quite sure what you're looking for, try typing in something general ("dinner ideas"),
then use Pinterest's built-in search guides (like "healthy" or "for kids") to narrow
11    down your results. If you're on your phone, try tapping the camera icon next to the
search bar to do a visual search for related ideas.

12
13    https://help.pinterest.com/en/article/discover-ideas-on-pinterest. SAC at ¶ 71.

14    Although Pinterest employs a highly sophisticated system for identifying and cataloguing

15    "pinned" images, Pinterest does not have in place a system of screening the Pins for copyright

16    notices or other indicia of copyright ownership associated with the "pinned" images. Indeed,

17    Pinterest deliberately removes indicia of copyright ownership to render its paid advertisement

18    more effective and to actively thwart the efforts of copyright owners, like Plaintiff, to police the

19    misuse of their works on and through Pinterest's website and app. *Id.* at ¶ 27.

20    Plaintiff is professional artist whose works are highly desired by collectors and licensees.

21    SAC at ¶¶ 11-15. He is, and all relevant times has been, the sole copyright owner of his Works. *Id.*

22    at ¶ 16. Plaintiff ensures that all authorized displays of his Works on the internet display his CMI,

23    including the name of the work, the copyright symbol, and his name. *Id.* at ¶ 45. In addition to the

24    visible CMI, Plaintiff gives the JPEG file of his Works an identifying name and adds to his images

25    metadata, specifically XML fields, a type of mini database appended to the image file, known as

26    EXIF and/or IPTC. The EXIF/IPTC is wrapped up and encoded into the image file, using an

27    encoding format known as Adobe XMP. *Id.* at ¶ 46.

28

1    Plaintiff inputs the following information into the XML fields of virtually all his digital

2    images:

3        Document Title:          [name of the image]
         Author:                  [Harold Davis]
4        Description:             [© Harold Davis]
         Keywords:                [a comma delimited list, which will show up as "tags" on
5                                  some social media]
6        Copyright Status:        [Copyrighted]
         Copyright notice:        [© Harold Davis]
7        Copyright info URL:      [http://www.digitalfieldguide.com]

8    *Id.* at ¶ 47.

9        Pinterest deliberately removes the file name and any metadata that copyright owners, like

10   Plaintiff, have embedded onto their digital images to identify and protect their works. When a user

11   "pins" or uploads an image, Pinterest renames the image with a new JPEG name and strips the

12   EXIF/IPTC from the image before storing and displaying that image. In other words, Pinterest takes

13   affirmative actions to rename images and remove copyright owner's CMI, including the EXIF/IPTC

14   metadata, which copyright owners embed into the image file specifically to identify, track, and protect

15   their images. *Id.* at ¶ 54-55.

16       In all instances that Pinterest displayed Plaintiff's Works in the context of advertisement,

17   Pinterest deliberately removed any visible CMI. The screen shot shown below is just one example

18   of Pinterest displaying Plaintiff's Works (circled) with no attribution and with its visible CMI

19   removed. *Id.* at ¶¶ 51-52.

20

21

22

23

24

25

26

27

28



**Image 9, SAC at 14.** *See also* Images 2, 4-8, 10 of SAC, displaying Plaintiff's Works without their CMI.

By removing any visible CMI and identifiable sources from the "pinned" images, Pinterest ensures that users will focus more on the paid advertisement. The paid advertisement contains identifying tags, text, and live links, which makes the paid advertisement stand out among Pinterest's use of stripped, often static "pinned" images that otherwise would provide attribution and attention to the owners of the images. Pinterest also renames copyrighted images and removes its CMI to induce, enable, facilitate, and conceal its own direct and/or contributory infringement of copyright images. By renaming an image with a name wholly unrelated to the file name given by the image owner and by removing the CMI from copyrighted images, Pinterest ensures that copyright owners cannot easily identify their works on Pinterest's website and app, thereby preventing them from submitting to Pinterest comprehensive take down notices. *Id.* at ¶¶ 56-57.

## C. Pinterest Materially Contributes to the Copyright Infringement by Third Parties

Pinterest has developed highly sophisticated methods to identify and catalogue the vast trove of "pinned" images that it stores and manages. *See*, *e.g.*, https://medium.com/pinterest-engineering. Pinterest then allows its users to search its library of images then to download the images with a click of a button. *Id.* at ¶¶ 59-60.

