UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAROLD DAVIS,<br><br>        Plaintiff,<br><br>    v.<br><br>PINTEREST, INC.,<br><br>        Defendant. | Case No. 19-cv-07650-HSG (TSH)<br><br>**DISCOVERY ORDER**<br><br>Re: Dkt. Nos. 99, 104 |

        Plaintiff Harold Davis has filed a motion to compel against non-party Chairish, Inc. ECF No. 99. At issue is his subpoena that has two requests for production ("RFPs"). RFP 1 seeks "[a]ll documents and communications concerning your advertising on Pinterest, including, but not limited to, the placement of your advertisement, the manner in which your advertisement is displayed, the targeting of any specific types of images (e.g., 'spiral staircases') or users (e.g., 'home décor enthusiasts'), the effectiveness of your advertisement, sales attributable to your advertising, any analytics or metrics you use or provided to you regarding your advertisement, your objectives with respect to your advertisement, any presentations made to or by you." RFP 2 seeks "[a]ll documents and communications sufficient to show the amount of any remuneration you paid to Pinterest on a quarterly or monthly basis for the past three years." Initially, the Court did not understand the relevance of the requested materials, so it requested supplemental briefing, ECF No. 101, which the parties have now provided. ECF No. 104.

        Davis's theory of relevance is as follows. Exhibit E to the letter brief is a .pdf of a page on Pinterest's service in which one of Davis's registered works, "Kiss from a Rose" (*see* Second Amended Complaint, Ex. A at page 15) is depicted in the top left. Immediately to the right is an image of a small art print by Nancy Frey, entitled "White Tea Roses," that was promoted by

Chairish. Davis believes that the inclusion of his work (without his authorization) on that page helps to promote the sale of Frey's work through Chairish. It's unclear how far his promotional theory extends; the Court is skeptical that Davis's work promotes the sale of Toyota vehicles (in the Drive Toyota ad right beneath his work) or NordicTrack Studio Cycles (in the same row as Davis's work on the far right). But Frey's work is also a piece of art and has roses in it, so that's what he's pointing to.

Davis says he is trying to take discovery into the volitional conduct of Pinterest in the alleged infringement of his work. The Ninth Circuit has explained that a claim for direct copyright infringement requires proof of volitional conduct. *See VHT, Inc. v. Zillow Group, Inc.*, 918 F.3d 723, 731-32 (9th Cir. 2019). For a defendant that operates a website, most of the time the issue will come down to who selects the copyrighted content: the defendant or its customers. *See id*. at 732. Davis wants to know "what did Chairish tell Pinterest it wanted that caused Pinterest to put the ad there. Unless Chairish told Pinterest 'place our ads next to Harold Davis' images so we can sell knock-offs,' which is highly unlikely, then Pinterest exercised some level of control in selecting Harold's images to promote Chairish products. But under either scenario, we must know what Chairish told Pinterest with respect to its advertisements on Pinterest." ECF No. 104 at 3.

Davis also wants to know how much money Pinterest received from Chairish, claiming that is relevant to infringer's profits.

Finally, Davis says that Chairish is representative of other advertisers whose ad campaigns have also incorporated Davis's works, which is in large part why he subpoenaed Chairish. He has subpoenaed a number of other companies as well, though he has yet to receive documents from any of them.

For its part, Chairish says that Davis should have tried to obtain the requested discovery from Pinterest and that his failure to do so means that his subpoena imposes an undue burden on Chairish. Chairish also says that in any event, its documents are irrelevant. Chairish doesn't take issue with Davis's argument about volitional conduct. Rather, Chairish makes the factual assertion that it has no role whatsoever in deciding when its or Davis's images will show up in a

Pinterest user's search.  Chairish says that is all up to Pinterest and its unique algorithm.  Chairish also says it is not representative of the other companies Davis has identified because Chairish is just an eEcommerce platform that connects buyers with sellers, and Chairish never takes possession of the items.  Finally, Chairish says the requested materials are highly confidential.

Let's take things in turn.  First let's think about Davis's proffered theories of relevance and consider what materials sought by his subpoena fit within those theories.  Then let's think about who Davis should have asked for those materials.

As to relevance, Davis has come up with a specific example of one of his registered works appearing on a Pinterest page next to a work promoted by Chairish that has a similar theme.  You can be skeptical all you want that any item on that page actually promotes any other item on that page, given the inclusion of images of keto protein snacks, vehicles, exercise equipment and Hollywood celebrities – but that's a merits issue.  The point is that Davis has come up with a specific example involving Chairish of what he thinks his copyright claim is.

His relevance theory about volitional conduct really just requires knowing what Chairish told Pinterest about how to place Chairish's ads.  Both Davis and Chairish seem confident that these communications will say nothing about Chairish wanting its ads to be next to Davis's works, and so by omission, one is left to infer that Pinterest was responsible for that decision.  So, the internal-to-Chairish documents sought by RFP 1 (which, by the way, are the most sensitive ones for Chairish) have nothing to do with his volitional conduct theory.  They also have nothing to do with his infringer's profits theory of relevance, which looks at Pinterest's profits, not Chairish's sales.

