UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAROLD DAVIS,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>PINTEREST, INC.,<br><br>　　　　　Defendant. | Case No. 19-cv-07650-HSG (TSH)<br><br>**DISCOVERY ORDER**<br><br>Re: Dkt. No. 98, 103 |

　　　Yikes. On the last day for him to move to compel on written discovery (*see* ECF No. 63 and Civil Local Rule 37-3),[1] Plaintiff Harold Davis has moved to compel on 30 discovery requests – 28 requests for production ("RFPs") and two interrogatories ("rogs") – in one fell swoop in a single joint discovery letter brief. ECF No. 98. Davis's section of the letter brief largely avoids discussing what these discovery requests asked for. His arguments are written in the negative in that he focuses solely on certain of Pinterest's objections, arguing that they have no merit. Pinterest, as the party opposing the motion to compel, simply responds to the arguments asserted. Thus, we have the strange situation that both sections of the letter brief are about the propriety of Pinterest's objections rather than the propriety of the discovery requests themselves.

　　　The timing and content of this motion to compel are problematic. The Court will rule on the issues presented to the extent that Davis's briefing enables it to do so. But a motion to compel filed on the last possible day that argues solely in the negative that certain objections lack merit may not result in much effective relief. Davis seems to realize this problem because for some of

---

[1] Pinterest may pursue discovery regarding the identified alleged infringements through September 3, 2021, but ECF No. 63 makes July 2, 2021 the close of written fact discovery for Davis. Deposition discovery closes August 6, 2021. ECF No. 90.

the objections, he asks the Court to order Pinterest to do something and he also asks for an extension of time to make a further motion to compel depending on what results from the Court's order. However, the undersigned cannot grant an extension of time; only Judge Gilliam can modify his case scheduling order.

The Court turns, then, to Davis's arguments.

**A.     Demand for URLs and Pin IDs**

In response to rogs 6 and 7, as well RFPs 1, 3-4 and 7, Pinterest demanded that Davis produce URLs or Pin IDs before it would produce responsive documents or information. Similarly, in response to RFPs 1-13 and 23-24, Pinterest objected based on Davis's failure to identify the specific location on Pinterest's service for each work. Davis argues that it was sufficient for him to identify the works in the form of the image itself, the name and its author, and for many works at least one location of the image on Pinterest's platform, and once he had done that, the burden fell on Pinterest to search for responsive documents and information. Davis argues that nothing in Rule 34 requires a requesting party to identify where the responding party should look to find responsive documents. *See NuVasive, Inc. v. Alphatec Holdings, Inc*., 2019 WL 4934477, *2 (S.D. Cal. Oct. 7, 2019) ("Responding parties are best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own electronically stored information.") (quoting The Sedona Principles, Third Edition, 19 SEDONA CONF. J. 1, Principle 6, 118 (2018)).

Pinterest argues that this is not a case of Davis having to tell Pinterest where to look, but is instead a question of Davis telling Pinterest what to look for, and specifically what content on the Pinterest service Davis claims infringes the 51 copyrighted works at issue in the case. Pinterest says the law is clear that it is Davis's – not Pinterest's – burden to identify the allegedly infringing acts or works.

The Court agrees with Davis. To see why, you just need to read the discovery requests. They are as follows:

> RFP 1:  All copies of Works in your possession.
>
> RFP 2:  All communications relating to Plaintiff or his Works.

2

RFP 3: All documents relating to your display, distribution, storage, or reproduction of the Works on the Pinterest Platform.

RFP 4: All documents relating to Works uploaded or Pinned to the Pinterest Platform.

RFP 5: All documents relating to Works downloaded from the Pinterest Platform.

RFP 6: All documents that provide any Personally Identifiable Information about the Users who have Pinned, uploaded, downloaded, displayed or otherwise used the Works on or through the Pinterest Platform.

RFP 7: All documents relating to CMI attached to or embedded in Works at the time of Pinning or upload to the Pinterest Platform.

