September 20, 2021

**<u>Via CM/ECF</u>**

Honorable Thomas S. Hixson
U.S. District Court, Northern District of California San Francisco Courthouse
Courtroom G – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

   Re: **Joint Discovery Statement**
     *Davis v. Pinterest, Inc.*, Case No. 4:19-cv-07650-HSG

Your Honor:

  Pursuant to the Court's September 13, 2021 Discovery Order (ECF No. 132), the parties submit the following supplemental joint statement regarding Defendant Pinterest, Inc.'s ("Pinterest") (1) motion to compel, ECF No. 127; and (2) motion brought pursuant to Federal Rule of Civil Procedure 26(b)(5)(B), ECF No. 131.

  The parties hereby attest that they have met and conferred in good faith pursuant to the Court's September 16 Order.

               Respectfully submitted,

               By: */s/ David H. Kramer*
                 David H. Kramer
               WILSON SONSINI GOODRICH & ROSATI
               Professional Corporation

               *Attorneys for Defendant*
               PINTEREST, INC.

               By: */s/ Charles D. Moore*
                 Charles D. Moore
               REESE LLP

               *Attorneys for Plaintiff*
               HAROLD DAVIS

*Pinterest's Position*

On September 10, 2021, Pinterest filed two discovery motions: (1) a motion to compel complete discovery responses from Plaintiff; and (2) a motion pursuant to FRCP 26(b)(5)(B) for determination on Plaintiff's work-product claim over four documents. ECF Nos. 127 & 131. On September 13, 2021, the Court directed the parties to submit the evidence referred to in those motions along with discussion of the relevance of that evidence to the issues raised.

**Motion to Compel**

As discussed in Pinterest's motion to compel (ECF No. 127 at 2), Plaintiff's deposition testimony, as well as documents Pinterest itself discovered, make clear that Plaintiff has failed to identify photo-sharing websites, blogs, and retailer websites on which he has made his works available under agreements that grant those websites and their users licenses to Plaintiff's works. In its motion, Pinterest provided topazlabs.com and framedart.com as examples of sites Pinterest found that Plaintiff failed to identify. PINS Ex. A (topazlabs.com article about Plaintiff for which Plaintiff licensed use of works in suit 3, 15, and 39); PINS Ex. B (work in suit 5 available for sale on framedart.com). It is apparent from Plaintiff's deposition that there are still others, such as YouTube, but that Plaintiff did not bother to search for that information. PINS Ex. C at 132:11-17 ("Q. You've authorized copies of your photos to appear on YouTube, right? A. Yes. Q. Including works in suit, right? A. Not sure about that. Q. Did you check? A. No."). Neither Plaintiff's responses to Interrogatory Nos. 4 & 5 nor his document production reflect the appearance of Plaintiff's works on those websites, much less the agreements under which his works appeared.

Plaintiff's response to Interrogatory No. 8 is also similarly deficient. During his deposition, Plaintiff admitted that his images have appeared with his authorization on a host of websites that are not identified in his discovery response. For example, Plaintiff confirmed that he authorized his images to appear in photo.net articles and on his photo.net profile page. PINS Ex. C at 100:23-101:7 ("Q. Where did [photo.net] get the images from, sir? A. They got them from me. Q. So they were uploaded to the photo.net site with your authorization? A. Yes."); *id.* at 117:2-8 ("Q. In addition to your photo.net profile page, have you licensed photo.net to use your images in online articles? A. Yes. Q. How many photo.net articles have you licensed -- have you licensed your images for? A. My impression is that it was eight to ten."); *see also* PINS Ex. D (Plaintiff's photo.net profile to which hundreds of his images, including works in suit, have been uploaded with his authorization); PINS Ex. E (photo.net article for which Plaintiff licensed use of work in suit 44). Plaintiff also suggested that there are other websites, like YouTube, that he failed to include in his response to this interrogatory. PINS Ex. C at 132:18-24 ("Q. So in answering interrogatory 8 that asks for an identification of the sites to which you've posted or allowed to post images including the works in suit, why didn't you list YouTube? A. Perhaps I should have. The -- if they were included in YouTube, it would be as part of a video and it would be a fairly very brief look at them.").

