**REESE LLP**
Michael R. Reese (Cal. State Bar No. 206773)
Sue J. Nam (Cal. State Bar No. 206729)
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Email: *mreese@reesellp.com*
          *snam@reesellp.com*

**THE LAW OFFICE OF DAVID C. DEAL, P.L.C.**
David C. Deal (admitted *pro hac vice*)
P.O. Box 1042
Crozet, Virginia 22932
Telephone: (434) 233-2727
Email: *david@daviddeal.com*

**REESE LLP**
Charles D. Moore (admitted *pro hac vice*)
100 South 5th Street, Suite 1900
Minneapolis, Minnesota 55402
Telephone: (701) 390-7214
Email: *cmoore@reesellp.com*

**REESE LLP**
George V. Granade (Cal. State Bar No. 316050)
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (310) 393-0070
Email: *ggranade@reesellp.com*

*Counsel for Plaintiff Harold Davis*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| HAROLD DAVIS,<br><br>                              Plaintiff,<br><br>       vs.<br><br>PINTEREST, INC.<br><br>                              Defendant. | Case No. 4:19-cv-7650-HSG (TSH)<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT PINTEREST, INC.'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date:       December 9, 2021<br>Time:      2:00 p.m.<br>Judge:    Hon. Haywood S. Gilliam, Jr.<br>Place:     Courtroom 2<br>              United States Courthouse<br>              1301 Clay Street<br>              Oakland, California 94612 |

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................................i

TABLE OF AUTHORITIES ....................................................................................................... iii

INTRODUCTION .........................................................................................................................1

I.    PINTEREST'S OWN CONDUCT IS NOT SHIELDED BY THE DMCA
      SAFE HARBOR ...................................................................................................................2

      A.    Pinterest's Actions at Issue Are Not "At the Direction of A User" ...........................2

            1.    Creation of Derivative Works Is Not at the Direction of a
                  User.............................................................................................................3

            2.    Pinterest's Display of Plaintiff's Works in the Context of
                  Advertisement Is Not At the Direction of A User .................................5

            3.    Pinterest's Display and Distribution of Plaintiff's Works in
                  Notifications Are Not at the Direction of a User..................................7

      B.    Pinterest Has the Right and Ability to Control the Infringing Activity
            and Receives a Financial Benefit Directly Attributable to the
            Infringing Activity ...................................................................................................8

            1.    Pinterest Has the Right and Ability to Control the Infringing
                  Activity ......................................................................................................9

            2.    Pinterest Received a Financial Benefit Directly Attributable
                  to the Infringing Activity ......................................................................12

II.   PINTEREST'S GAMEMANSHIP DOES NOT DEFEAT PLAINTIFF'S
      CLAIM OF DIRECT INFRINGEMENT .......................................................................13

      A.    Pinterest's Statute of Limitation Defense Fails .......................................................14

            1.    Separate-Accrual Rule of Copyright Infringement Bars
                  Pinterest's Defense ................................................................................15

            2.    Evidence Produced by Pinterest of Its Own Infringement Is
                  All Within the Statute of Limitations ..................................................16

            3.    Pinterest's Own Treatment of Alleged Copyright
                  Infringement Is Not Tied to Images .....................................................18

            4.    Plaintiff Learned about the Specifics of Pinterest's Use of His
                  Works Only Through Discovery Marked Confidential by
                  Pinterest ..................................................................................................21

      B.    Pinterest Cannot Obtain Judgment on Certain Works Based on Non-
            Substantive Discovery Issues ..................................................................................23

CONCLUSION ...........................................................................................................................29

# TABLE OF AUTHORITIES

## Cases

*Adobe Systems, Inc. v. NA Tech Direct, Inc.*, No. 17-cv-5226-YGR,
2019 WL 5579472 (N.D. Cal. Oct. 29, 2019) ............................................................... 22

*Bell v. Oakland Community Pools Project, Inc.*, No. 19-cv-01308-JST,
2020 WL 4458890 (N.D. Cal. May 4, 2020)................................................................. 16

*Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020 (9th Cir. 2013)........................................ 12

*Crum & Forster Indemnity Co. v. Robb Report Media LLC*, No. 20-cv-00127-LB,
2021 WL 2531070 (N.D. Cal. June 21, 2021)................................................................. 23

*Downs v. Oath, Inc.*, 385 F.3d 298 (S.D.N.Y. 2019) .......................................................... 12

*Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986)............................................................... 14

*Finjan, Inc. v. Symantec Corp.*, No. 14-cv-02998-HSSG (JSC),
2018 WL 620169 (N.D. Cal. Jan. 30, 2018)................................................................... 9

*Grisham v. Philip Morris, Inc.*, 670 F. Supp. 2d 1014 (C.D. Cal. 2009) ......................................... 23

*Jack v. Borg-Warner Morse*, No. C17-0537JLR,
2018 WL 4409800 (W.D. Wash. Sept. 17, 2018) ...................................................... 9, 23

*Kinsley v. Udemy, Inc.*, No. 19-cv-04334-JSC, 2021 WL 122489 (N.D. Cal. Mar. 31, 2021)........ 10

*Koniklijke Philips Patent Litig.*, Case No. 18-cv-01885-HSG,
2020 WL 7398647 (N.D. Cal. Apr. 13, 2020)................................................................. 9

*Mavrix Photographs, LLC v. LiveJournal, Inc.*, 873 F.3d 1045 (9th Cir. 2017) ............................... 2

*Media Rights Techs., Inc. v. Microsoft Corp.*, 922 F.3d 1014 (9th Cir. 2019).................... 15, 27, 28

*Myers v. United States, et al.*, No. 02CV1349-BEN,
2004 WL 7323090 (S.D. Cal. Nov. 4, 2004)................................................................. 9

*Pagtalunan v. Galaza*, 291 F.3d 639 (9th Cir. 2002) ......................................................... 14

*Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663 (2014) ................................................ 16

*R&R Sails, Inc. v. Insurance Co. of Pennsylvania*, 673 F.3d 1240 (9th Cir. 2012) ......................... 27

*Steigmaier v. City of Reno*, No. 3:13-cv-00461-MMD-VPC,
2016 WL 1611592 (D. Nev. April 22, 2016) ................................................................. 23

*Toyrrific, LLC v. Karapetian*, 606 Fed.Appx. 365 (9th Cir. 2015) .................................................. 27

*UMG Recordings, Inc. v. Shelter Capital Partners*, 718 F.3d 1006 (9th Cir. 2013) ................ 10, 12

*Uschold v. Carriage Services, Inc.*, No. 17-cv-04424-JSW,
  2020 WL 1466172 (N.D. Cal. March 6, 2020) ...................................................................... 14, 23

*Ventura Content, Ltd. v. Motherless*, 885 F.3d 597 (2018) .................................................. 10, 11, 12

*Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19 (2d Cir. 2012) ...................................................... 2, 6

*Wolf v. Travolta*, 167 F. Supp. 3d 1077 (C.D. Cal. 2016) .................................................................. 16

## Statutes

17 U.S.C. § 512(c) ....................................................................................................................... passim

17 U.S.C. § 512(d) ............................................................................................................................ 2, 7

## Rules

Fed. R. Civ. P. 30(b)(6) ...................................................................................................................... 7

Fed. R. Civ. P. 37(c)(1) ............................................................................................................... passim

## INTRODUCTION

Pinterest's summary judgment motion is limited to two arguments: (1) the entirety of Plaintiff's direct copyright infringement claim is barred by the DMCA safe harbor provision and (2) certain (but not all) of Plaintiff's Works cannot be the basis of his direct copyright infringement claim because there is a so-called failure of proof with respect to 16 of the Works and the statute of limitations independently bars 28 of the Works. *See* Defendant Pinterest, Inc.'s Notice of Motion and Motion for Summary Judgment ("Def. Mot."), ECF No. 152. In support of its Motion, Pinterest submitted the Declaration of Nicolas DeChant ("DeChant Decl."), ECF 156; the Declaration of Ryan Galgon ("Galgon Decl."), ECF 157; and the Declaration of Henry Lien ("Lien Decl."), ECF 155. All of these declarants were designated as corporate representatives and previously deposed. Despite Pinterest's attempt to whitewash its employees' testimony in newly submitted declarations, Pinterest cannot refute their deposition testimony or the documentary evidence that undermines Pinterest's arguments.