The screenshot below shows the search result for the term "Papaver and Campanula,"

---

1   which displays Plaintiff's Work, "Papaver and Campanula" (top left). As discussed above,

2   Pinterest deliberately strips Plaintiff's Work of its CMI, including its EXIF/ IPTC data, and gives

3   the image a new JPEG name. *Id.* at ¶ 61. Thus, when the user hovers on the image, the user is

4   given the easy option of downloading that image by clicking on the "…" symbol, which pulls up

5   the option to download the photo as a JPEG with no identifiers at all. *Id.* at ¶ 62.

6

7

8   

9

10

11

12

13

14

15

16   **Image 11, SAC at 17** (downloading option circled).

17

18

19

20

21

22

23

24

25

26

27

28



**Image 12, SAC at 17** (downloaded image as JPEG file with no identifiers).

Pinterest's app similarly makes downloading an image exceedingly easy. As seen below, simply clicking on an image brings up a toolbar with the option to download the image onto one's smartphone. *Id.* at ¶ 63.

**Image 13, SAC at 18** (screen shots from Pinterest app).

1    With respect to many images, Pinterest also provides, again with a click of a button, the

2  ability to "Get Pin embed code." A user can then copy and paste this embed code into his or her

3  own webpage and display that same image on the user's web page. Pinterest's embed code uses

4  the nomenclature "assets.pinterest.com." *Id.* at ¶ 64.



**Image 14, SAC at 19** ("Get Pin embed code" option circled).



**Image 15, SAC at 19.**

1    As a result of the copying tools Pinterest provides, Pinterest is the source of rampant

2    infringement by third parties of Plaintiff's Works. By displaying images without CMI, which

3    would otherwise notify users that the image is copyrighted and the identity of the owner, Pinterest

4    deliberately obscures the fact that many of the images on Pinterest's websites and app are

5    proprietary and protected. *Id.* at ¶ 65.

6    Pinterest is aware its websites and app are used by third parties to infringe registered

7    copyrights. Specifically, Pinterest was made aware that Plaintiff's Works are being copied

8    improperly on and through Pinterest. In April 2019, Plaintiff contacted Pinterest's Chief Executive

9    Officer ("CEO") Ben Silberman via email. Plaintiff also had communications with Ally Boutelle,

10   Intellectual Property Operations Manager at Pinterest, regarding the misuse of his Works on

11   Pinterest in April, May and June 2019. Despite these communications with Pinterest's senior

12   management and the filing of this lawsuit on November 20, 2019, Pinterest continues to both

13   directly and contributorily infringe Plaintiff's protected Works. *Id.* at ¶¶ 66-69.

14   Although Pinterest could implement reasonable and feasible means to remove federally

15   registered materials from its library of images, it does not. At a minimum, Pinterest could stop

16   renaming files and stripping "pinned" images of embedded EXIF/ IPTC data and instead preserve

17   the CMI metadata and the original file name when it uploads the images. Pinterest also could

18   ensure that its users are not permitted to download or embed those images that contain indicia of

19   copyright without clicking a notice or otherwise acknowledging that the image may only be copied,

20   downloaded, or embedded for the user's personal, non-commercial, or educational purposes.

21   Instead, Pinterest provides what amounts to a library of laundered images, stripped of their

22   identifying source and CMI, including metadata, for Pinterest users to copy, download and/or

23   embed for commercial use. *Id.* at ¶¶ 70-74.

24                                               **ARGUMENT**

25   On a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, a complaint need only

26   "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

27   face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)  (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

28

544, 570 (2007)). "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 663.

**I.     Plaintiff Alleges Viable Theories of Contributory Copyright Infringement**

"A party engages in contributory copyright infringement when it (1) has knowledge of another's infringement and (2) either (a) materially contributes to or (b) induces that infringement." *Erickson*, 921 F.3d at 831 (internal quotation omitted). Based on the allegations in the SAC (¶¶ 75-80), Defendant does not challenge that Plaintiff properly pled predicate third party infringements. Instead, Defendant argues that Plaintiff failed to properly allege liability either under a "material contribution" or "inducement" theory of contributory liability.