As for the money Chairish paid to Pinterest (sought by RFP 2), if – as both Davis and Chairish seem to agree – Chairish parted with that money without any discussion of Chairish's ads being placed next to Davis's works, you will be pardoned for wondering how that money could be infringer's profits.  But again, that is a merits issue.  This is what Davis says his infringer's profits claim is.

But now we run into a problem.  The relevant materials (communications from Chairish about its ad placement, amounts Chairish paid to Pinterest) could all have been obtained from

3

Pinterest, which of course is the defendant in this case. Davis says he did try to get these materials from Pinterest, citing his RFPs 11-13 and 21-24 (*see* ECF No. 99 at 4), and that Pinterest refused to produce them. However, the Court doesn't buy it. This is what those RFPs asked for:

> RFP 11: "All documents related to the display of Works in connection with or in proximity to advertisements or other content on the Pinterest Platform paid for by third-parties."
>
> RFP 12: "All documents that identify any third-party advertisers whose content has been placed adjacent or near to Plaintiff's works on the Pinterest Platform."
>
> RFP 13: "All documents that identify any Pinterest advertisements that have been placed adjacent or near to Plaintiff's works on the Pinterest Platform."
>
> RFP 21: "All documents related to any tools to add or suggest keywords or works to merchants, business account Users, and advertisers, whether or not these tools are based on search terms or works previously selected by the merchant, business account User, and advertiser."
>
> RFP 22: "All documents related to any mechanism for, or keyword list, to assist merchants, business account Users, and advertisers to place advertising on the Pinterest platform."
>
> RFP 23: "All documents related to any placement suggestions to merchants, business account Users, and advertisers to locate advertisements or promotional pins or other Pinterest Features near specific positions on the Pinterest platform, whether or not these locations are adjacent to Plaintiff's works."
>
> RFP 24: "All documents related to any placement suggestions to merchants, business account Users, and advertisers to locate advertisements or promotional pins or other Pinterest Features near specific positions on the Pinterest platform based on Plaintiff's works."

None of these RFPs ask for the amount of money Chairish (or anyone) paid to Pinterest. As for communications, none of these RFPs are specific to Chairish. The Court does not believe that an "all documents related to" RFP constituted any sort of attempt to tell Pinterest that out of its thousands of advertisers, Davis was specifically seeking communications from Chairish. A party responding to an RFP has to make reasonable choices about where to look for responsive documents, including reasonable custodial and non-custodial sources. And parties serving RFPs know that. Thus, even though it is common for a requesting party to ask for "all documents" on a given subject, the requesting party knows that the responding party is not going to review every

document in the company's possession for responsive information. When a responding party has thousands of advertisers or customers or employees, if there is a specific one whose communications or documents you want, you really have to say that (or, if you want everyone's communications and documents, say that too and have that fight). Otherwise, you are left with the responding party's reasonable implementation of your RFP (and you know that), and your opponent is not a mind reader (and you know that too). Here, these "all documents" RFPs did not ask Pinterest to specifically look for communications from Chairish. Further, the Court is unable to conclude that a reasonable implementation by Pinterest of these RFPs was to search the communications from every single one of its advertisers for responsive documents.

Under Rule 45, a court "must quash or modify a subpoena that . . . subjects a person to undue burden." Fed. R. Civ. Proc. 45(d)(3)(A)(iv). "'In general, there is a preference for parties to obtain discovery from one another before burdening non-parties with discovery requests.'" *Genus Lifesciences Inc. v. Lannett Co., Inc.*, 2019 WL 7313047, *4 (N.D. Cal. Dec. 30, 2019) (quoting *Soto v. Castlerock Framing & Transp., Inc.*, 282 F.R.D. 492, 505 (E.D. Cal. 2012) (collecting cases)). "When the requesting party has 'not shown [that it] attempted to obtain documents from the [opposing party] in an action prior to seeking documents from a non-party, a subpoena duces tecum places an undue burden on a non-party.'" *Id*. (quoting *Soto*, 282 F.R.D. at 505). "Further, 'when an opposing party and a non-party both possess documents, the documents should be sought from the party to the case.'" *Id*. (quoting *Soto*, 282 F.R.D. at 505).

Here, the documents that are relevant to Davis's volitional conduct and infringer's profits theories could have been obtained from Pinterest. If Pinterest had been unable to find them, or had not retained them, or for some other reason was unable or unwilling to produce them, then a subpoena would have been appropriate. But the Court does not believe that Davis ever asked Pinterest for these documents.[1] As for the rest of what this subpoena seeks, namely everything responsive to RFP 1 that is not a communication from Chairish to Pinterest about its ad placement,

---

[1] Under the case schedule, it appears that there is still time for Davis to obtain this information from Pinterest in the form of a Rule 30(b)(6) deposition. *See* ECF No. 90 (setting August 6, 2021 as the close of fact discovery for purposes of depositions).

5

the Court issued an order asking Davis to explain the relevance of the requested materials, and he has failed to explain how these other materials are relevant.

Accordingly, Davis's motion to compel against Chairish is denied.

**IT IS SO ORDERED.**

Dated: July 20, 2021

_____
THOMAS S. HIXSON
United States Magistrate Judge