RFP 8: All documents relating to CMI attached to or embedded in Works at the time of download from the Pinterest Platform.

RFP 9: All documents relating to Works incorporated in Pinterest Notifications to Users.

RFP 10: All documents relating to Works incorporated in Pinterest Features.

RFP 11: All documents related to the display of Works in connection with or in proximity to advertisements or other content on the Pinterest Platform paid for by third-parties.

RFP 12: All documents that identify any third-party advertisers whose content has been placed adjacent or near to Plaintiff's works on the Pinterest Platform.

RFP 13: All documents that identify any Pinterest advertisements that have been placed adjacent or near to Plaintiff's works on the Pinterest Platform.

RFP 23: All documents related to any placement suggestions to merchants, business account Users, and advertisers to locate advertisements or promotional pins or other Pinterest Features near specific positions on the Pinterest platform, whether or not these locations are adjacent to Plaintiff's works.

RFP 24: All documents related to any placement suggestions to merchants, business account Users, and advertisers to locate advertisements or promotional pins or other Pinterest Features near specific positions on the Pinterest platform based on Plaintiff's works.

Rog 6: Identify every instance in which Works have been Pinned, uploaded, downloaded, displayed or otherwise used on or through the Pinterest Platform. If you cannot identify every instance, explain why.

Rog 7: Identify every instance any third-party advertisements,

3

> Promotional Pins, Buyable Pins, or other paid-for Pinterest Features or your own content have been displayed in connection with or in proximity to the Works on the Pinterest Platform. If you cannot identify every instance, explain why.

These are not contention discovery requests. They do not ask Pinterest to guess which images are Davis's, and they do not ask Pinterest to guess what content he considers to be infringing.

The RFPs and rogs define "works" to mean "the photographs or images captured by Harold Davis that are the subject of this litigation." That's not a great definition because it requires the reader to look elsewhere to figure out what images are the subject of this litigation. However, at a minimum, that would be the 51 registered works listed in Exhibit A to the Second Amended Complaint. Moreover, Pinterest's responses to the discovery requests explicitly take the position that those 51 works are the subject of this litigation. For each of those works, Exhibit A has a picture of it. So, for at least those 51 works, Davis has told Pinterest what to look for.

Beyond that, the RFPs and rogs just seek factual information. RFP 1 seeks "[a]ll copies of Works in your possession." That's easy to understand. It means: Pinterest, go find every copy of these 51 images that you possess. Likewise, RFP 2 requests "[a]ll communications relating to Plaintiff or his Works." That's also easy to understand. It means: Pinterest, find every communication about Davis or these 51 images. The other discovery requests are all in a similar vein. They seek factual information about the works. Davis was under no obligation to provide any further information to Pinterest. Rather, Pinterest was obligated to make a reasonable and diligent search for responsive documents and information.

Now, it may be that Pinterest does not have or cannot feasibly obtain documents responsive to certain RFPs without a massive expenditure of effort completely disproportionate to the needs of the case. For example, the Court gleans from the parties' related dispute about RFPs 12 and 13 that no responsive documents exist. For several of these RFPs, it could be the case that Pinterest has responsive documents that are not specific to Davis's works but relate to Pinned images generally.[2] For some of these RFPs, Pinterest may have to make reasonable choices about

---

[2] Pinterest represents that it has no documents responsive to RFP 11. However, documents concerning the display of Pinned images in general in connection with or in proximity to

where responsive documents are likely to be, if they exist at all (such as RFP 2, asking for communications about Davis or his works).