Pinterest has found still more websites on which Plaintiff licensed his works to appear but failed to disclose in his discovery responses, such as popphoto.com, meetup.com, and AllPosters.com. PINS Ex. F (popphoto.com article for which Plaintiff licensed use of works in suit 17, 32, 38, and 49); Ex. G (Plaintiff's meetup.com account showing that 3,888 photos have been uploaded to the site); Ex. H (work in suit 48 available for sale on AllPosters.com). Plaintiff admitted during deposition that he did not even ask his agents, whom he calls his "aggregators," or "wholesalers," for a list of websites to which they have further licensed his works. PINS Ex. C at 129:23-130:21 ("Q. So you would not be able to tell me all of the places online where your images appear as a result of your relationship with art publishers using art aggregators; is that correct? A.

Yes, that is correct. The fact is that my images are incredibly widely distributed over the Internet and, you know, image appropriation, if you will, is rampant . . . . Q. Well, I'm actually interested not in the places where it appears without your authorization but in the places where it appears by virtue of your art publishers placing it there or authorizing it to be there. If you wanted to compile a list of those websites where your art publishers have posted your work in order to promote its sale, how would you do that? A. I don't know. Q. You didn't undertake to do that in connection with this case; is that right? A. That is correct.").[1]

And even for the few websites that Plaintiff has identified in response to Interrogatory No. 8, he has failed to provide the information Pinterest requested (e.g., the specific image, the uploader of the image, the date of upload of each image, and/or the URL to which it was uploaded). *See* ECF 127-3 (Plaintiff's Supplemental Interrogatory Responses); PINS Ex. J (excerpt from Plaintiff's September 3 production (DAVIS00005509-10308) showing that produced screenshots do not reveal, *inter alia*, the date of upload or the URL to which the images were uploaded).

Plaintiff's responses to these discovery requests matter because, depending on the attendant circumstances—which Plaintiff has prevented Pinterest from learning—Plaintiff may have authorized precisely that which he now claims is infringing. For example, Plaintiff's works have appeared with his authorization on many online locations alongside a prominent button allowing users to post those images directly to Pinterest. *See, e.g.*, PINS Ex. A (authorized appearance of works in suit in topazlabs.com article with red button under banner photo that specifically enables users to share Plaintiff's works on Pinterest); PINS Ex. B; PINS Ex. E (authorized appearance of work in suit in photo.net article alongside red button on left side of page that specifically enables users to share Plaintiff's works on Pinterest); PINS Ex. F (authorized appearance of works in suit in popphoto.com article alongside red button that specifically enables users to share Plaintiff's works on Pinterest); PINS Ex. K (authorized appearance of works in suit on photo.net alongside button in upper right-hand corner that specifically enables users to share Plaintiff's works on Pinterest). Having authorized the use of his images on websites that actively encourage visitors to further share those images to Pinterest, Plaintiff cannot now object to their subsequent appearance on the service.

Plaintiff's search and production in response to Requests for Production Nos. 15, 32, and 43 is also deficient. With respect to Request 15, Plaintiff testified that he has access to records regarding online matches of his works found by Pixsy, PINS Ex. C at 218:3-19, and his September 3

---

[1] Plaintiff now claims that documents concerning the sublicenses granted by these aggregators are outside his custody or control. Not so. The single agreement Plaintiff produced shows that he has the contractual right to review and copy Leftbank's records regarding the "transactions relating to the license granted" to Leftbank. Plaintiff Ex. 2 at § 4.a. In other words, Plaintiff has every right to information about where Leftbank posted his images. Plaintiff did not produce his other "aggregator" agreement with Editions Limited, who he identified for the first time during his August 19 deposition. Regardless, Plaintiff does not claim an inability to ask his agents to identify the websites that they have authorized to promote the sale of his images online. Those websites themselves may have posted Plaintiff's images to Pinterest, PINS Ex. I (Plaintiff's work uploaded to Pinterest by AllPosters.com), or expressly invited visitors to post his images to Pinterest, PINS Ex. B (work in suit on framedart.com above red button that specifically enables users to share image on Pinterest). Absent a complete response from Plaintiff, Pinterest cannot know which instances of his works on Pinterest are in fact authorized. Plaintiff refused to even inquire, and his recent naming (months late) of the aggregators precluded Pinterest from seeking information from them directly.