With respect to its DMCA safe harbor defense, Pinterest attempts to conflate the use of Plaintiff's Works that are at the direction of users and the use of Plaintiff's Works that are directed by Pinterest to generate advertisement revenue. Plaintiff's claim of copyright infringement does **not** implicate the uploading, copying, or storing of content by Pinterest's users. It also does **not** implicate the automated software functions that merely render the content uploaded by a user accessible on Pinterest's platform. Rather, at issue are Pinterest's volitional actions that go far beyond user accessibility. The evidence is beyond dispute that Pinterest created and controls the algorithms it uses to create derivative works for advertisement purposes. Pinterest also created and controls the algorithms that select and display Plaintiff's Works in the context of advertisement. Finally, it is Pinterest alone that controls the display and distribution of Plaintiff's Works outside its website in notifications to its users to entice user engagement with its website. Pinterest cannot trigger DMCA's safe harbor simply by using the terms "automated" and "users." The so-called evidence Pinterest submitted are, at best, half-truths and, at worst, flat-out contradictions belied by its own responses to discovery requests and deposition testimony.

With respect to its "failure of proof" and statute of limitations defense, Pinterest's hide-the-

ball and run-out-the-clock tactics are on full display. The uncontroverted evidence that Pinterest itself produced (albeit only after court-ordered to do so and only after the close of discovery) is that Pinterest infringed Plaintiff's exclusive copyrights numerous times, all within the statute of limitation. Pinterest seeks summary judgment based on the exclusion of that evidence without citing binding Ninth Circuit law that bars that very request.

## I.   PINTEREST'S OWN CONDUCT IS NOT SHIELDED BY THE DMCA SAFE HARBOR

The parties have cross-moved for summary judgment on Pinterest's affirmative defense that it is shielded by 17 U.S.C. § 512(c) and § 512(d) of the DMCA. *See* Plaintiff's Motion for Partial Summary Judgment ("Pl. Mot."), ECF No. 160, at 30-31. Because there is no genuine issue of material fact that Pinterest is ineligible for the limited safe harbor under the DMCA, summary judgment should be granted to Plaintiff on this defense. Pinterest's position that it can do whatever it wishes with Plaintiff's Works, simply because they were initially uploaded by Pinterest users onto Pinterest's website, has no support in the statute or case law.

### A.   Pinterest's Actions at Issue Are Not "At the Direction of A User"

The safe harbor under 17 U.S.C. § 512(c) is only applicable when the infringement occurs "by reason of the storage **at the direction of a user** of material that resides on a system or network controlled or operated by or for the service provider." 17 U.S.C. § 512(c) (emphasis added). Pinterest claims that "Mr. Davis' claims of infringement all arise from Pinterest's automated processes for copying, formatting, displaying, and facilitating access to content that was stored on Pinterest's system at the direction of users." Def. Mot. at 15. Not so. Importantly, Plaintiff does not claim copyright infringement for those "activities that were 'narrowly directed' towards enhancing the accessibility of [user] posts." *Mavrix Photographs, LLC v. LiveJournal, Inc.*, 873 F.3d 1045, 1056 (9th Cir. 2017). Nor does Plaintiff contend that Pinterest exceeded the scope of the DMCA safe harbor by converting user-submitted content into standard display formats, by coding content to enable users to locate and gain access to material uploaded by other users, or by using its algorithm to suggest related content that was uploaded by users. *See Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19, 38-39 (2d Cir. 2012) (affirming that § 512(c) safe harbor applies to three of

YouTube's challenged software functions—the conversion (or "transcoding") of videos into a standard display format, the playback of videos on "watch" pages, and the "related videos" function). Plaintiff also does not allege that Pinterest's review of user content for compliance with community standards or the ability to take down content takes Pinterest outside § 512(c)'s safe harbor.

Accordingly, the activities that are at issue in this case are not "narrowly directed" towards user accessibility. *See* Pl. Mot. at 2-10, 30-31. Rather, Pinterest's creation of derivative works, its selection and display of Plaintiff's Works with advertisement, and the distribution and display of Plaintiff's Works outside Pinterest's website in notifications to its users are directed solely by Pinterest **after** a user uploaded Mr. Davis' Works, all in order to generate advertisement revenue. Tellingly, Pinterest provides no legal authority for its bald contention that "if a user creates and stores on Pinterest a Pin incorporating one of Mr. Davis' images without his authorization, **and Pinterest then surfaces that stored Pin in search results or a user's feed**, any infringement of the image still arises by reason of the user's storage of the material on the service in the first instance." Def. Mot. at 16 (emphasis added; footnote omitted).

## 1. Creation of Derivative Works Is Not at the Direction of a User

Mr. DeChant states in his declaration that the purpose of generating Variants (*i.e.*, derivative works created from the content uploaded by users) "is to enable Pinterest to make user-uploaded content accessible to users in an efficient manner regardless of the devices, operating systems, and software they use to access the service, and regardless of the particular Pinterest functionality the user has selected." DeChant Decl. at ¶ 9. But this is just one aspect of Pinterest's creation of Variants. Although Pinterest focuses on the "transcoding" of content into standardized formats, *id.* at ¶ 8, the irrefutable evidence is that user accessibility is not the only, or even the main, reason Pinterest generates Variants. *See generally* Pl Mot. at 4-6. Pinterest does not merely format content. It also embeds Variants with data that it alone selects. *See* "How we use AutoML, Multi-task learning and Multi-tower models for Pinterest Ads" (PINTEREST 0002005-2017), Ex. 8 to Declaration of Charles D. Moore in Support of Plaintiff's Motion for Summary Judgment,

ECF No. 160-9 ("Moore Decl."), at 0002005 ("AutoML features a simple descriptive template to fuse varieties of pre-implemented feature transforms such that the deep neural networks are able to learn from raw signals."). The fundamental reason Pinterest "transforms" the information found in the original image uploaded by the user or advertiser (*i.e.*, "raw features"), and then embeds that **and other information of Pinterest's own choosing** onto Variants, is so its automated machine learning ("AutoML") can use that information to effectively display advertisement. As Pinterest itself explained:

> Each Pin is associated with certain information like an image and a set of textual annotations (title, description). **Here we aim to generate high-quality embeddings of Pins from our bipartite graph with visual and annotation embeddings as input features.**

> Pin embeddings are essential to various tasks like recommendation of Pins— including dynamic Pins like those for ads, and shopping—classification, clustering, and even reranking. Such tasks are fundamental to our key services like Related Pins, Search, Shopping, Ads.

*See* "PinSage: A new graph convolutional neural network for web-sale recommender systems," (PINTEREST 0002071-78), attached as Ex. B to Declaration of Charles D. Moore in Opposition to Defendant's Motion for Summary Judgment ("Opp. Moore Decl."), at PINTEREST 0002072 (emphasis added). This use of Variants, which Pinterest alone creates and which it alone embeds with data that it alone selects, is essential to Pinterest's advertisement business:

> Pinterest explained:

> People have always come to Pinterest for shopping inspiration, and we've made big strides over the years to make that as seamless as possible so Pinners (users) can go from inspiration to purchase, including evolving shoppable Product Pins, improving recommendations and making it easier for merchants to upload their catalogs to curate and feature their products. The vision of the Pinterest Shopping team is to empower Pinners to discover high-quality products and enable them to purchase with ease and confidence. **As a key step to fulfill this, we built the Related Products module to recommend Pinners the products we believe they'll love based on the Pin they're currently viewing.** This module appears as "Shop Similar" and "More to Shop" across the app.

"Multi-task Learning for Related Products Recommendations at Pinterest" (PINTEREST 0002037-47), attached as Opp. Moore Decl., Ex. C, at PINTEREST 0002037 (emphasis added).

Thus, the creation of Variants from Mr. Davis' Works is not "narrowly directed" towards enhancing user accessibility to Pins. Instead, it is broadly directed towards generating Pinterest's advertising revenues.

2. **Pinterest's Display of Plaintiff's Works in the Context of Advertisement Is Not At the Direction of A User**

Similarly, Pinterest's display of Plaintiff's Work in Pinterest's feeds where advertisement is displayed is not at the direction of a user. *See generally* Pl. Mot. at 6-8. Again, Pinterest tries to conflate what the user directs with what Pinterest directs. Mr. Galgon states in his declaration that "each of these feeds [where advertisements are shown] shows multiple, fractionally-sized images of Pins in a grid view and each feed is dynamically and algorithmically generated for a particular user at a particular moment in response to that user's activity on the service." Galgon Decl. at ¶ 8. Negating Pinterest's role with the use of passive verbs, Pinterest tries to downplay that Pinterest is the one that generates the grid view. Mr. Galgon's deposition testimony, however, makes clear that ███████████████████████████████████████████████████████████ ████████████████████████████████████████ Rather, this is all done by Pinterest:

████████████████████████████████████████████
████████████████████████████
      ██████
████████████████████████████████
████████████████████████████████
████████████████████████

Deposition Transcript of Ryan Galgon ("Galgon Tr."), Moore Decl. Ex. 3, 59:21-60:16 (emphasis added). *See also* Galgon Tr. 45:10-12 ███████████████████████████████ ██████ DeChant Decl. at ¶ 13 ("**Pinterest** dynamically and automatically generates a user's home feed . . .") (emphasis added).