**A.     Plaintiff Sufficiently Alleged "Material Contribution" to Third-Party Copyright Infringement**

Defendant fails to cite the correct standard for pleading a material contribution theory of liability. Defendant states that in an online context "a plaintiff ***must allege*** that defendant had 'actual knowledge that specific infringing material is available using its system, and can take simple measures to prevent further damage to copyrighted works, yet continues to provide access to infringing works.'" MTD at 7 (emphasis added). However, the Ninth Circuit held only that "a computer system operator is ***liable*** under a material contribution theory of infringement" if a plaintiff ultimately demonstrates these facts. *Perfect 10, Inc. v. Giganews, Inc.* ("*Giganews*"), 847 F.3d 657, 671 (9th Cir. 2017) (emphasis added; internal quotation omitted;  quoting *Perfect 10, Inc. v. Amazon.com, Inc.* ("*Amazon.com*"), 508 F.3d 1146, 1172 (9th Cir. 2007)). There are key distinctions between what Plaintiff must plead versus what he must prove on a motion for summary judgment or at trial, which Defendant conflates, and the entirety of Defendant's arguments are riddled with this misdirection.

In *Amazon.com*, the Ninth Circuit explained that, under the Supreme Court's decision in *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005), liability "may be

1  imposed for intentionally encouraging infringement through specific acts," but that *Grokster* "also

2  directs us to analyze contributory liability in light of rules of fault-based liability derived from the

3  common law, . . . [which] establish that intent be imputed." *Amazon.com*, 508 F.3d at 1170-71

4  (internal quotation and citation omitted). Thus, the Ninth Circuit held "a service provider's

5  knowing failure to prevent infringing actions could be the basis for imposing contributory liability"

6  because "[u]nder such circumstances, intent can be imputed." *Id.* at 1172.

7       Rather than narrowing the claim of contributory infringement, the Ninth Circuit expanded

8  it, recognizing that "[w]hen a widely shared service or product is used to commit infringement, it

9  may be impossible to enforce rights in the protected work effectively against all direct infringers,

10  the only practical alternative being to go against the distributor of the copying device for secondary

11  liability on a theory of contributory or vicarious infringement." *Id.* (quoting *Grokster*, 545 U.S. at

12  929-30). Thus, the Ninth Circuit concluded:

13
14  > Here the district court held that even assuming Google had actual knowledge of
infringing material available on its system, Google did not materially contribute to
infringing conduct because it did not undertake any substantial promotion or
15  > advertising efforts to encourage visits to infringing websites, nor provide a
significant revenue stream to the infringing websites. ***This analysis is erroneous.***
16  > There is no dispute that Google substantially assists websites to distribute their
infringing copies to a worldwide market and assists a worldwide audience of users
17  > to access infringing material. We cannot discount the effect of such a service on
copyright owners, even though Google's assistance is available to all websites, not
18  > just infringing ones. Applying our test, Google could be held contributorily liable
if it had knowledge that infringing Perfect 10 images were available using its search
19  > engine, could take simple measures to prevent further damage to Perfect 10's
copyrighted works, and failed to take such steps.
20

21  *Amazon.com*, 508 F.3d at 1172 (emphasis added; internal citation omitted).

22       The Ninth Circuit's decision with respect to Google is directly applicable to Pinterest.

23  Plaintiff has alleged that Pinterest substantially assists "a worldwide audience of users" to

24  distribute their infringing copies and to access infringing material. *Id.;* SAC at ¶¶ 1 – 9. Given

25  Plaintiff's allegation, this Court "cannot discount the effect of such a service on copyright owners,

26  even though [Pinterest's] assistance is available to all [users], not just infringing ones."

27  *Amazon.com*, 508 F.3d at 1172. And Plaintiff has alleged that Pinterest "had knowledge that

28

infringing [images of Plaintiff's Works] were available using its [platform], could take simple measures to prevent further damage to [Plaintiff's] copyrighted works, and failed to take such steps." *Id.*; SAC at ¶¶ 66-74. At this stage Plaintiff's allegations must be accepted as true. *Knievel*, 393 F.3d at 1072. Tellingly, the Ninth Circuit remanded *Amazon.com* because the district court did not resolve "factual disputes over the adequacy of Perfect 10's notices to Google and Google's responses to these notices" and "whether there are reasonable and feasible means for Google to refrain from providing access to infringing images." *Amazon.com,* 508 F.3d at 1172-73. In other words, having been pled, these factual issues cannot be determined as a matter of law on a motion to dismiss.