The Court is not going to devise a discovery protocol for Pinterest because neither the Court nor Davis knows what Pinterest's search capabilities are. Rather, the issue presented in this motion to compel is that Pinterest is refusing to do any searching for documents or information in response to these discovery requests unless and until Davis identifies the specific location of each instance of his works, and the Court overrules that objection. Davis, like any requesting party, is entitled to ask for relevant documents, and Pinterest, like any responding party, is required to use reasonable diligence to look for them. It is that simple. A requesting party is not obligated to tell a responding party where or how to search for documents – and with good reason. The requesting party will rarely understand the responding party's search capabilities and is in a poor position to identify data sources that may have responsive documents. The Court therefore grants Davis's motion to compel as to RFPs 1-11 and 23-24 and rog 6 insofar as Pinterest was refusing to search for responsive documents or information based on its specific identification objection and orders Pinterest to produce responsive documents and information within 30 days. For any RFPs for which responsive documents do not exist, or for which they do or may exist but Pinterest is not able to produce them all without disproportionate effort, Pinterest must serve an amended RFP response explaining those facts and circumstances, including what search efforts it made and what responsive documents it was able to locate and produce or has already produced.[3]

The Court declines to order Pinterest to produce documents responsive to RFPs 12 and 13 based on its representation elsewhere in the letter brief that none exist. The Court also declines to order a further response to rog 7, as it seems that Pinterest has answered that rog. It asked: "Identify every instance any third-party advertisements, Promotional Pins, Buyable Pins, or other paid-for Pinterest Features or your own content have been displayed in connection with or in

---

advertisements or other content on the Pinterest Platform paid for by third-parties are responsive to RFP 11 if the same processes would have applied to Pinned images of Davis's works.

[3] During the hearing, Pinterest argued that since the June 1, 2021 deadline for Davis to identify alleged infringements has passed (*see* ECF No. 63), none of this discovery is relevant anyway. The Court disagrees. First, this discovery could confirm Davis's alleged infringements. Second, much of this discovery is relevant to willfulness and infringer's profits.

proximity to the Works on the Pinterest Platform. *If you cannot identify every instance, explain why.*" (emphasis added). Pinterest objected that Davis had not identified the location of each work on its service. But Pinterest went on to say: "*even with a specific identification of works and alleged infringements on the Pinterest service*, provision of the requested information is not possible without extremely burdensome and disproportionate effort, and even then, any information retrieved would be incomplete and inaccurate." (emphasis added). Thus, it appears Pinterest has not stood on the specific identification objection. Pinterest's explanation of why it cannot provide the requested information is pretty conclusory, but Davis didn't raise that in the letter brief.

**B.     Producing Only "Public Documents"**

Davis says that in response to RFPs 11, 16 and 17, Pinterest stated that it would produce only "public documents." He claims that Pinterest objected to producing private documents based on burden. Davis argues that Pinterest has not substantiated this burden objection, and so the "public" limitation should be overruled. An inspection of the RFP responses confirms that Pinterest said it would produce only public documents in response to RFPs 11 and 16. However, in response to RFP 17, Pinterest stated: "Defendant will produce public and—subject to entry of a Protective Order—non-privileged internal copyright policies, to the extent such documents exist in a readily accessible format in Defendant's possession, custody, or control based on a reasonable search and diligent inquiry." As a protective order has been issued, *see* ECF No. 70, the Court does not read Pinterest's response to RFP 17 to be limited to public documents.

For RFPs 11 and 16, Pinterest says in the letter brief that a fair amount of what Davis seeks the company does not possess. As to responsive materials that it does possess concerning RFP 16, Pinterest's section of the letter brief indicates that it did not limit its production to public documents. ECF No. 98 at 5 ("As for Defendant's storage of user-generated content, Defendant has produced both public and nonpublic documents showing the architecture of its image-processing system as well as its content specification requirements."). At the hearing, Pinterest confirmed it was not standing on the "public" limitation as to RFP 16. For RFP 11, the Court overrules the "public" limitation. Because there is a stipulated protective order in this case, ECF

No. 70, the Court does not think that Pinterest is free to categorically refuse to produce documents merely because they are non-public.[4]

### C.     Failure to Outline Pinterest's Searches

Davis says that in response to RFPs 12 and 13, Pinterest stated that no documents exist. Davis asserts that Pinterest must describe the search it did so the Court can determine whether it was reasonable. Davis argues that Pinterest should be compelled to provide a declaration detailing its searches and he should be granted an extension of time to compel further responses should the searches appear inadequate.