production confirms the availability of these detailed, unproduced records, PINS Ex. L at DAVIS00010118 (screenshot of Plaintiff's Pixsy dashboard showing Plaintiff had, but did not select, the option to view 149 matches for a work in suit). Further, emails produced by Pixsy back in June—over which Plaintiff has claimed no privilege or work-product protection—show that Plaintiff had many communications with Pixsy concerning his efforts to monitor alleged infringement of his images, that Plaintiff did not produce. *See, e.g.*, PINS Ex. M. And the documents Pinterest submitted in connection with its work-product motion reveal a cache of unproduced information in Plaintiff's custody and control responsive to Requests 32 and 43. *See* ECF Nos. 131-1 to 131-4.

**Work Product Motion**

As Pinterest explains in its motion (ECF No. 131), the Pixsy documents are not attorney work-product to begin with. *See* PINS Ex. C at 216:17-21 ("Q. So [PIXSY00229] shows matches of your images Pixsy identified for you on Pinterest from 2015 to June 2021, doesn't it? A. Yeah, just to clarify the 'for you' means matches of mine. They didn't do it for me."); *see also* ECF 131-6 (excerpts from Plaintiff's deposition). But even if work-product protection theoretically attached to the documents, it was waived when Plaintiff's counsel permitted both Plaintiff and his wife to provide extensive, voluntary testimony about those documents absent any work-product objection. On August 19, 2021, Plaintiff testified for roughly an hour about the four documents over which he now claims work-product protection, PINS Ex. C at 215-240 & 293-302, and he provided more in-depth testimony about his use of Pixsy's services and the data available to him through Pixsy, *see id.* at 198-208 (Plaintiff's testimony about his interview regarding Pixsy); *see also* PINS Ex. N (Plaintiff's published interview regarding his use of Pixsy). Plaintiff's counsel not only failed to assert any work-product objection at any point, but actually permitted testimony about Plaintiff's discussions with Pixsy regarding potential litigation against Pinterest. *See* ECF No. 131 at 4 n.3; PINS Ex. C at 240:1-4 ("And I would just instruct the witness that if he can recall any conversations that he had in which it was Mr. Deal [Plaintiff's counsel] and Barbara [from Pixsy] present, ***he can answer those questions***.") (emphasis added). A week later, on August 26, Plaintiff's wife testified about two of the Pixsy documents (-228 and -229) for a half hour again without objection. PINS Ex. O (excerpt from deposition of Phyllis Davis).

*<u>Plaintiff's Position</u>*

Defendant has made it clear, nothing Plaintiff could say or do would prevent it from bringing this motion. During the meet and confer, Plaintiff asked this very question, and in no uncertain terms the answer was the motion is coming because it does not trust Plaintiff's search. But a motion to compel is not an opportunity to put to rest Defendant's cynicism. *See Scott v. Palmer*, No. 1;09-cv-01329-LJO-SKO (PC), 2014 WL 6685810, at *3 (E.D. Cal. Nov. 26, 2014) (emphasis in original) ("Mere distrust and suspicion regarding discovery responses do *not* form a legitimate basis to further challenge responses which are facially sufficient; and Plaintiff is entitled neither to continue demanding additional and/or different evidence in support of discovery responses already provided nor to expand the scope beyond that sought in the initial discovery request"). As the Court rightfully pointed out, Defendant's general references towards the "written record" or "testimony" is insufficient to inform the discussion. It was only on September 16 that Defendant first put forward its evidence supporting its suspicions. But while the evidence may show the images appeared on the internet, there is no explanation for how those appearances lead to a defense.