Again, the images at issue in this case are not the Pins of Plaintiff's Works that users uploaded and displayed on their personal boards. The infringing use of Plaintiff's Works at issue are the derivate works of those Pins that Pinterest created, embedded with data for targeting advertisement, and displayed in connection with advertisement. It is undisputed that Pinterest

displays both Organic Pins and Promoted Pins in its ad surfaces, which Pinterest also calls feeds (*i.e.*, search results, the "home feed," and "related Pins" feeds). *See* DeChant Decl. at ¶ 17; Galgon Decl. at ¶ 8. Therefore, its actions are unlike the YouTube's "related video" function at issue in *Viacom*. The Second Circuit concluded that YouTube's "indexing and display of related videos retain a sufficient causal link to the prior storage of those videos." 676 F.3d at 28. The Court explained:

> The record makes clear that the related videos algorithm "is fully automated and operates **solely in response to user input** without the active involvement of YouTube employees." Supp. Joint App'x I:237. Furthermore, the related videos function serves to help YouTube users locate and gain access to material stored at the direction of other users. Because the algorithm "is closely related to, and follows from, the storage itself," and is "narrowly directed toward providing access to material stored at the direction of users," *UMG I*, 620 F.Supp.2d at 1092, we conclude that the related videos function is also protected by the § 512(c) safe harbor.

*Viacom*, 676 F.3d at 28 (emphasis added). Here, Pinterest's algorithm may be automated, but it is neither "solely in response to user input" nor "narrowly directed toward providing access to material stored at the direction of users." *Id.* Pinterest's algorithm instead is designed to target advertisement to its users.

As explained by Mr. Galgon, "advertisement placement is the result of the algorithmic balancing of many factors relating to the user, the advertisement, and the advertiser's bid . . . ." Galgon Decl. at ¶ 12. In other words, Pinterest's algorithm operates on "many factors relating to . . . advertisement[] and the advertiser's bid," *id.*, which clearly have nothing to do with the user and everything to do with Pinterest's advertising revenue. Unlike YouTube, Pinterest's display of Plaintiff's Works in search results, "home feed," and "related Pins" feeds is **not** "closely related to, and follows from, the storage itself" and is **not** "narrowly directed toward providing access to material stored at the direction of users." *Viacom*, 676 F.3d at 28. Pinterest's algorithm may be automated, but it clearly falls outside the DMCA's safe harbor because it operates in response to "many factors" that relate to advertisement and the advertiser's goals, well beyond user input. Galgon Decl. at ¶ 12. Mr. Galgon explained how Pinterest places advertisements in a user's search results, "home feed," and the "related Pins" feeds:

> The process begins with the algorithmic identification of all advertisements that

1
2
3
4
5
6
7
8

are eligible to appear on the user's page in light of applicable ad-targeting criteria. For example, if an advertiser has limited targeting of its advertisement to only female users, the advertisement will not be included as a candidate to be placed on what Pinterest believes to be a male user's home feed. Next, machine-learning algorithms rank the eligible advertisements based on a host of factors, such as the similarity between the interest(s) that the advertiser selected to target (e.g., dogs) and the topic(s) that the user has previously engaged with on the service (e.g., saving Pins of golden retrievers). Finally, the machine-learning algorithms consider the amount the advertiser is willing to pay to place its ad on the user's page, that is, the advertiser's bid (along with other factors relevant to the bid). **Pinterest's algorithms weigh the rankings and bid amounts for all eligible advertisements to determine in real time which of the potentially thousands of eligible advertisements "best" matches the desires of the advertiser and the interests of the user and delivers that advertisement to the user as part of the particular page the user is viewing.**

9   Galgon Decl. at ¶ 7 (emphasis).

10       Mr. Galgon makes abundantly clear that these algorithms are proprietary to Pinterest and

11  they weigh not only "the interests of the user" but also "the desires of the advertiser" in delivering

12  advertisements alongside Mr. Davis's Works. *Id.*

13                          **3.      Pinterest's Display and Distribution of Plaintiff's Works**
                                **in Notifications Are Not at the Direction of a User**
14

15       In a footnote, Pinterest makes the argument that its notifications are shielded by § 512(c)

16  because "[t]hey are merely another means of enhancing user access to content stored on the service

17  by other users, and are automatically generated based on user inputs without human curation or

18  involvement." Def. Mot. at 17 n. 10.

19       Using artificial intelligence to send out tens of thousands of emails and mobile/desktop

20  push notifications that distribute and display Plaintiff's Works **outside of Pinterest's website** is

21  hardly an activity that is "by reason of the storage at the direction of a user of material that resides

22  on a system or network controlled or operated by or for the service provider." 17 U.S.C. § 512(c).

23  Nothing in the statute suggests that the mere lack of human involvement is enough to trigger the

24  § 512(c) safe harbor or that "enhancing user access" is covered. Moreover, Pinterest's notifications

25  are not protected by § 512(d) because the notifications are not "by reason of the provider referring

26  or linking users to an online location . . . by using information location tools . . . ." 17 U.S.C. §

27  512(d). Users do not request notifications; users are not being sent the results of their searches in

28  notifications; and the notifications are distributed beyond Pinterest's website. *See* "Notification

1    Volume Control and Optimization System at Pinterest" (PINTEREST 0002095-2103), Moore

2    Decl. Ex. 11; *see also* Moore Decl. Ex. 12. Pinterest's assertion of DMCA safe harbor with respect

3    to notifications borders on the frivolous.

4         Unable to deny that its display and distribution of Plaintiff's Works in notification are not at

5    the direction of its users and are not related to information location tools, Pinterest argues that

6    notifications somehow are "no longer at issue because [Plaintiff] failed to identify any notifications

7    in his June 4 Spreadsheet which defined the universe of alleged infringements in this case." Def.

8    Mot. at 17 n. 10. As discussed in detail below, Pinterest's efforts to avoid judgment on the merits

9    with procedural gamemanship cannot be condoned.

10        **B.      Pinterest Has the Right and Ability to Control the Infringing
             Activity and Receives a Financial Benefit Directly Attributable to
11           the Infringing Activity**

12   Pinterest also does not qualify for safe harbor under either § 512(c) or (d) for the

13   independent reason that it has the "right and ability to control" the infringing activity and receives

14   "a financial benefit directly attributable to the infringing activity." 17 U.S.C. § 512(c)(1)(B), (d)(2).

15        As an initial matter, Pinterest argues that under Fed. R. Civ. P. 37(c)(1), Plaintiff should not

16   be permitted to cite any evidence that Pinterest receives a financial benefit directly attributable to

17   the infringing activity and that Pinterest has the right and ability to control such activity because

18   Plaintiff did not identify specific evidence in its contention interrogatory response. Def. Mot. at 23-

19   24. This is yet another example of Pinterest's half-truths. What Pinterest does not explain is that

20   this response to Pinterest's contention interrogatory was served on June 3, 2021, **before** Pinterest

21   produced the bulk of its documents and **before** the deposition of Pinterest's witnesses designated

22   under Fed. R. Civ. P. 30(b)(6). In addition to the Plaintiff's response that Pinterest selectively

23   quotes, Plaintiff also objected to this interrogatory request as follows:

24        Plaintiff objects that this interrogatory is unduly burdensome. To date, Defendant
          has refused, failed, or unduly limited the scope to produce documents with respect to
25        each and every Document Request. *See* Defendant Pinterest, Inc.'s Responses and
          Objections to Plaintiff Harold Davis' First Set of Requests for Production.
26        Defendant also has failed or refused to provide witnesses who can testify to the
          topics identified by Plaintiff in Plaintiff's amended proposed Rule 30(b)(6)
27        deposition notice. *See* Letter from Thomas R. Wakefield, dated May 23, 2021.
          Plaintiff's position is that the requested information is relevant and discoverable
28        under the Federal Rules of Civil Procedure for purposes of establishing "financial

benefit directly attributable to the infringing activity" and that Pinterest had the "right and ability to control such activity" within the meaning of 17 U.S.C. §§ 512(c)(1)(B) or 512(d)(2).

*See* Declaration of Thomas R. Wakefield in Support of Defendant Pinterest, Inc.'s Motion for Summary Judgment ("Wakefield Decl.), Ex. L, ECF No. 153-12, at 10.