> **1.  Plaintiff Alleges Pinterest's Requisite Knowledge of Infringement by Third Parties**

Pinterest states that the Ninth Circuit has "repeatedly held" that a plaintiff "must plead that the defendant had '*actual* knowledge of *specific* infringement.'" MTD at 7 (emphasis in original). As discussed above, this is not the standard on a motion to dismiss but rather for a finding of liability. In this Circuit, allegations of constructive knowledge can be the basis for a contributory infringement claim. *Erickson*, 921 F.3d at 832; s*ee also Adobe Systems Inc. v. NA Tech Direct Inc.*, Case No. 17-cv-05226-YGR, 2019 WL 5579472, at *6 (N.D. Cal. October 29, 2019)  ("a claim for contributory copyright infringement requires . . . actual or constructive knowledge that third parties were directly infringing"); *In re Napster, Inc. Copyright Litigation*, 377 F. Supp. 2d 796, 801 (N.D. Cal. 2005) (same).

Indeed, the Ninth Circuit recently confirmed that "actual knowledge" is ***not*** the only mental state that satisfies the knowledge element of contributory infringement.

> [I]n *Luvdarts, LLC v. AT & T Mobility, LLC*, 710 F.3d 1068, 1072–73 (9th Cir. 2013), we held that "actual knowledge of specific acts of infringement" and "[w]illful blindness of specific facts" are the only two mental states that satisfy the "knowledge" element of contributory infringement. *Id.* But in *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 658 F.3d 936, 943 (9th Cir. 2011), we cited with approval a "know or have reason to know" instruction for contributory liability. *Id.*

*Erickson*, 921 F.3d at 832; *see also A & M Records, Inc. v. Napster, Inc.,* 239 F.3d 1004, 1022 (9th

1   Cir.2001) ("Contributory liability requires that the secondary infringer know ***or have reason to***

2   ***know*** of direct infringement.") (emphasis added). "Without resolving the apparent tension" among

3   these cases, the Ninth Circuit nonetheless rejected the claim that trial judge erred by instructing

4   the jury on a negligence standard for the knowledge element of contributory infringement instead

5   of "actual knowledge." *Erickson*, 921 F.3d at 832.

6        Although it remains unsettled whether Plaintiff ultimately must prove that Pinterest had

7   "reason to know" [1] of third-party infringement or that Pinterest was "willfully blind" to third-party

8   infringement, Plaintiff's claim of contributory infringement cannot be rejected on a motion to

9   dismiss, as Defendant argues, simply because he has not alleged "actual knowledge of specific

10  acts of infringement." MTD at 7-10. Thus, Plaintiff's allegations, construed in the light most

11  favorable to Plaintiff, meet the knowledge requirement of a contributory copyright claim.

12  Plaintiff's allegations meet even the higher standard of "willful blindness" articulated by the Ninth

13  Circuit: "In order to allege willful blindness, [the plaintiff] must allege that [the defendant] (1)

14  subjectively believed that infringement was likely occurring on their networks and that they (2)

15  took deliberate actions to avoid learning about the infringement." *Luvdarts*, 710 F.3d at 1073.

16       Plaintiff alleged that he ensures that all authorized displays of Plaintiff's Works on the

17  internet display his CMI, including the name of the work, the copyright symbol, and Plaintiff's

18  name. SAC at ¶45. Moreover, he alleged that he, like many other photographers, adds to his images

19  XML fields, a type of mini database appended to the image file, known as EXIF and/or IPTC,

20  specifically to identify, track, and protect their images. *Id.* at ¶ 46. Plaintiff alleged that Pinterest

21  removes any metadata that copyright owners, like Plaintiff, have embedded onto their digital

22  images to identify and protect their works. Specifically, when a user "pins" or uploads an image,

23  Pinterest renames the image with a new JPEG name and strips the EXIF/IPTC from the image

24  before storing and displaying that image. *Id.* at ¶¶ 54-55. Plaintiff alleged that, because Pinterest

25  

---

26  [1] Other circuits use the "reason to know" standard. *See, e.g.*, *Arista Records, LLC v. Doe 3*, 604
    F.3d 110, 118 (2d Cir. 2010) ("The knowledge standard is an objective one: contributory

27  infringement is imposed on persons who know or have reason to know of the direct
    infringement.").