RFP 12 requests "[a]ll documents that identify any third-party advertisers whose content has been placed adjacent or near to Plaintiff's works on the Pinterest Platform." And RFP 13 requests "[a]ll documents that identify any Pinterest advertisements that have been placed adjacent or near to Plaintiff's works on the Pinterest Platform." Pinterest states that it does not have records showing what ads appeared in connection with any given image or Pin.

Davis's request for a search seems off base, as Pinterest is asserting that an entire category of records does not exist. The way to figure out whether these records exist is not to run search terms on custodial email collections, or rifle through boxes or filing cabinets, but to ask one or more people knowledgeable about Pinterest's systems whether records such as these are kept. Because we're talking about records maintained by computerized systems, *searching* for them is the wrong approach when someone can just tell you the answer. That is what Pinterest says it has done.

Davis relies on *London Wallace v. City of Fresno*, 2021 WL 916244 (E.D. Cal. Mar. 10, 2021), but that case does not support him. In that case, the plaintiff filed a civil rights action arising out of a probation search of his home. Defendants moved to compel videos of the incident, citing plaintiff's deposition testimony that he received the recordings from his neighbor and had them in his possession, as well as the neighbor's deposition testimony that he provided two videos to the plaintiff about a month after the incident. In response, plaintiff declined to produce the

---

[4] The Court understands that Pinterest has other objections to RFP 11.

7

videos, stating that he searched his possessions and was unable to locate them.

The court began its analysis by noting the general rule that "[u]nder ordinary circumstances, a party's good faith averment that the items sought simply do not exist, or are not in his possession, custody, or control, should resolve the issue of failure of production since one cannot be required to produce the impossible." *Id*. at *4 (citations and quotation marks omitted). But in that case, the court noted that "[h]ere, Defendants have provided specific evidence that the cell phone videos exist and that they were in Plaintiff's possession and control after the incident." *Id*. In that situation, the court held that "Plaintiff must do more than say he searched and no responsive documents were found; he must briefly describe the search to allow the Court to determine whether it was reasonable." *Id*. at *6.

That holding does not help Davis because unlike the Defendants in *London Wallace*, Davis has not provided any basis to think that Pinterest's assertion that it does not have the requested records is untrue. Accordingly, the Court declines to award Davis his requested relief.

### D.  Spoliation of Documents

Also concerning RFPs 12 and 13, Davis contends that if no responsive documents exist, then Pinterest must have spoliated them, and he seeks an adverse inference under Rule 37 for this failure to preserve. Pinterest responds that no responsive records exist because they were never created in the first instance.

As a procedural matter, Civil Local Rule 37-4(a) provides that a motion for sanctions under Rule 37 must comply with Civil Local Rules 7-8 and 7-2; it cannot be submitted in a joint discovery letter brief. Similarly, the Court's Discovery Standing Order states that "[m]otions for sanctions shall be filed separately, pursuant to Federal Rule 37 and Civil Local Rules 7 and 37-4." Accordingly, the Court denies Davis's request for an adverse inference without prejudice to his raising the issue in a proper motion under Local Rule 7.

### E.  Failure to State Whether Documents Are Being Withheld

Davis states that Pinterest failed to state whether any documents were being withheld on the basis of its objections, in violation of its obligation under Federal Rule of Civil Procedure 34(b)(2)(C), which states that "[a]n objection must state whether any responsive materials are

8

being withheld on the basis of that objection." He says this problem is "particularly troublesome" for RFPs 8, 20-22 and 27-28, which consist solely of objections.