Defendant asks Plaintiff to search every nook and cranny of the internet to find anywhere his images may have appeared, in an apparent attempt to daisy-chain authorization on authorization on authorization—never once pointing to a concrete example of where this has occurred. Rather, it once again retreats to an amorphous statement, this time, that "Depending on the attendant circumstances. . . Plaintiff may have authorized precisely that which he now claims is infringing." But it has failed to provide a single example of this scenario.[2] Instead, it simply states, for example, your works appeared on framedart.com, but never connecting that appearance to one on Pinterest, much less showing how the such an appearance authorized Pinterest to use the image on its site. At base, Defendant has failed to put forth a cogent, evidence-based explanation for how these documents are relevant.

But the lack of relevance is not the only problem; the documents Defendant "suspects" are our there are not within Plaintiff's possession, custody, or control. *See* Fed. R. Civ. P. 34(a)(1)(A). That is because Mr. Davis did not post them to the random sites Defendant is asking him to search, and he can only speculate that it was done by a licensed wholesaler. *See e.g.* Plaintiff. Ex. 1, at 125:6-126:19 (testifying that he has no relationship with framedart.com, and that it was likely put there by one of his licensed wholesalers). But that does not place them within his control.

"In *In re Citric Acid*, the Ninth Circuit defined 'control' as 'the legal right to obtain documents upon demand.'" *Rojas v. Bosch Solar Energy Corp.*, No. 18-cv-05841-BLF, 2020 WL 8617421, at *3 (N.D. Cal. Sept. 18, 2020) (quoting *In re Citric Acid Litig.*, 191 F.3d 1090, 1107 (9th Cir. 1999)). Critically, the Ninth Circuit rejected the "practical-ability-to-obtain documents test" in favor of the "legal right to obtain" test. *In re Citric Acid*, 191 F.3d at 1107. As the party seeking the documents, Pinterest "bears the burden of demonstrating that [Plaintiff] exercises such control." *Rojas*, 2020 WL 8617421, at *3 (quoting *M.G. v. Bodum USA, Inc.*, No. 19-CV-01069-JCS, 2020 WL 1667410, at *3 (N.D. Cal. Apr. 3, 2020).

In *Rojas*, for example, the plaintiffs sought documents from the defendant's affiliates. *Rojas*, 2020 WL 8617421, at *1. The plaintiffs argued that because the affiliates were agents of the defendant, the documents were within its "control." *Id.* at * 3. Magistrate Cousin's rejected this argument—citing *Bodum*—in which the court rejected the argument that agency alone was sufficient to establish a legal right to control documents. *Id.* at * 3 (citing *Bodum*, 2020 WL 1667410, at *3). Judge Cousin's held—and the district affirmed—that the plaintiffs failed to establish that the defendant had "the legal right to obtain documents from Bosch Tool or Bosch GmbH, and thus had not established that Defendant Bosch has the requisite control over documents in possession of the non-party entities." *Id.*

Here, Defendant claims the information is within Mr. Davis's control because the wholesalers are "agents," but it points to nothing to support this conclusion. To the contrary, the Leftbank Art agreement, for example, makes clear it is a Licensee, not an agent. *See* Plaintiff's Ex. 2, at DAVIS00004863 (defining Leftbank as a "Licensee"), DAVIS00004867 (in defining the relationship of the parties, stating "It is intended that each of the parties hereto shall be independent of the other and that neither party hereto shall have any right or authority bind the other party hereto").

Regardless, even if, *arguendo*, the wholesalers were agents—which they are not—*In re Citric*

---

[2] While Defendant points to PINTEREST0002129 as an example, that is not a Work in Suit. After nine months of discovery, it has not put forward a single example of a Work in Suit that meets its theory. Had it done so, Plaintiff may have been able to locate such an image, but as it currently stands, Defendant seeks to send Plaintiff on a goose chase through the entirety of the internet, hoping it will find evidence it suspects is out there. This "give us everything everywhere" demand is too vague and ambiguous to be achieved, especially at this exceedingly late date.