Pinterest attempts to use Plaintiff's responses to contention interrogatories to limit evidence on its motion, Def. Mot. at 21-24, but Plaintiff in no way responded improperly given the limited discovery Pinterest had provided at that juncture. *See e.g., Koninklijke Philips Patent Litig.*, Case No. 18-cv-01885-HSG, 2020 WL 7398647, at *5 (N.D. Cal. Apr. 13, 2020) (Gilliam, J.) (contention interrogatories do not require parties to disclose specific evidence or prove their case); *Finjan, Inc. v. Symantec Corp.*, No. 14-cv-02998-HSG (JSC), 2018 WL 620169, at *2 (N.D. Cal. Jan. 30, 2018) (in responding to contention interrogatories, parties "need not 'prove up' their theories by providing evidence beyond the material they have at the time they make their contentions") (internal quotation omitted). Indeed, Pinterest did not fulfill its own discovery obligations until after it was ordered to do so and after the close of discovery. Telling, Pinterest did not move to compel supplementation of these responses and did not move to exclude evidence. Even had Pinterest moved for sanctions, courts in this Circuit have declined to adopt the "drastic" sanction of precluding evidence on the grounds that a party failed to identify "specific facts" or "evidence" when responding to the interrogatories. *See*, *e.g.*, *Myers v. United States, et al.*, No. 02CV1349-BEN, 2004 WL 7323090, at *2 (S.D. Cal. Nov. 4, 2004); *Jack v. Borg-Warner Morse*, No. C17-0537JLR, 2018 WL 4409800, at *25 (W.D. Wash. Sept. 17, 2018). Pinterest's position also fails on the merits.

### 1.   Pinterest Has the Right and Ability to Control the Infringing Activity

In arguing that "Pinterest does not exert anything approaching a 'substantial' influence over its users' uploads of content," Def. Mot. at 24, Pinterest again attempts to recast Plaintiff's claim as one about Pinterest's display of users' uploads, *i.e.*, Pins. It is not. Plaintiff is **not** alleging infringement with respect to Pinterest displaying user content or allowing users to share content. His infringement claim is about what **Pinterest** does **after** a user uploads his Work, *i.e.*, when

1   "Pinterest then surfaces that stored Pin in search results or a user's feed." Def. Mot. at 16. The

2   cases Pinterest relies upon, Def. Mot. at 24, are inapposite because the defendants in those cases

3   did nothing more than store and display content uploaded by users. They did not re-display and

4   distribute that content themselves to drive advertising revenue, precisely what Pinterest admits to

5   doing.

6   In *UMG Recordings, Inc. v. Shelter Capital Partners*, 718 F.3d 1006 (9th Cir. 2013), the

7   plaintiff sued Veoh, a website that enables users to share videos. Veoh broke down the video into

8   smaller chunks, transcoded the video into Flash 7 format, and extracted metadata to help others

9   locate the video for viewing. *Id.* at 1012. The Ninth Circuit thus agreed with the district court's

10  conclusion that "Veoh has simply established a system whereby software automatically processes

11  user-submitted content and recasts it in a format that is readily accessible to its users" and "this

12  automated process for making files accessible is initiated entirely at the volition of Veoh's users."

13  *Id.* at 1020 (internal quotation omitted) (emphasis added).

14  Similarly, the Ninth Circuit explained in *Ventura Content, Ltd. v. Motherless*, 885 F.3d 597

15  (2018):

16          As in *UMG*, Motherless's users, not the website, decide what to upload and what
        file names and tags to use. Our holding in UMG disposes of the argument that
17      altering the file format to make it accessible before posting, and enabling users to
        apply search tags to uploads, takes the posting of the content out of the "at the
18      direction of a user" definition.

19  *Id.* at 606 (citation omitted). *See also Kinsley v. Udemy, Inc.*, No. 19-cv-04334-JSC, 2021 WL

20  122489 (N.D. Cal. Mar. 31, 2021) (infringement claim brought against website that provided third-

21  party individuals the ability to upload educational content).

22  In none of these cases did the claim of infringement center on what the website operators

23  did with the content after it was uploaded and displayed by the user. There was no allegation, as

24  here, that the defendants then distributed the content to users outside the website, coded the content

25  in order to target advertisements to users, or displayed the content on new website surfaces. Unlike

26  the cases relied upon by Pinterest, Pinterest's display and distribution of Plaintiff's Works is **not**

27  "initiated **entirely** at the volition of [Pinterest] users." *Shelter Capital*, 718 F.3d 1006 (emphasis

28  added).

Pinterest alone controls the number of notifications, the type of notification, the content of the notification, and the timing of the notification. *See generally* Pl. Mot. at 8-9. In addition, Pinterest alone "curate[s] uploaded content," *Motherless*, 885 F.3d at 613, on ad surfaces. ▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ *See* Galgon Tr., Moore Decl. Ex. 3, at 45:10-12, 59:21-60:16; Deposition Transcript of Henry Lien as 30(b)(6) witness ("Lien Corporate Tr."), Moore Decl. Ex. 5, 109:3-14; *see generally* Pl. Mot. at 6-8. And it is **not** Pinterest's users who decide "what file names and tags to use," *Motherless*, 885 F.3d at 606, because Pinterest alone determines what data it embeds into its Variant. *See, e.g.,* "PinSage: A new graph convolutional neural network for web-sale recommender systems," (PINTEREST 0002071-78), Opp. Moore Decl., Ex. B, at PINTEREST 0002072 ("we aim to generate high-quality embeddings of Pins from our bipartite graph with visual and annotation embeddings as input features").

That Pinterest created "automated functionalities [to] operate in response to user inputs," Def. Mot. at 25, does not render them outside of Pinterest's control. *See* Deposition Transcript of Nick Dechant ("DeChant Tr."), Moore Decl. Ex. 2, 43:23-44:5 (▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ Tr 31:6-10 ▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉. *See generally* Pl. Mot. at 4-6. Pinterest's tracking of user inputs clearly is not for the benefit of users' accessibility; it is for Pinterest's targeted advertisement business. Pinterest created and controls all of the algorithms it uses to track its users' interaction with Variants and to display advertisement based on that interaction. Indeed, Pinterest publicly touted how it continuously hones its automated machine learning to make its advertisement more efficient and valuable. *See* "How we use AutoML, Multi-task learning and Multi-tower models for Pinterest Ads" (PINTEREST 0002005-2017), Moore Decl. Ex. 8.

**2.    Pinterest Received a Financial Benefit Directly
Attributable to the Infringing Activity**

Pinterest next argues that "[u]nder established law, the placement of advertisements on Pinterest's service in this manner does not establish the requisite direct link between any advertising revenue and the allegedly infringing content at issue." Def. Mot. at 27. Pinterest is wrong. The Ninth Circuit has held that financial benefit can be found to be directly attributable to infringing activity even "where, as here, the service provider's revenue is derived from advertising, and not from users." *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1045 (9th Cir. 2013). Of course, Pinterest goes beyond passively displaying advertisements as the defendants did in *Shelter Capital*, 718 F.3d at 1011, *Motherless*, 885 F.3d at 613, *Downs v. Oath, Inc.*, 385 F.3d 298, 307 (S.D.N.Y. 2019), and even *Fung*.

Pinterest's own testimony and documents demonstrate without a doubt that the activities at issue—the making of derivative works from Mr. Davis' Works to track user interaction with his Works, the display of Mr. Davis' Works on ad surfaces to entice its users to engage with ads the same way they do with organic Pins of Mr. Davis' Works, and the display and distribution of Mr. Davis' Works in notifications—are integral to Pinterest's targeted advertisement business. *See*, *e.g.*, "Multi-task Learning for Related Products Recommendations at Pinterest" (PINTEREST 0002037-47), Opp. Moore Decl. Ex. C, at PINTEREST 0002037 ("we built the Related Products module to recommend Pinners the products we believe they'll love based on the Pin they're currently viewing. This module appears as "Shop Similar" and "More to Shop" across the app."). Contrary to Pinterest's argument, the appearance of Mr. Davis' Works in the context of advertisement is hardly "coincidental." Def. Mot. at 26. They specifically appear with advertisement because Pinterest's goal is to get its users to "engag[e] with ads the same way they do with organic Pins." *See* "How we use AutoML, Multi-task learning and Multi-tower models for Pinterest Ads" (PINTEREST 0002005-2017), Moore Decl. Ex. 8, at PINTEREST 0002005. For example, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Opp. Moore Decl., Ex. D, at PINTEREST 0002575 (emphasis added).

Because there are no genuine issues of fact that the activities alleged to infringe Plaintiff's copyrights is outside the safe harbors of the DMCA, Defendant's motion for summary judgment should be denied and Plaintiff's cross-motion be granted on this defense.