28

1   renames his Work and removes his CMI, he cannot efficiently police his images on Pinterest's

2   website or elsewhere on the internet, for example, by using simple keyword searches of his name,

3   the title of his Works, or his JPEG file names, to find infringing works. Rather he must hire services

4   like Pixsy to conduct reverse engine searches, then conduct expensive and/or time-consuming

5   research to track down the infringers. *Id.* at ¶ 81.

6         Plaintiff's communications with Pinterest put it on notice of what is alleged in the SAC

7   that Pinterest hides behind a take-down procedure when it deliberately erects barriers against

8   copyright holders effectively availing themselves of that procedure. *See* Declaration of Henry Lien

9   ("Lien Decl."), Exhibit 1 (ECF. No. 62-3) at 2 ("Surely you must know that Pinterest's reliance

10  on the DMCA is disingenuous (it is simply not practical for me to spend my time sending take-

11  downs to all the individual users via your process")); Exhibit 2 (ECF. No. 62-4) at 4 ("You are

12  hiding your theft of my IP (my images) behind nominal warnings about copyright to your user

13  base, and by compliance with the DMCA. In both cases, this is a wink-wink-nod-nod business

14  model, and I'm sure you know what is really going on.").

15        Plaintiff alleged that Pinterest knowingly and deliberately renamed his Works and removed

16  Plaintiff's CMI, including metadata, for the very purpose of obfuscating its own infringement as

17  well as the infringement by third parties of his Works. SAC at ¶¶ 56-57. Plaintiff's allegations are

18  confirmed by Pinterest's own admission. *See* Lien Decl., Exhibit 2 at 4 ("If you have reference

19  files of your images that you want removed, we [Pinterest] can use our internal tools to identify

20  and remove any matching files, and to prevent those files from being uploaded again in the

21  future."). By removing what would otherwise be easily searchable CMI, Pinterest tries to claim

22  ignorance that copyrighted images are being infringed by Pinterest itself and by third parties. SAC

23  at ¶ 58. Thus, Plaintiff alleged that Defendant "took active steps to avoid acquiring knowledge,"

24  *Luvdarts*, 710 F.3d at 1073, thereby meeting the "willful blindness" standard for constructive

25  knowledge, as well as the more lenient "reason to know" standard, laid out by the Ninth Circuit.

26  *Erickson*, 921 F.3d at 832. This is hardly the type of "threadbare" assertions, MTD at 10, that may

27  be rejected on a motion to dismiss.

28

### 2.   Plaintiff Sufficiently Alleged "Material Contribution"

Defendant next challenges Plaintiff's allegations of material contribution to third-party infringement, arguing that Plaintiff failed to allege that defendant can take "simple measures" to prevent further damage to copyrighted works. MTD at 10-11. However, Plaintiff clearly and plainly alleged two measures that Defendant can take to prevent further damage to Plaintiff's Works. First, Plaintiff alleged that Defendant could stop renaming his Work and stripping his CMI when Defendant uploads his Works onto its website and app, which in turn would preserve his file name and CMI when users download his Work, thereby allowing him to more easily police improper uses of his Works on Pinterest's platform as well as elsewhere on the internet. *See* SAC at ¶¶44, 54-58, 61-65, 72. Second, Plaintiff alleged that Pinterest could ensure that its users are not permitted to download or embed those images that contain indicia of copyright without clicking a notice or otherwise acknowledging that the image may only be copied, downloaded, or embedded for the user's personal, non-commercial, or educational purposes. *Id.* at ¶ 73.

Pinterest has no answer for the first alleged measure and only focuses on the second measure, arguing (1) no case has held or suggested that such a notice could qualify as a "simple measure"; (2) "the SAC does not explain why instituting a download warning message would actually have 'prevent further damage' to Mr. Davis' works"; and (3) the proposed wording of the download warning does not properly encompass "basic precepts of copyright law." *See* MTD at 11-12. None of these are valid objections on a motion to dismiss.