As an initial matter, the Court must decide whether Davis has raised this argument only with respect to RFPs 8, 20-22 and 27-28, or whether he has raised it as to all RFPs. The Court concludes that he has raised it only for RFPs 8, 20-22 and 27-28.[5] The practical problem Davis identifies for these RFP responses is that the lack of any affirmative response gives him no guidance about which objections are the ones Pinterest is standing on. By contrast, for most of the other RFPs, it looks like Pinterest offered to produce something or offered to meet and confer, which told him something about which objections mattered. That doesn't mean Pinterest's responses to the other RFPs necessarily complied with Rule 34, but it does mean that Davis's letter brief sets forth an argument concerning a few, specific RFPs that isn't translatable to the other RFPs.

For RFPs 8, 20-22 and 27-28, the Court agrees with Davis that Pinterest's responses do not comply with Rule 34 because they do not state whether documents are being withheld on the basis of each objection. The Court orders Pinterest to serve amended responses to those RFPs within seven days.

Pinterest says that Davis is wrong that its RFP responses do not comply with Rule 34, but also argues that if the Court thinks otherwise, it should order Davis to amend his responses, so that the obligation is "reciprocal." The Court declines to do so because such an order would not be reciprocal, for two reasons. First, Davis moved to compel, and Pinterest did not. Notwithstanding the format of a joint discovery letter brief, in which the Court receives both sides' arguments at the same time, Davis is clearly the moving party, and Pinterest is the opposing party. If Pinterest wanted relief, it should have filed its own motion.

Second, Pinterest's request is not equivalent to Davis's. The Court has construed Davis's request as only extending to the specific RFPs he enumerated as to which Pinterest refused to produce anything. Davis's responses to Pinterest's 43 RFPs all resemble the RFPs the Court does

---

[5] At the hearing, Davis stated he had no objection to the Court reading his argument this way.

not think Davis has raised.

F.     **Failure to State Which Documents Are Responsive to Which Requests**

Davis says that in its document productions Pinterest did not identify which documents are responsive to each request. Pinterest agrees that this is true, but says no such identification was required.

Rule 34(b)(2)(E) says:

> Unless otherwise stipulated or ordered by the court, these procedures apply to producing documents or electronically stored information:
>
> (i)  A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request;
>
> (ii)  If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms; and
>
> (iii)   A party need not produce the same electronically stored information in more than one form.

Davis argues that subsection (E)(i) applies here. By contrast, Pinterest asserts that subsection (E)(i) applies to hard copy documents, whereas subsection (E)(ii) applies to ESI, and Pinterest says its productions were all of ESI.

As an initial matter, the Court rejects Pinterest's interpretation of Rule 34. Subsection (E)(i) concerns the production of "documents" and subsection (E)(ii) concerns the production of "electronically stored information," but the Court does not think that the word "documents" in Rule 34 means only hard copy documents, to be cleanly distinguished from ESI. Rule 34(a)(1)(A) says that a party may request "any designated *documents* or *electronically stored information* – including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations – *stored in any medium from which information can be obtained* either directly or, if necessary, after translation by the responding party into a reasonably usable form . . ." (emphasis added) That language makes clear that both documents and ESI may be stored on computers. The Advisory Committee's notes on the 2006 Amendment that added references to ESI in Rule 34 state that "[l]awyers and judges interpreted the term 'documents' to include

10

electronically stored information because it was obviously improper to allow a party to evade discovery obligations on the basis that the label had not kept pace with changes in information technology." One of the reasons for adding a direct reference to ESI in the amended rule was that "it has become increasingly difficult to say that all forms of electronically stored information, many dynamic in nature, fit within the traditional concept of a 'document.'" *Id*. Thus, while ESI includes some things that might not be thought of as a document (such as a database), it is not true that documents categorially exclude ESI. *See id*. ("The rule covers – *either as documents or as electronically stored information* – information 'stored in any medium,' to encompass future developments *in computer technology*."). (emphasis added) Courts applying subsection (E)(i) have routinely done so in the context of documents stored electronically. *See, e.g., Pass & Seymour, Inc. v. Hubbell Inc*., 255 F.R.D. 331, 335 (N.D.N.Y. 2008) ("If P & S could sustain its burden of showing that in fact the documents produced are maintained in that same fashion—that is, contained within the same 220 unlabelled folders—*either digitally or in hard copy*, then it clearly would have met the requirement of production of the documents as they are ordinarily maintained in the course of its business.") (emphasis added).