*Acid*, *Rojas,* and *Bodum* make clear, a relationship alone is insufficient to establish the "legal right to obtain" the requested documents. Defendant bears the burden to show that Plaintiff can force the wholesalers to force the third-party websites to turn over the requested documents. But beyond its conclusory claim of "agency", Defendant has failed to put forth any evidence thereof, and with it the requisite control.

Had Defendant truly wanted such documents, it should have subpoenaed them from the wholesalers, but for reasons only known to Defendant, it chose not to.

As to the YouTube[3] videos, Defendant points to Mr. Davis's testimony to justify seeking ever video he may have posted to YouTube. But the relevance of the YouTube videos is completely unclear. During the meet and confer on the present supplemental letter, Plaintiff asked how Mr. Davis's YouTube videos could possibly fit into one of Defendant's defenses. It speculated that a person could grab a screenshot of one of the images in the video and post them, and while this is logistically possible, it provided no explanation for how this hypothetical would grant it authorization to use the image.

Defendant then shifted gears claiming "Clematis" from the June 4 spreadsheet cited to YouTube. When Plaintiff re-reviewed the spreadsheet he could not find the alleged cite, *see* Plf.'s Ex. 3 and sought clarification from Defendant, who then cited to document PINTEREST0002766. *See* Plf.'s Exs. 3 & 4. But PINTEREST0002766 is nearly incomprehensible. As is readily apparent from the face of the document, the image at issue was not presented.[4] On September 10, Defendant provided its Fourth Supplemental Responses to Plaintiff's First Set of Interrogatories, and included as an exhibit a chart providing the "pin_image_signature" with an allegedly corresponding image in Defendant's production. Plf's Ex. 5. But there are innumerable problems with Defendant's connect-the-dots explanation. First, the produced image is not one of the 51 Works in Suit. *Compare* Ex. 6 (PINTEST0002187 the image corresponding to the pin_image_signature in the chart) to Ex. A to the Second Am. Compl., ECF No. 56-1. As a result, its relevance—and equally, the timeliness of a motion on it—is unclear. Second, the YouTube link on PINTEREST0002766 is a deadlink, so Plaintiff cannot view the video, much less confirm it is one of his. At base, Defendant has failed to justify a fishing expedition through approximately 100 hours of YouTube videos.

On the Pixsy documents, Defendant makes the baseless accusation that Plaintiff withheld Pixsy cases. It points to the statement of 149 matches in DAVIS0010118 as evidence thereof. But the statement of 149 matches was the number of matches of that image found by Pixsy at that moment, not the number of cases. Plf's Ex. 7. The next page makes clear there were two cases for that image—not 149—and the documents for both were provided. *See* Plf.'s Exs. 8-9.

Finally, Plaintiff provided the following documents of Pixsy cases. *See* Ex. 10 (DAVIS00009909-10308). Defendant justifies use of the Pixsy documents by claiming it needs them for a damages analysis, but the settlement amount is included within the produced document set. *See* e.g. DAVIS00009912. Thus, there is an alternative means for obtaining the same information.

---

[3] Plaintiff wishes correct his misstatement to the Court in his previous filing. In ECF No. 127, Plaintiff stated the YouTube was not part of the deposition. ECF No. 127, at 5. Plaintiff was incorrect; YouTube was raised in Mr. Davis's deposition. However, it was recorded as "You Tube", and as a result, a search for the name in the glossary and word search did not reveal this discussion. Plaintiff humbly apologizes for this misstatement, but stands by the rest of the statement that YouTube was never raised in any letters or meet and confer prior to filing ECF No. 127.

[4] This is part of an ongoing conversation between the parties and may ultimately form the basis of a Rule 37 motion.

## **ATTESTATION**

I, David H. Kramer, am the ECF User whose identification and password are being used to file this document. In compliance with Local Rule 5-1(i)(3), I hereby attest that the concurrence in the filing of the document has been obtained from the other signatory.

By: */s/ David H. Kramer*