## II.     PINTEREST'S GAMEMANSHIP DOES NOT DEFEAT PLAINTIFF'S CLAIM OF DIRECT INFRINGEMENT

The indisputable evidence produced by Pinterest—after the close of discovery and only after being ordered to do so—is that Pinterest displayed Plaintiff's Works in the context of advertisement in the week predating the filing of the Amended Complaint (March 4, 2020 to March 10, 2020) and the week pre-dating the filing of the SAC (November 4, 2020 to November 10, 2020). Moreover, there is no genuine issue of fact that Pinterest displayed and distributed Plaintiff's Works numerous times in notifications from August 1, 2019 to November 12, 2020. *See* Opp. Moore Decl. at ¶¶ 9-245; *see generally* Pl Mot. at 9-10.

Pinterest nonetheless argues that this Court should ignore this evidence and instead grant it summary judgment for certain Works because they were not listed in the June 4 Spreadsheet. Def. Mot. at 27-28. Never mind that Pinterest steadfastly refused for months to produce any evidence of its use of Plaintiff's Works, falsely claiming that it needed Plaintiff to provide URLs or Pin IDs for alleged infringements on Pinterest's website of the 51 Works. *See* Pinterest's Reponses and Objections to Plaintiff Harold Davis' First Set of Interrogatories (Nos. 1-7), dated February 1, 2021, Moore Decl. Ex. 13, at 17.

With respect to its statute of limitations defense, Pinterest has completely changed its position that only URLs and Pin IDs can be used to identify infringement. It now argues that the underlying images on Pinterest's website should have put Plaintiff on notice of infringement. Never mind that Pinterest itself does not use underlying images for DMCA takedown notices and did not provide any means of tying underlying images to discovery responses until September 10, 2021. *See* Opp. Moore Decl. Ex. A (Pinterest's key with a list of "native images" produced by Pinterest in certain documents corresponding to its "pin_image_signatures").

To allow Pinterest to chip away at specific Works in this manner would endorse litigation tactics that elevate gamesmanship over truth. The essential purpose of the judicial system is the

adjudication of disputes on their merits. *See Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986) ("Cases should be decided on their merits whenever reasonably possible"); *see also Pagtalunan v. Galaza*, 291 F.3d 639, 643 (9th Cir. 2002) ("Public policy favors disposition of cases on the merits."). Pinterest should not be permitted to narrow Plaintiff's claim of infringement (though it cannot dispel it completely) with respect to certain Works, not on the merits but with tactics of obfuscation and delay.

> [A]t summary judgment, the court's key object is weighing the merits of the case. . . . It is generally not appropriate at summary judgment to award a decision based on technicalities alone: Summary judgment is not a game of 'Gotcha!' in which missteps by the non-movant's counsel, rather the merits of the case, can dictate the outcome.

*Uschold v. Carriage Services, Inc.*, No. 17-cv-04424-JSW, 2020 WL 1466172, at * 4 (N.D. Cal. March 6, 2020).

### A.    Pinterest's Statute of Limitation Defense Fails

Pinterest claims that "regardless of the creation date of the specific **Pins** he now complains about, the underlying **images** were available on Pinterest before November 2016 in the same manner that Mr. Davis now claims to be infringing." Def. Mot. at 30 (emphasis in original).[1] This is patently false. In fact, this one sentence demonstrates the numerous ways in which Pinterest misstates Plaintiff's infringement claim and the evidence.

First, Mr. Davis does not complain about how individual users uploaded his Works as Pins or displayed those Pins on their personal boards. Rather, he complains about how Pinterest uses his Works. When a user first uploaded Mr. Davis' Works is wholly irrelevant to when the statute of limitations began to run with respect to Pinterest's actions. The separate-accrual rule applies so that Pinterest committed successive infringements each time it made derivative works from Plaintiff's Works, each time it displayed Plaintiff's Works in connection with advertisement, and each time it

---

[1] Although Pinterest claims "Pinterest does not process or store redundant files," *id.* at 30 n. 18, Pinterest uses an exceedingly narrow definition of "redundant" requiring bit-by-bit identical files to be considered the same image. *See* Lien Corporate Tr., Moore Decl. Ex. 5, at 86:5-8 ("what I mean by exact match is that you have two image files that are exactly the same bit for bit, so every bit of that image file is completely identical"); *see also* Opp. Moore Decl. ¶¶ 9-245 (showing that highly similar images have different Pin Image Signatures).

distributed and displayed Plaintiff's Works in notifications.

Second, Pinterest itself does not consider "underlying images" for purposes of DMCA takedown requests generally or discovery requests specific to this case. Pinterest only accepts specific URLs or Pin IDs for its takedown notices and takes down only exact bit-by-bit matches of those identified Pins. The only evidence that Pinterest produced regarding its own display of Plaintiff's Works does not use underlying images and conclusively demonstrates that it engaged in tens of thousands of instances of infringement within the three-year statute of limitations.

Third, Plaintiff could not have known before filing his case the "manner" Pinterest infringed his Works because that information was learned only through discovery. After all, Pinterest itself designated this information confidential or highly confidential, suggesting that such information is not publicly available. Moreover, Pinterest states that the display of feeds are "dynamic" and thus vary from user to user and moment to moment. *See*, *e.g.*, DeChant Decl. at ¶¶ 12-14. Without internal documents and depositions of employees, Plaintiff could not know, as he does now, that what is displayed to him or others investigating on his behalf are the function of processes and functions uniformly controlled by Pinterest and uniformly applied by Pinterest across its website.

### 1.    Separate-Accrual Rule of Copyright Infringement Bars Pinterest's Defense

Pinterest argues that a "host" of Plaintiff's infringement claims are barred by the statute of limitations because under the "discovery rule" a copyright claim accrues when a party discovers or reasonably should have discovered the alleged infringement. Def. Mot. at 28. However, the Ninth Circuit has made clear that the "discovery rule" must be applied in conjunction with the "separate-accrual rule." *Media Rights Techs., Inc. v. Microsoft Corp.*, 922 F.3d 1014, 1022-23 (9th Cir. 2019).

> In addition to the discovery rule, the "separate-accrual rule" in copyright law provides that "when a defendant commits successive violations [of the Copyright Act], the statute of limitations runs separately from each violation. Each time an infringing work is reproduced or distributed, the infringer commits a new wrong. Each wrong gives rise to a discrete 'claim' that 'accrue[s] at the time the wrong occurs.'"

1

2

*Id.* at 1023 (9th Cir. 2019) (edits and quotations in original) (quoting *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 671 (2014)).

3

4

5

6

7

8

9

10

11

12

13

Here, Pinterest committed successive violations of the Copyright Act each time it displayed and distributed Mr. Davis' Works. Plaintiff in support of his motion for summary judgment pointed to records that Pinterest itself produced of when and in what context Pinterest successively displayed and/or distributed Plaintiff's Works. *See* Moore Opp. Decl. at ¶¶ 9-245. The undisputed evidence is that Pinterest committed numerous discrete acts of infringement by displaying Plaintiff's Works in the context of advertisement in the week predating the filing of the Amended Complaint (March 4, 2020 to March 10, 2020) and in the week pre-dating the filing of the SAC (November 4, 2020 to November 10, 2020). Pinterest also displayed and distributed Plaintiff's Works numerous times in notifications from August 1, 2019 to November 12, 2020. These are all separate wrongs committed by Pinterest that give rise to discrete claims that accrued at the time the wrong occurred, all after November 2016.

14

15

16

17

18

19

20

21

22

23

24

25

In its efforts to avoid the separate-accrual rule, which clearly defeats its statute of limitations defense, Pinterest attempts to frame Plaintiff's claim as being about Pins being allowed to be continually accessible to users. It is not. The date on which a user uploaded Mr. Davis' Works to that user's board is wholly irrelevant to Plaintiff's claim of infringement that centers on Pinterest's activity, not the users'. Similarly, the cases it relies upon are inapposite. *See* Def. Mot. at 30 n. 19, citing *Bell v. Oakland Community Pools Project, Inc.*, No. 19-cv-01308-JST, 2020 WL 4458890, at *6 (N.D. Cal. May 4, 2020) (collecting cases in which "the mere fact that a document remained online does not trigger the separate-accrual rule"), *Wolf v. Travolta*, 167 F. Supp. 3d 1077, 1099 n. 13 (C.D. Cal. 2016) ("The fact that the allegedly infringing document – published in 2010, outside the relevant three-year window – *remained* on defendant's website through 2014 does not give rise to a discrete claim accruing within the three-year window.") (emphasis in original).

26

**2.   Evidence Produced by Pinterest of Its Own Infringement Is All Within the Statute of Limitations**

27

28

According to the conclusory chart attached as Exhibit Z to the Wakefield Decl., ECF No. 153-26, there are 16 Works that were not listed on the June 4 spreadsheet. However, the documents

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
CASE NO. 19-cv-7650

that Pinterest produced—after the close of discovery and unilaterally limited in temporal scope—conclusively show that those Works were displayed by Pinterest in connection with advertisement and were distributed and displayed in notifications all within the statute of limitations. *See* Opp. Moore Decl. at ¶¶ 9-245.