Defendant cites *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 745 (9th Cir. 2019), and *Giganews*, 847 F.3d at 671, MTD at 11, but these cases were appeals after jury trial and summary judgment, respectively. In both those cases, the plaintiffs' contributory infringement claims failed, not because of insufficient allegations but rather, because of insufficient evidence. *See VHT*, 918 F.3d at 745 ("Zillow testified throughout the trial that, in order to systematically or swiftly take down a large number of photos, it required the Zillow Image ID — a number that is in the URL of each image. . . . Merely identifying the physical property address in no way identified the proper feed or the correct photo. Thus, Zillow did not have the appropriate 'specific' information

1   necessary to take 'simple measures' to remedy the violation.'"); *Giganews*, 847 F.3d at 672

2   ("Giganews presented sufficient evidence that Perfect 10's proposed method for locating

3   infringing messages was onerous and unreasonably complicated."). *See also Amazon.com*, 508

4   F.3d at 1172 (remanding because "there are factual disputes over whether there are reasonable and

5   feasible means for Google to refrain from providing access to infringing images").

6         Plaintiff has alleged the measures that Pinterest could take as a threshold matter, and the

7   parties should be permitted to take discovery and submit evidence on these and other measures

8   that could be simple or effective in preventing further damage to Plaintiff's Works. Indeed,

9   Pinterest itself indicated in its email communications with Plaintiff on May 6, 2019 that it has

10  "internal tools to identify and remove" images ***beyond*** its take-down procedure. Ms. Boutelle

11  wrote:

12         As you know, a DMCA notice is one way to get content removed from Pinterest,
           and we understand it can sometimes be time-consuming to identify the infringing
13         content. Instead, we would like to help you with the identification process if you're
           open to it. If you have reference files of your images that you want removed, we
14         can use our internal tools to identify and remove any matching files, and to prevent
           those files from being uploaded again in the future.
15

16  Lien Decl., Exhibit 2 (ECF No. 62-4) at 4.

17         In sum, Defendant cannot defeat Plaintiff's detailed allegations that Pinterest materially

18  contributed to third-party infringement on a motion to dismiss as a matter of law.

19         **B.      Plaintiff Sufficiently Alleged "Inducement" of Contributory Copyright
                     Infringement**
20

21         Defendant correctly states the elements of an inducement claim: (1) distribution of a

22  product or service, (2) acts of infringement, (3) object of promoting the product or service to

23  infringe a copyright, and (4) causation. MTD at 12 (citing *Giganews*, 847 F.3d at 672). Defendant

24  argues only that Plaintiff failed to allege the third element – intent. Specifically, Defendant

25  contends, "Like its predecessor, the SAC identifies no statements or communications by Pinterest

26  expressing an inducing message or urging its users to infringe copyrights." MTD at 12. Defendant

27  again misstates the applicable standard. The Supreme Court instructs that a defendant's requisite

28  intent can be shown "by clear expression ***or*** other affirmative steps taken to foster infringement."

*Grokster*, 545 U.S. at 937 (emphasis added). The Supreme Court has never suggested, let alone held, that a plaintiff must allege defendant's inducing or urging communication. In fact, the Supreme Court specifically rejected this notion. In *Grokster*, which was an appeal of the grant of summary judgment, the Supreme Court explained:

> [T]he evidence just described was supplemented by other unequivocal indications of unlawful purpose in the internal communications and advertising designs aimed at Napster users. . . . ***Whether the messages were communicated is not to the point on this record.*** . . . Proving that a message was sent out, then, is the preeminent but ***not exclusive way*** of showing that active steps were taken with the purpose of bringing about infringing acts, and of knowing that infringing acts took place by using the device distributed.

*Grokster*, 545 U.S. at 938 (emphasis added).

Here, Plaintiff alleged the requisite "affirmative steps" that Defendant has taken to induce or foster infringement, namely that Pinterest intentionally and affirmatively renames and removes the CMI from his Works (SAC at ¶ 55), then provides tools to its users on its website and app to distribute copies of those Works that are stripped of their identifiers (*id.* at ¶¶ 61-66). Plaintiff alleged the reasons Pinterest deliberately removes identifiers from his Works: first, to ensure that paid advertisements that contain identifying tags and live links stand out among Pinterest's use of stripped, often static "pinned" images (*id.* at ¶ 53); second, to use its library of stripped images to entice users to interact with its websites and apps (*id.* at ¶¶ 26, 65); and third, to obfuscate the infringement on the Pinterest platform by Pinterest itself and by third parties (*id.* at ¶¶ 56-58). Removing the CMI and the identifying source of images is Pinterest's modus operandi in its sophisticated enterprise of stealing intellectual property and hiding that theft. Pinterest gives lip-service to respecting copyrights, but in reality it takes active and knowing measures to ensure that its users feed Pinterest's platform with a continual stream of images, which Pinterest then scrubs of identifiers, uses for advertisement, and lures users to view the paid advertisement by offering up a library of laundered images that the users can copy, use and distribute without ever knowing or being informed that the images are subject to copyright protections.