Instead, subsections (E)(i) and (E)(ii) address different concerns. Subsection (E)(i) is about organization, and subsection (E)(ii) is about usability. For both hard copy and electronically stored documents, subsection (E)(i) provides that documents must be produced as they are kept in the ordinary course of business – meaning in whatever organizational structure they are stored in and not just randomly thrown together with items the litigant stores separately – or they must be labeled to correspond to the categories of the request. In addition, subsection (E)(ii) provides that ESI must be produced in its ordinary form or in a usable form – meaning, for example, that if it is ordinarily searchable, the produced version must be searchable as well.

Here, both subsections (E)(i) and (E)(ii) apply because Pinterest has produced documents and those documents are ESI. However, for Davis to be entitled to have Pinterest required to label or organize the produced material by request under subsection (E)(i), he would have to make some showing or at least an argument that Pinterest has failed to produce documents as they are kept in

the usual course of business. But Davis does not mention that issue at all in the letter brief.[6] Accordingly, his request is denied.

**G.      Boilerplate Objections**

Davis says that in response to nearly every request and interrogatory Pinterest asserted the same boilerplate objections, namely, that they were vague, ambiguous, unduly burdensome, and overly broad. Davis says that Pinterest failed to produce any evidence of undue burden. Pinterest disagrees, stating it tailored its objections to each request, identifying specific words and phrases that rendered Davis's requests vague, ambiguous, unduly burdensome or overbroad. Pinterest says that sometimes the burden is evident from the requests themselves, and other times Pinterest explained it during meet and confer.

The Court finds that this argument is too undeveloped for the Court to evaluate it. It is not fair to the Court for the moving party to gesture at 30 discovery requests and simply pronounce them all clear, nonburdensome and not overly broad with no explanation at all beyond just that proclamation. The Court's own review of these discovery requests indicates that some of them may have been vague, ambiguous, unduly burdensome and overly board. For example, as noted above, many of the RFPs include the term "works," which had the unhelpful definition "the photographs or images captured by Harold Davis that are the subject of this litigation." Pinterest objected to that definition as vague and ambiguous and interpreted the term "works" to mean the registered works listed in Exhibit A to the Second Amended Complaint. The Court thinks that definition may very well have been vague and ambiguous. It certainly included the works listed in Exhibit A, but it seemed to leave open the possibility of other works as well.

Or consider RFP 25, which asks for "[a]ll documents relating to any actions you have taken to comply with U.S. copyright laws and the DMCA, other than the DMCA notice process as described at https://policy.pinterest.com/en/copyright." Without some explanation by Davis, the Court is unprepared to say that this RFP is neither overbroad nor unduly burdensome. Similarly,

---

[6] At the hearing, Davis complained about a lack of unitization in the Pinterest's document production. However, Pinterest stated that it produced a .dat file with this information, and Davis did not have a response.

12

RFP 19 requests "[a]ll documents related to any actions you have taken or policies you have implemented, other than the DMCA notice process described at https://policy.pinterest.com/en/copyright, to ensure that your Users, merchants, and advertisers respect the intellectual property rights of others." All documents about any such actions? Again, without some briefing by Davis, the Court is not prepared on its own to proclaim that all of these discovery requests are proportional to the needs of the case.

Accordingly, Davis's request is denied.

**H.    Conclusion**

Davis's motion to compel is grant in part and denied in part as stated above.

**IT IS SO ORDERED.**

Dated: July 20, 2021

_____
THOMAS S. HIXSON
United States Magistrate Judge