After Plaintiff won his motion to compel, Pinterest finally produced on August 19, 2021 the information that Plaintiff had sought since December 16, 2020. Pinterest produced a Supplemental Response to Interrogatory No. 6 and produced PINTEREST-0002756-2887, 0002934-2945, 0003002-3364, 0003356-3986. *See* Pinterest's Third Supplemental Response and Objections to Plaintiff Harold Davis' First Set of Interrogatories (Nos. 1-7), Moore Decl. Ex. 14, at 16-20. In that interrogatory response verified by Henry Lien, *id.* at 22, Pinterest stated, among other things, that PINTEREST 0002756-2887 and PINTEREST 0003002-3364 are documents that "show, for each Pin that contained a duplicate or near duplicate of an image that Plaintiff has identified as being a work in suit: (1) the board to which it was pinned; (2) whether and how often the Pin was re-pinned; (3) occasions on which the Pin appeared on a Pinterest surface (e.g., homefeed); (4) the date(s) associated with those activities; and (5) the third-party web domain to which the Pin links, to the extent such documents exist in a readily accessible format in Defendant's possession, custody, or control based on a reasonable search and diligent inquiry." *Id.* at 18-19. But rather than produce responses for the entirety of the relevant period—or even since the filing of the lawsuit—Pinterest chose to limit its search to just the week pre-dating the filing of the Amended Complaint (March 4, 2020 to March 10, 2020) and the week pre-dating the filing of the SAC (November 4, 2020 to November 10, 2020). *Id.* at 19. This temporal limitation was never discussed by the parties or allowed by the Court; it was the unilateral self-serving decision of Pinterest.

Pinterest also produced PINTEREST 0002934-0002945 and PINTEREST 0003365-0003986 on August 19, 2021, after the discovery deadline, which Pinterest identified as "documents that show, for each Pin that contained a duplicate or near duplicate of an image that Plaintiff has identified as being a work in suit: (1) the date(s) on which a notification that linked to the Pin was sent to a user; (2) redacted user account(s) to which the notification was sent; and (3) the type of notification that was sent, to the extent such documents exist in a readily accessible

1    format in Defendant's possession, custody, or control based on a reasonable search and diligent

2    inquiry." *Id.* at 19. Again, Pinterest unilaterally set a temporal limitation. For information regarding

3    the Works Pinterest displayed and distributed in notifications, it produced data from two years pre-

4    dating the filing of the Second Amended Complaint. *Id.*

5         Importantly, all of the documents produced by Pinterest on August 19, 2021 were

6    indecipherable because the only information identifying the Works referenced in those documents

7    was the "pin_image_signature," a string of letters and numbers associated with a specific image

8    and meaningful only to Pinterest. It was not until September 10, 2021, that Pinterest finally

9    produced its Fourth Supplemental Response to Interrogatory No. 6, attaching the key to these

10   documents: (A) a list of "native images" produced by Pinterest in certain documents corresponding

11   to (B) its "pin_image_signatures." *See* Exhibit A to Pinterest's Fourth Supplemental Responses and

12   Objections to Plaintiff Harold Davis' First Set of Interrogatories (Nos. 1-7), Opp. Moore Decl. Ex.

13   A. Plaintiff then was forced to take multiple steps to understand which Pin Image Signature

14   corresponds to which Work. Plaintiff had to locate the documents displaying "native images,"

15   which were identified in Ex. A to the Fourth Supplemental Response, then visually match the

16   images in Pinterest's documents to the images of the Works listed in Exhibit A to the Second

17   Amended Complaint. Only then could Plaintiff understand when, how, and the number of times

18   Pinterest had used his Works based on its August 19, 2021 document production. *See* Moore Decl.

19   ¶¶ 17-30.

20        Based on the information produced by Pinterest on September 10, 2021, long after the

21   discovery deadline. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

22   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

23   ▮▮▮▮. *See* Opp. Moore Decl. at ¶¶ 9-245.

### 3.   Pinterest's Own Treatment of Alleged Copyright Infringement Is Not Tied to Images

26        That Pinterest would argue that it is Mr. Davis' awareness of "underlying images" of his

27   Works on Pinterest's website that starts the clock running on the statute of limitations is

28   particularly audacious given its own position that awareness of those images does not put Pinterest

on notice of infringement and cannot be used for DMCA takedown notices. *See* Def. Mot. at 17-23.

Pinterest requires the identification of specific URLs or Pin IDs in order to process the DMCA takedown notice and does not conduct image-based searches. *See* Lien Decl., Ex. 5 (attaching Pinterest's Copyright Infringement Notification" form). When confronted with displays of Plaintiff's Work No. 15, "Kiss from a Rose," on Pinterest's website—even after he sent a takedown notice that asked to "**please remove and disable all access to the aforementioned copyrighted work immediately**"—Mr. Lien explained that Pinterest's DMCA takedown procedure is limited to removing only exact matches of user-posted Pins. Even though Pinterest has the ability to search its website for duplicate and near-duplicate images, Pinterest only deletes Pins that are bit-by-bit "identical" or "exact matches" to the Pin identified by URL.



Deposition Transcript of Henry Lien in his individual capacity ("Lien Individual Tr."), Moore Decl. Ex. 6, 20:12-21:4.

Pinterest also initially insisted that it does not and cannot identify infringements by images. In response to Plaintiff's interrogatory seeking every instance in which the Works were used on Pinterest, Pinterest stated in relevant part:

> Plaintiff has not provided uniform resource locators (URLs) or Pin IDs for alleged infringements on Pinterest of the 51 images that he claims are at issue in the SAC. Without such information, Pinterest does not know whether the images that Plaintiff claims to own and claims are at issue can be found among the billions of images that users have posted on the Pinterest service.

Pinterest's Reponses and Objections to Plaintiff Harold Davis' First Set of Interrogatories (Nos. 1-

7), dated February 1, 2021, Moore Decl. Ex. 13, at 17. After Magistrate Judge Hixson ordered Pinterest to provide proper responses to Plaintiff's discovery requests, Pinterest supplemented its interrogatory response and produced additional documents on August 19, 2021. *See* Pinterest's Third Supplemental Response and Objections to Plaintiff Harold Davis' First Set of Interrogatories (Nos. 1-7), Moore Decl. Ex. 14, at 16-20.

But none of the documents produced by Pinterest on August 19, 2021 were keyed to Plaintiff's Works by image. Rather, the only information identifying the Works was the Pin Image Signature. Pinterest did not provide any means of cross-referencing the Pin Image Signature with the images of Plaintiff's Works until September 10, 2021, when Pinterest finally produced the key that linked Pin Image Signatures to the "native images" produced by Pinterest in certain documents. *See* Exhibit A to Pinterest's Fourth Supplemental Responses and Objections to Plaintiff Harold Davis' First Set of Interrogatories (Nos. 1-7), Opp. Moore Decl. Ex. A.

Even though irrelevant, Pinterest's so-called evidence submitted in support of its statute of limitations defense highlights its strategy to refuse or make exceedingly difficult any linking of Mr. Davis' "underlying images" with Pinterest's uses of those images. The sole documentary evidence Pinterest relies upon is one bearing the Bates number PINTEREST – 0002361. Mr. Lien explained:

> [This document] accurately reflects the dates that those Pins, as well as the JPEG files that serve them, were first saved on Pinterest's computer network. Column A shows the unique identification number for each Pin. Column B shows the date that each Pin was created by a Pinterest user. Column C shows the date that each Pin was removed from public access. Column D shows the date that the JPEG image files in each Pin were first saved on the service.

Lien Decl. at ¶ 35, Exhibit 12. Pinterest, however, provided no way for this Court or Plaintiff to match the Pin ID number in Column A to any particular Work. There is an evidentiary gap that Pinterest itself created and cannot close here. The murkiness of Pinterest's evidence is even more apparent with Mr. Lien's statement that, based on a review of unspecified "business records," he was able to identify the date on which three other JPEG files was first saved to Pinterest's computer network. *Id.* at ¶ 36. He provides no Bates numbers for the "business records" he relied upon, and he provides no information about which Work the JPEG files reflects. *Id.* Indeed, this appears to be new information that Pinterest never provided to Plaintiff in discovery.

1    It is in this context that Pinterest makes its brazen about-face in now focusing on images

2  rather than "exact matches" in asserting its statute of limitation defense.