Pinterest is a company that touts its ability to search images, SAC at ¶ 71, yet it forces copyright owners to provide the precise location of an image on its website pursuant to its take-

down procedure, rather than using its own sophisticated visual search engine or, at a minimum retaining original file names and metadata, to meaningfully assist copyright owners. This is because actually respecting copyrights would cause Pinterest to lose some of the billions of dollars it currently makes, which leads to the other indicia of intent identified by the Supreme Court in *Grokster*:  Pinterest has no "filtering tools or other mechanisms to diminish the infringing activity using their software," and Pinterest "make[s] money by selling advertising space, by directing ads to the screens of computers employing their software." *Grokster*, 545 U.S. at 939. *See* SAC at ¶ 27 ("Although Pinterest employs a highly sophisticated system for identifying and cataloguing 'pinned' images, Pinterest does not have in place a system of screening the Pins for copyright notices or other indicia of copyright ownership associated with the 'pinned' images."); ¶ 26 ("Pinterest uses its library of images to entice users to interact with its websites and app, including by distributing the images directly to the user by email and/or through the Pinterest app. Pinterest seamlessly integrates advertisement into the various "pinned" images it displays, so the images are part of the targeted advertisement campaign."); ¶ 25 ("Pinterest generates its revenue with these advertisements."). Pinterest's business model depends on being able to copy, store, distribute, and display images and to induce others to do the same, all without renumerating the image owners.

These detailed allegations regarding scienter and motive are hardly "a token response." MTD at 12. Plaintiff has pled all the elements, including the scienter requirement, of his inducement theory of contributory infringement. Pinterest's motion to dismiss should be denied, and Plaintiff should be given an opportunity to discover and submit further evidence of "clear expression or other affirmative steps" as the plaintiff in *Grokster* and the plaintiff in *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020 (9th Cir. 2013), cited by Defendant (MTD at 12, 15), did and was able to submit as evidence on its motion for summary judgment. *See Fung,* 710 F.3d at 1035 ("we conclude that there is more than enough unrebutted evidence in the summary judgment record to prove that Fung offered his services with the object of promoting their use to infringe copyrighted material").

1    Defendant cites *Stevens v. Corelogic, Inc.*, 899 F.3d 666 (9th Cir. 2018), for the proposition

2    that allegations of removal of metadata from photographs "do not even make out a claim under the

3    provision that actually governs removal of CMI (Section 1202(b) of the DMCA) – much less under

4    the more stringent standards for pleading inducement." MTD at 13. This is a blatant

5    mischaracterization of *Stevens*. Like *Grokster* and *Fung*, *Stevens* was decided in the context of a

6    summary judgment motion. The Ninth Circuit found that, after discovery, the "Photographers have

7    not offered *any* specific evidence that removal of CMI metadata from their real estate photographs

8    will impair their policing of infringement. . . . Indeed, the evidence presented cuts against any

9    inference that CMI metadata is of any practical significance to the Photographers in policing

10    copyright infringement of their images." *Stevens*, 899 F.3d at 675 (emphasis in original). Here,

11    unlike on a summary judgment motion, the Court "must accept all factual allegations [in the SAC]

12    as true and construe the pleadings in the light most favorable to [Plaintiff]." *Knievel*, 393 F.3d at

13    1072.