3        **4.    Plaintiff Learned about the Specifics of Pinterest's Use of**
          **His Works Only Through Discovery Marked Confidential**
4         **by Pinterest**

5    Pinterest argues that any instances of alleged infringement Plaintiff knew or should have

6  known about before November 20, 2016 are time barred because he knew that his Works were

7  displayed on Pinterest's website. Def. Mot. at 28. This flies in the face of Pinterest's own position

8  that underlying images do not put Pinterest on notice of infringement whether in the DMCA

9  takedown context or in refusing to produce discovery for months, insisting that without URLs and

10  Pin ID's it "does not know whether the images that Plaintiff claims to own and claims are at issue

11  can be found among the billions of images that users have posted on the Pinterest service." Moore

12  Decl. Ex. 13 at 17. It nonetheless now argues that Plaintiff should have been able to know which

13  displays of Plaintiff's photographs, among the billions of images on Pinterest's website, are

14  infringing, even though many Pins of Plaintiff's Works on personal boards constitute fair use. It

15  was not until depositions of Pinterest's employees and the production of internal documents that

16  Plaintiff was able to understand how Pinterest used his Works. Indeed, having designated much of

17  its witnesses' testimony and documents as confidential or highly confidential, Pinterest cannot

18  seriously contend that Mr. Davis knew or should have known prior to the filing of his case the

19  manner in which Pinterest used his Works.[2]

20    For example, one of the salient facts learned by Plaintiff in discovery is that ████████

21  ████████████████████████████████████████████████████████████████████

22  ████████████████████████████████████████████████████

23    ████████████████████████████████████████████████████████████

24      ████████████████████████████████

25  ─────────────────
    [2] Pinterest now seeks to seal only limited portions of deposition transcripts that contain personally
26  identifiable information of current and former employees of Pinterest, documents not cited in
    Plaintiff's motion, and Moore Decl., Ex. 12. *See* Declaration of Henry Lien in Support of
27  Plaintiff's Motion to Seal Confidential Information, ECF No. 170. However, Mr. Lien's
    declaration does not make clear whether Pinterest has withdrawn its confidential and highly
    confidential designations with respect to those portions of Plaintiff's Motion and supporting
28  declaration that Pinterest no longer seeks to seal.



DeChant Tr., Moore Decl. Ex. 2, 30:24-32:1.

Each and every time a user uploaded one of Mr. Davis' Works,

Mr. Davis simply could not have known or reasonably discovered three years before he filed this action

, all of which Plaintiff learned through discovery and all of which Pinterest marked confidential.

In any event, the notion that Plaintiff should have reasonably known or investigated his infringement claim is a flimsy basis for summary judgment. *See Adobe Systems, Inc. v. NA Tech Direct, Inc.*, No. 17-cv-5226-YGR, 2019 WL 5579472, at *9 (N.D. Cal. Oct. 29, 2019) (denying summary judgment on grounds of discovery rule finding that "[w]hether Adobe should have

1    reasonably known or investigated" the defendants' unauthorized sales of its copyrighted software

2    "is a question of fact for the jury"); *see also Grisham v. Philip Morris, Inc.*, 670 F. Supp. 2d 1014,

3    1021 (C.D. Cal. 2009) ("[S]ummary judgment is rarely proper where the statute of limitations runs

4    from when plaintiff discovered or should have discovered the element of the cause of action.")

5    (citation omitted).

6         In sum, Pinterest relies on irrelevant and conclusory evidence to support its statute of

7    limitation defense, whereas Plaintiff has presented irrefutable proof that Pinterest violated

8    Plaintiff's exclusive copyrights within the statute of limitations. Moreover, to permit Pinterest to

9    take inconsistent positions with respect to whether underlying images can be used to investigate

10   allegations of infringement would endorse questionable litigation tactics. Plaintiff is entitled to

11   summary judgment with respect to Pinterest's statute of limitations defense.

12        **B.      Pinterest Cannot Obtain Judgment on Certain Works Based on**
              **Non-Substantive Discovery Issues**
13

14        Pinterest, citing Fed. R. Civ. P. 37(c)(1), asks this Court to enter judgment with respect to

15   sixteen Works simply because they were not listed in a certain spreadsheet, Def. Mot. at 27-28,

16   even though Pinterest itself later produced evidence of infringement of all those Works. Courts

17   within the Ninth Circuit repeatedly have recognized that "the court's key object is weighing the

18   merits of the case" at summary judgment and that "[s]ummary judgment is not a game of 'Gotcha!'

19   in which missteps by the non-movant's counsel, rather the merits of the case, can dictate the

20   outcome." *Uschold*, 2020 WL 1466172 at *4 (denying motion for summary judgment because of

21   alleged discovery violations); *see also Crum & Forster Indemnity Co. v. Robb Report Media LLC*,

22   No. 20-cv-00127-LB, 2021 WL 2531070, at *1 n. 1 (N.D. Cal. June 21, 2021) (same); *Jack v.*

23   *Borg-Warner Morse*, 2018 WL 4409800 at *25 ("a motion for summary judgment premised on the

24   opposing party's alleged discovery violations fails to properly invoke the standard by which the

25   court must adjudicate such a motion under Rule 56"); *Steigmaier v. City of Reno*, No. 3:13-cv-

26   00461-MMD-VPC, 2016 WL 1611592, at *4 (D. Nev. April 22, 2016) (denying motion for

27   summary judgment, holding that "[t]o the extent that Defendant moves for summary judgment on

28   the basis that Plaintiff committed a discovery violation, this is not sufficient to support summary

1    judgment.").

2         Indeed, Rule 37(c)(1) expressly states: "If a party fails to provide information or identify a

3    witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness

4    to supply evidence on a motion, at a hearing, or at a trial, **unless the failure was substantially**

5    **justified or is harmless.**" Fed. R. Civ. P. 37(c)(1) (emphasis added). Here, Plaintiff's failure to

6    include certain instances of infringement in the June 4 Spreadsheet was justified due to Pinterest's

7    active hindrance of Plaintiff's ability to gather evidence of infringement. *See* Pl. Mot. at 18-23.

8         Pinterest used dubious objections and responses to Plaintiff's discovery requests to actively

9    hinder Plaintiff's efforts to obtain discovery of its infringement and authenticate his evidence of

10   infringement. ████████████████████████████████████████████████

11   █████████████████████████████████████████████████████████████

12   ██████████████████████████████████████████████████████ *See*

13   Deposition Transcript of Henry Lien ("Lien Spoliation Tr."), Moore Decl. Ex. 7, 13:2-14:4; 31:24-

14   32:6; 40:12-22; 63:17-64:10. ████████████████████████████████

15   █████████████████████████████████████████████████████████████

16   ████████████████████████████████████████[3]

17        In addition, that certain instances of infringement were not included in the June 4

18   Spreadsheet was harmless to Pinterest's ability to defend itself in this litigation. Pinterest was

19   repeatedly and consistently put on notice with Plaintiff's Second Amended Complaint, Plaintiff's

20   responses to interrogatories, and Plaintiff's responses to requests for admissions that Pinterest's

21   own activity, not that of its users, is the basis for Plaintiff's direct infringement claim. Pinterest

22   posed Interrogatory No. 13, which asked:

23        For each individual alleged infringement of a Work In Suit that You assert in
         this action, describe in detail the manner(s) in which and by which You contend
24       the infringement took place, including specification of all evidence supporting
         any infringement claimed.

25   Wakefield Decl., Ex. L, ECF No. 153-12, at 3.

26        In relevant part, Plaintiff responded:

27   ───────────────────
     [3] If any party committed discovery violations, it was Pinterest. Plaintiff nonetheless did not rely
28   upon any such violation by Pinterest for his motion for partial summary judgment given that
     discovery violations cannot serve as the basis for summary judgment.

Plaintiff objects to the Interrogatory as unduly burdensome to the extent that it calls for information already in the possession of Defendant, its attorneys, or agents, in the form of the allegations in Plaintiff's Second Amended Complaint ("SAC"), ECF No. 56, that detail the manner in which Plaintiff contends the infringement took place. . . . Subject to and without waiving the foregoing objections and the general objections, **Plaintiff responds that Defendant violated his exclusive rights, within the meaning of 17 U.S.C. § 106, in each of Plaintiff's Works by copying, making derivative works, distributing, and displaying the Works on Pinterest's website and application, without authorization from Plaintiff, for purposes of promoting Pinterest and third parties who engaged Pinterest for advertising services. In other words, the crux of Plaintiff's copyright claim is against Pinterest's misuse of his Works to advertise and promote (1) the products and services of third parties who pay Pinterest for Pinterest's services and (2) Pinterest itself.**

With respect to specification of all evidence supporting Plaintiff's infringement claim, Plaintiff objects that this Interrogatory is unduly burdensome because Defendant has failed to produce documents requested by Plaintiff with respect to all instances in which Defendant has distributed or displayed Plaintiff's Works on its website and application so that Plaintiff can properly identify all instances of infringement. Plaintiff has provided sufficient information regarding the Works so that Pinterest can produce this requested information. Simply inputting Plaintiff's name and the name of his Work in Defendant's search bar on Defendant's website will result in a display of the Work in the context of advertisement. However, for Plaintiff to do so with respect to each Work will result in displays that Plaintiff alleges constitutes copyright infringement. In turn, conducting these searches will result in **emails and alerts generated by Pinterest that display Plaintiff's Works, which again Plaintiff alleges constitutes copyright infringement.** Defendant has stated in its defense that "Plaintiff has taken affirmative steps to facilitate the conduct about which he complains to manufacture certain claims in this litigation." Defendant Pinterest Inc.'s Answer to Plaintiff's Harold Davis Second Amended Complaint, ECF No. 77, at 16. Defendant thus has put Plaintiff in the impossible situation of creating his own instances of infringement, according to Defendant, in order to investigate and support his allegations of infringement.