14    Although *Stevens* was decided on a wholly different standard and on a different claim, it

15    does provide some helpful background information about EXIF and IPTC data, which Plaintiff

16    embeds into his Works. *See Stevens*, 899 F.3d at 671 ("Both EXIF and IPTC metadata can contain

17    'copyright management information.'"). Of course, unlike in this case, the dispute in *Stevens* was

18    "limited to metadata" because the plaintiffs there did not allege that the defendant removed visible

19    CMI. *Id.* at 672. Plaintiff alleged here that Pinterest removed both visible and invisible CMI from

20    Plaintiff's Works. SAC at ¶¶ 40-58. That it may have been "not uncommon for image processing

21    software to fail to preserve metadata" in 2015, MTD at 14, n. 8, is not only legally irrelevant but

22    also factually irrelevant because Pinterest, unlike other social media companies, built and promotes

23    its platform on its technologically advanced ability to process, catalogue and search images. In

24    *Stevens*, after discovery and the submission of evidence, the court reached the conclusion that the

25    defendant's software "does not detect, recognize, or remove visible CMI" and that its software, as

26    originally written, was "unable to read EXIF data from image files or to write EXIF data to image

27    files" when images were copied or resized. *Id.* at 671. Nonetheless, "within a few months of

28

1    receiving the initial complaint" in that case, the defendant "modified its software to ensure the

2    EXIF metadata is copied and restored to images processed by [the defendant's] software." *Id.* at

3    672. Thus, even if the removal of CMI were "an automated part of its general image-upload

4    process," MTD at 14, a fact asserted by Defendant that cannot be considered on a motion to

5    dismiss, Plaintiff should be given an opportunity to establish that Pinterest easily could program

6    its formatting process to stop removing CMI, both visible and in metadata.

7         Defendant's reliance (MTD at 14) on *Perfect 10, Inc. v. Visa Intern. Service Ass'n* ("*Visa*"),

8    494 F.3d 788 (9th Cir. 2007), is equally misplaced. In that case, the Ninth Circuit affirmed the

9    granting of a motion to dismiss of a contributory copyright infringement claim. The Ninth Circuit's

10   explanation of why the plaintiff's inducement theory of contributory infringement failed on the

11   pleadings in that case crystalizes why Plaintiff properly alleged inducement in this case:

12              Perfect 10 has not alleged any "specific acts" intended to encourage or induce
               infringement. And moreover, Defendants are distinguishable under the

13              *Amazon.com* test because, unlike Google, infringing material is not "available using
               their system" of payment processing. That system does not "facilitate access to

14              websites;" infringers do not use it to copy, alter, distribute or display infringing
               material; and consumers do not use it to locate, view or download the infringing

15              images. Rather, all parties involved simply use Defendants' system to process
               payments for that infringing material.

16

17   *Visa*, 494 F.3d at 802 (internal edits and citations omitted).

18        Of course, here, Plaintiff alleged that Pinterest provides users with the very tools "to copy,

19   alter, distribute and display infringing material," as well as "locate, view and download infringing

20   images." *Id.* Plaintiff further alleged "specific acts" intended to induce infringement, namely, that

21   Pinterest renames files and strips the CMI from images to obfuscate the infringement on the

22   Pinterest platform by Pinterest itself and by third parties. *See* SAC at ¶¶44, 54-74. Plaintiff's

23   detailed allegations are in stark contrast to *Visa* and the other cases cited by Pinterest (MTD at 15).

24   *See* MTD at 15. Binding Supreme Court and Ninth Circuit authority requires denial of Defendant's

25   motion to dismiss Plaintiff's contribution copyright infringement claim.

26                                    **CONCLUSION**

27        Defendant's motion to dismiss Count II of the SAC should be denied.

28

1

2  Date: January 20, 2021

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

**REESE LLP**

By: _/s/ Sue J. Nam_
    Sue J. Nam (State Bar No. 206729)
    *snam@reesellp.com*
    Michael R. Reese (State Bar No. 206773)
    *mreese@reesellp.com*
    100 West 93rd Street, 16th Floor
    New York, New York 10025
    Telephone: (212) 643-0500
    Facsimile: (212) 253-4272

**REESE LLP**
George V. Granade (216050)
*ggrande@reesellp.com*
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (310) 393-0070

**THE LAW OFFICE
   OF DAVID C. DEAL, P.L.C.**
David C. Deal (admitted *pro hac vice*)
*david@daviddeal.com*
P.O. Box 1042
Crozet, Virginia 22932
Telephone: (434) 233-2727

*Counsel for Plaintiff*

---

PLAINTIFF'S OPPOSITION – MOTION TO DISMISS COUNT II OF SAC
*Davis v. Pinterest, Inc.*, 4:19-cv-07650-HSG
- 26 -