*Id.* at 3-4 (emphasis added).

Pinterest posed the following Request for Admission No. 21:

Admit You contend that Pinterest directly infringed the copyright to each Work In Suit when that work was first saved by someone to Pinterest without Your authorization.

Plaintiff responded:

Denied. **Plaintiff has repeatedly and clearly stated that his claims of infringement center on Pinterest's actions with respect to each Work In Suit, not the actions of Pinterest's users or "someone," other than Pinterest, who "first saved" the Work In Suit to Pinterest.** *See* Plaintiff's Second Amended Complaint ("SAC"), ECF No. 56; Plaintiff's Responses to Pinterest Interrogatory Nos. 13.

Plaintiff's Response to Defendant Pinterest, Inc.'s Second Set of Requests for Admission (Nos. 21-25), Opp. Moore Decl., Ex. D, at 3 (emphasis added).

Similarly, Pinterest posed the following Request for Admission No. 25:

> Admit that, prior to filing the above-titled action, You did not provide Pinterest with Unique Identifying Information for the Pins that You identified in Your June 4 spreadsheet (DAVIS00005388) as allegedly infringing the Works In Suit.

*Id.* at 5.

Plaintiff responded:

> Denied. This request mischaracterizes Plaintiff's allegations and the content of the June spreadsheet (DAVIS00005388). Plaintiff did not identify "Pins . . . in [his] June 4 spreadsheet (DAVIS00005388) as allegedly infringing the Works In Suit." Plaintiff identified specific instances of infringement by Pinterest of the Works In Suit in the June 4 spreadsheet and other documents. *See* Plaintiff's Corrected Supplemental Response to Interrogatory No. 2. These documents identified infringement by Pinterest, not Pins, *i.e.*, content saved by Pinterest users. *See* https://help.pinterest.com/en/business/article/build-a-pin ("Pins are bookmarks that people use to save content they love on Pinterest."); https://help.pinterest.com/en/guide/all-about-pinterest (same). **Plaintiff's claims of infringement center on Pinterest's actions that violated Plaintiff's exclusive copyrights with respect to each Work In Suit, not the actions of Pinterest's users who saved content on Pinterest.** *See* Plaintiff's Second Amended Complaint ("SAC"), ECF No. 56; Plaintiff's Responses to Pinterest Interrogatory Nos. 13; Plaintiff's Response to Pinterest Request for Admission No. 21.

*Id.* (emphasis added). *See also* Deposition Transcript of Harold Davis ("Davis Tr."), Moore Decl. Ex. 1, 283:5-8 ("I have explained to you before that I do not regard individual users as the copyright infringers here. I regard Pinterest, the corporation who makes profit off my images, as the infringer.").

Thus, Pinterest's mischaracterization of Plaintiff's claims and its focus on users and their Pins in its motion for summary judgment is inexcusable. Pinterest long understood the 51 Works at issue in this case and the conduct that Plaintiff alleged was infringing—that of Pinterest's uses of the Works, not the Pins of the Works by Pinterest users. Indeed, Pinterest ultimately produced documents regarding **Pinterest's** display of Plaintiff's Works in connection with advertisement and in notifications after the close of discovery and after it was ordered to do so. Pinterest clearly understood that these are the activities Plaintiff consistently had identified as Pinterest's infringing conduct. Pinterest was not prejudiced in any way by what the June 4 Spreadsheet contained or did not contain, especially because the information that Pinterest ultimately produced was always within the possession, custody, or control of Pinterest. Pinterest cannot claim to be harmed by

1    information it always possessed.

2         In urging this Court to grant summary judgment on claims simply because they were not

3    listed in the June 4 Spreadsheet, Def. Mot. at 17 n. 10, 27-28, Pinterest invites this Court to commit

4    reversible error. In *Toyrrific, LLC v. Karapetian*, 606 Fed.Appx. 365 (9th Cir. 2015), the Ninth

5    Circuit held that the district court erred as a matter of law by excluding evidence under Rule

6    37(c)(1) and granting summary judgment on the sole basis that, as a result of the exclusion of the

7    evidence, the plaintiff could not prove the damages element of its breach of contract claim. It held

8    that "the district court erred as a matter of law by imposing Rule 37(c)(1) exclusionary sanctions

9    without finding that [the plaintiff's] noncompliance involved willfulness, fault, or bad faith, and

10   without considering the availability of lesser sanctions." *Id.* at 365 (internal quotation omitted).

11   Similarly, in *R&R Sails, Inc. v. Insurance Co. of Pennsylvania*, 673 F.3d 1240, 1247 (9th Cir.

12   2012), the Ninth Circuit cautioned that evidence preclusion is a "harsh sanction" and cannot be

13   applied in a manner that amounts to dismissal of a claim without the district court specifically

14   considering (1) whether the claimed noncompliance involved willfulness, fault, or bad faith and (2)

15   the availability of lesser sanctions. The Ninth Circuit held: "Because it does not appear that the

16   district court conducted this inquiry, and because it did not make the requisite findings, it erred

17   when it excluded the invoices under Rule 37(c)(1)." *Id.* Here, Pinterest does not argue or even

18   suggest that Plaintiff acted with willfulness, fault, or bad faith or that no lesser sanction is

19   available. Pinterest cannot be granted summary judgment on claims based on the June 4

20   Spreadsheet alone.

21        Judicial resources too are at stake. If certain claims cannot be part of this case simply

22   because they were not included in a spreadsheet, Plaintiff nonetheless has 35 Works that will

23   proceed to trial. In addition, Plaintiff can bring another case for the other 16 Works based on the

24   instances of infringements by Pinterest that accrued after he filed his case. The Ninth Circuit made

25   clear in *Media Rights*, 922 F.3d at 1024, that the separate accrual rule allows a plaintiff to bring an

26   action for instances of infringement that occurred after the filing of a previous suit:

27        Those claims (the "pre-filing copyright infringement claims") are precluded if the
          other requirements of claim preclusion are met. . . . By contrast, under the separate-
28        accrual rule, any sales of allegedly infringing Microsoft products after [the filing of

> the complaint] gave rise to a cause of action (the "post-filing copyright infringement claims") as of the date of the sale—*i.e.*, at some point after [the filing of the complaint]. Because those claims arose after MRT filed the operative complaint in MRT I and MRT could not have sued on them when it filed MRT I, they are not precluded here.

*Media Rights*, 922 F.3d at 1024 (citations omitted). Here, the evidence is indisputable that Pinterest engaged in numerous instances of infringement of Plaintiff's Works after the filing of the complaint on November 20, 2019.

In sum, there is no legitimate bases to grant summary judgment to Pinterest on any of aspect of Plaintiff's direct copyright infringement.

## CONCLUSION

For the reasons outlined above, the Court should deny Defendant's motion for summary judgment in its entirety and grant Plaintiff's cross-motion for partial summary judgment.

Respectfully submitted,

Dated: November 18, 2021

**REESE LLP**

*/s/ Sue J. Nam*
Sue J. Nam
Michael R. Reese
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Email:  snam@reesellp.com
       mreese@reesellp.com

**REESE LLP**
George V. Granade
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (310) 393-0070
Email:  ggranade@reesellp.com

**REESE LLP**
Charles D. Moore (admitted *pro hac vice*)
100 South 5th Street, Suite 1900
Minneapolis, Minnesota 55402
Tel: (701) 390-7214
Email:  cmoore@reesellp.com

**THE LAW OFFICE OF DAVID C. DEAL, P.L.C.**
David C. Deal (admitted *pro hac vice*)
P.O. Box 1042
Crozet, Virginia 22932
Telephone: (434) 233-2727
Email:  david@daviddeal.com

*Counsel for Plaintiff Harold Davis*